IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDGAR DIAZ, a/k/a "Hook," RICKEY ROLLINS, a/k/a "lil Rick," DON JOHNSON, a/k/a "Skanoodles," a/k/a "Noodles," ROBERT CALLOWAY, a/k/a "Papa," and DORNELL ELLIS, a/k/a "D Map,"<br><br>Defendants.<br>_____/ | No. C 05-00167 WHA<br><br>**ORDER AFFIRMING IN PART AND MODIFYING IN PART DISCOVERY ORDER OF MAGISTRATE JUDGE** |

**INTRODUCTION**

In this capital prosecution of alleged members of the Down Below Gang in San Francisco, the discovery order of Chief Magistrate Judge James Larson is **AFFIRMED** except as follows.

**STATEMENT**

In this appeal, the main issue is the extent to which the government can shield from pretrial discovery eyewitness information, including names, locator data, statements, grand jury testimony, summaries of interviews, cooperation agreements and the like. The discovery order at issue required witness statement disclosures no later than ninety days before trial (Dkt. 72 at 9). It required all *Brady* material, including impeaching information, cooperation agreements and the like, to be turned over within fifteen days of receipt by the government, starting

fifteen days after the order, with continuing disclosures as such materials were obtained (*id*. at 8, 17–18). Many other discovery requests were granted and keyed to various timetables. Judge Larson's order (*id*. at 5) invited the government to make a further *in camera* and *ex parte* showing as to specific sensitive materials otherwise ordered to be produced. Thus far, the prosecution has disclosed over eighty police reports among more than 2000 pages of discovery. The government has redacted witness names and locator information. For the safety of eyewitnesses, it wishes to continue providing materials without disclosing any fact witnesses until fourteen days before trial. No trial date has yet been set.

## ANALYSIS

**1. THE JENCKS ACT.**

For the protection of witnesses, the Jencks Act, 18 U.S.C. 3500, and Rule 26.2, provide that no statement or report in the possession of the United States made by a government witness (other than a defendant) shall be the subject of any subpoena, discovery or inspection until the witness has testified on direct examination. The Jencks Act covers statements, including grand jury testimony, even of "prospective" government witnesses. *See, e.g.*, *United States v. Mills*, 810 F.2d 907, 909–10 (9th Cir. 1987); *United States v. Alvarez*, 358 F.3d 1194, 1207 n.8 (9th Cir. 2004).

On the other hand, under *Brady* and its follow-on cases, the government has a constitutional duty to disclose exculpatory, impeachment and penalty-mitigating evidence. Without tracing the specific holdings, it will do to say that the Supreme Court, with almost every clarification, has steadily broadened the *Brady* obligations of prosecutors. *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Agurs*, 427 U.S. 97 (1976); *Weatherford v. Bursey*, 429 U.S. 543 (1977); *United States v. Bagley*, 473 U.S. 667 (1985); *Kyles v. Whitten*, 514 U.S. 419 (1995); *Stickler v. Greene*, 527 U.S. 263 (1999). That said, the Supreme Court has never pinpointed a timetable for *Brady* disclosures.[1]

---

[1] As used herein, the terms "*Brady*" and "*Brady* materials" refer to the entire line of decisions and to the full scope of materials they cover.

*Brady* and the Jencks Act have collided in many cases.  In *United States v. Alvarez*, 358 F.3d 1194, 1211 (9th Cir. 2004), the Ninth Circuit held that "[w]hen the defense seeks evidence which qualifies as both Jencks Act and *Brady* material, Jencks Act standards control," quoting *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979), *cert. denied*, 445 U.S. 966 (1980).  Thus, for a quarter-century, the law of our circuit has been that the Jencks Act trumps *Brady*.  This is in accord with most decisions elsewhere addressing the point.  *See, e.g.*, *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988); *United States v. Scott*, 524 F.2d 465, 467–68 (5th Cir. 1975); *United States v. Pollack*, 534 F.2d 964, 974 (D.C. Cir. 1976).  Some courts have held the other way.  *See, e.g.*, *United States v. Starusko*, 729 F.2d 256, 263 (3d Cir. 1984); *United States v. Owens*, 933 F. Supp. 76, 84 (D. Mass. 1996).

To complicate matters in the Ninth Circuit, appellate holdings (outside the Jencks Act context) arguably conflict as to the timing of *Brady* disclosures.  Thus, *Brady* material must be disclosed "in sufficient time to permit . . . effective use of that material."  *La Mere v. Risley*, 827 F.2d 622, 625 (9th Cir. 1987).  Yet, *Brady* "does not necessarily require that the prosecution turn over exculpatory material *before* trial."  *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988) (emphasis in original).  Then again, a guilty plea — which obviously occurs before any trial — may be invalidated for failure to disclose *Brady* material.  *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995).  In a similar plea context, the court of appeals has said that a *Brady* disclosure must be made "before trial."  *United States v. Nagra*, 147 F.3d 875, 881 (9th Cir. 1998).

For trial preparation purposes (as opposed to a plea context), the only way to reconcile these authorities with *Alvarez* and *Jones* is to hold as follows:  The government has the right to insist on secrecy of a Jencks Act statement until after the witness testifies on direct examination.  The defense, however, must then be allowed a continuance as necessary to use the statement for cross-examination.  If true *Brady* material is included in the statement, the defense may be entitled to yet further continuances as necessary to develop the *Brady* evidence, including the recalling of prior witnesses and the calling of new witnesses.  *A fortiori*, non-*Brady* Jencks Act statements may be withheld until after the direct testimony.

3

To be sure, trial lawyers would prefer to use *Brady* material for motions *in limine*, jury selection and opening statements, not to mention investigation before the trial is underway with its attendant time pressures. *See United States v. Snell*, 899 F. Supp. 17, 20 (D. Mass. 1995). In a capital case, these factors will loom even larger. And, we must be mindful that *Brady* is a constitutionally-required rule. Be that as it may, this Court must apply *Jones* and *Alvarez*. If it turns out that important *Brady*/Jencks material surfaces at trial or shortly before, we will try to preserve a fair trial through appropriate continuances during the event itself.

The discovery order rested on *United States v. Perez*, 222 F. Supp. 2d 164 (D. Conn. 2002). This Court respectfully reads *Perez* differently from Judge Larson. *Perez* actually held that a district court could *not* compel *Brady* material covered by the Jencks Act until it was "constitutionally required" (*id*. at 172):

> Even so, *Brady* material is only constitutionally required to be disclosed in time for its effective use at trial or plea proceeding.

The *Perez* court then noted that it lacked the inherent power to order the production of Jencks Act material prior to the time it was "constitutionally required to be disclosed under *Brady* or statutorily required to be disclosed under the terms of the Jencks Act." *Ibid*. Therefore, the court modified its standing order (otherwise requiring earlier production) and relieved the government "from disclosing material covered by the Jencks Act until that material [was] required to be disclosed under either *Brady* or the Jencks Act." *Ibid*. In sum, although *Perez* was a capital prosecution in the same posture as the present case, the court did *not* hold that Jencks/*Brady* material was constitutionally required to be turned over right away.[2]

**2.    "STATEMENT."**

Some of the key discovery demands at issue call for "witness statements." To this extent, the immediate task is simplified. This order will presume that this phrase means the

---

[2] In a decision favored by defense counsel, Judge Mahan in the District of Nevada held that Rule 26.2 rendered the Jencks Act "inapplicable." *United States v. Acosta*, 357 F. Supp. 2d 1228, 1235 (D. Nev. 2005). It is hard to square this view with the appellate statement as recently as 2004, well after Rule 26.2 went into effect, that when both the Jencks Act and *Brady* apply, "the Jencks Act standards control." *Alvarez*, 358 F.3d at 1211. The Advisory Committee Note to Rule 26.2, moreover, seems to recognize the continuing vitality of the Jencks Act in making the Act's disclosure obligations reciprocal by the defense. Rule 16(a)(2) itself expressly recognizes the force of the Jencks Act.

4

1  same as under the Jencks Act. To that extent, therefore, compulsory pretrial discovery is barred
2  by the Act. Quite a number of other requests, however, are not so framed. They call for
3  "information" on various points, such as whether other persons may have had a motive to kill
4  any murder victim referenced in the indictment or impeachment items against witnesses. As to
5  them, one issue is whether FBI raw interview notes and/or Form 302 reports summarizing the
6  interviews constitute Jencks Act "statements."

7  Section 3500(e) defines a "statement" as (i) a written statement signed or adopted by the
8  witness, (ii) a stenographic, mechanical, electrical or other recording or transcription, "which is
9  a substantially verbatim recital of an oral statement . . . recorded contemporaneously," and
10 (iii) grand jury testimony. Only a "statement" must be provided under the Act and, even then,
11 only after the direct testimony. The Act does not require non-statements to be produced at all.
12 Early on, the Supreme Court held that an agent's summary of a prior 3-1/2-hour interview of a
13 trial witness was not a "statement" of the kind required to be produced. In that case, the
14 summary was never produced. The Supreme Court upheld the conviction, concluding that the
15 Act did not require the summary to be produced. *Palermo v. United States*, 360 U.S. 343, 353
16 (1959).

17 Once the direct examination is over, the trial judge may affirmatively inquire into
18 whether any "statement" exists, even taking extrinsic testimony as needed to ascertain whether
19 a writing was substantially-verbatim, recorded or adopted by the witness. *Campbell v.*
20 *United States*, 365 U.S. 85, 92 (1961). In that vein, with respect to raw notes and FBI Form 302
21 reports, the Ninth Circuit has specifically held that upon a sufficient request during trial, a
22 district court is obliged to make at least some inquiry as to whether they qualify as
23 "statements." *United States v. Rewald*, 889 F.2d 836, 867 (9th Cir. 1989). That said, the
24 mainstream of the caselaw has regularly found such materials not to be covered by the Jencks
25 Act. In short, the word "statement" has a circumscribed meaning.

26 **3.     RULE 16.**

27 AUSA Anjali Chaturvedi stated at the appeal hearing that FBI agents are trained to
28 prepare Form 302 reports so that they will *not* qualify as "statements" (and therefore never have

5

to be produced pursuant to the Jencks Act).³ If so, they are beyond the reach of the Jencks Act. The question then becomes whether Rule 16 authorizes their compulsory production in those unusual instances where the government does not practice open-file discovery.

Rule 16(a)(2) expressly provides that Rule 16 "does not authorize discovery or inspection of reports, memoranda or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." This is dispositive. To be sure, the sentence is qualified by "[e]xcept as Rule 16(a)(1) provides otherwise." That qualifier refers, however, to expert or scientific reports required by Rule16(a)(1)(F) and/or "any written record containing the substance of any relevant oral statement" by the defendant as required by Rule16(a)(1)(B)(ii). *See* 1975 Advisory Committee Note. While Rule 16(a)(1)(E) requires access to "books, papers, documents, data, photographs, tangible objects, buildings or places . . . if the item is within the government's possession, custody or control," the entire phrase refers to materials obtained by the government as potential physical evidence, such as pay-owe sheets or records taken from a white-collar crime scam. As such, the word "documents" in that list of physical evidence does not erase the express exemption for investigative reports. *See* 1944 Advisory Committee Note; Wright, *2 Federal Practice and Procedure (Criminal)* § 254 (3d ed. 2000); *United States v. Cherry*, 876 F. Supp. 547 (S.D. N.Y. 1995). The government is therefore correct that Form 302 reports and rough notes by federal agents are generally outside Rule 16 discovery. (In this connection, we must also remember that Rule 16 is reciprocal. Were the government obligated to produce investigator interview summaries, the defense would be obligated to do so as well.)

The government is also correct that Rule 16 does not authorize compulsory disclosure — by *either* side — of a list of trial witnesses and/or their addresses. *United States v. Hicks*, 103 F.3d 837, 841–42 (9th Cir. 1996), is directly on point. In and of itself, however, this does not give the government leave to redact witness names from otherwise discoverable materials.

---

³ This contradicted AUSA Philip Kearney's earlier argument in the same hearing that Form 302 reports *were* Jencks Act statements (and thus only had to be turned over after the direct testimony).

6

#### 4. NON-JENCKS *BRADY* MATERIAL.

As to *Brady* materials, the defense has a stronger case to make. At least as to materials outside the Jencks Act, *Brady* requires disclosure in "sufficient time to permit defendant to make effective use of that material," taking into account "the prosecutor's reasons for later disclosure" and "whether the defendant had an opportunity to make use of the disclosed material." *LaMere*, 827 F.2d at 625. The Supreme Court has called for *Brady* production no later than the "reasonable probability" point, meaning the point in the case where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." More specifically, the Supreme Court has stated "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to judge the likely net effect of all such evidence and make disclosure when the point of 'reasonably probability' is reached." *Kyles v. Whitley*, 514 U.S. 419, 433, 437 (1995); *see also United States v. Bagby*, 473 U.S. 667, 682 (1980). In a capital case of this magnitude, this Court expects there will likely be *Brady* materials, including Form 302 reports, whose effective use will require pretrial disclosure (along with names and addresses).

Contrary to the defense, however, the law does not require a court to rummage privately through prosecution files looking for *Brady* material. The decisions cited by the defense all involved court inquiries *during trial* (not discovery), and almost all involved inquiry into whether materials were producible as Jencks Act "statements" (not *Brady* materials). If and when the government is in doubt about whether to produce material under *Brady*, then it can ask for an *in camera* review. Or, if the defense has specific cause to show the government is overdue in providing *Brady* material, then a motion can be made for an *in camera* review of finite material.

#### 5. DEATH PENALTY AUTHORIZATION PROCEEDING.

Defense counsel wish to have any witness statements and witness names and locator data in time for use in the internal Justice Department death-penalty authorization proceeding described in the United States Attorneys' Manual ("USAM"). This would require early revelation since the agency proceeding will be well before the trial itself. Such early discovery

7

has not been a routine practice in the United States. Johnson and Hooper, *Resource Guide For Managing Capital Cases*, vol. I at 22 (Fed. Jud. Center 2004).

Aside from its strict law under the Jencks Act, the Ninth Circuit has further held that "The USAM does not create any substantive or procedural rights, including discovery rights," so holding in a decision specifically involving the question of discovery rights before the Justice Department's authorization committee. *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000). This Court must follow the circuit law.

Defense counsel are correct that the practice in this district has been for the government to disclose witness information early, sometimes under a protective order. This has been a salutary, if voluntary, practice. But, again, the government is acting within its rights under circuit law in deviating from prior voluntary practice and insisting on strict enforcement of the Jencks Act and Rule 16. Voluntary custom cannot undo the law.

**6.    CASE MANAGEMENT AUTHORITY.**

As noted, this order recognizes that a district court cannot compel production of witness lists, witness statements, Form 302 reports, or raw notes and the like prior to trial with the sole exception of those that need to be disclosed under *Brady*. As for the *Brady* part, there is no way of knowing now how extensive the disclosures will prove to be. The law places the initial burden on the prosecutors, who alone know the full scope of evidence, to make the assessment. Nor is there any way to know when the "point of reasonable probability" will have arrived. The extent to which these eventual disclosures will necessitate continuances of the trial is hard for the Court to predict now.

What is certain is the train wreck in store if a flood of materials is unleashed during or shortly before trial. A cascade of mid-trial continuances will be likely and most disruptive. It could even cause a mistrial, for jurors may take ill or have other excuses for discharge during prolonged service. Our jury box is built for only two alternates. We will have little leeway for loss of jurors. Some disclosures might even come so late that only a mistrial and starting over with a new jury months later would be constitutionally fair. Even the government recognizes

1    these considerations. In light of them, it has announced that it will voluntarily turn over the
2    withheld witness information fourteen days before trial.

3        This, however, is where the government's secrecy rights end. The court, not the
4    prosecutor, decides how long any continuance should be and how long before trial any
5    government disclosure must be to avoid mid-trial continuances. This discretion is the ultimate
6    authority for our local rule calling for a discovery schedule to be set on a case-by-case basis.
7    If the parties want a fair and orderly trial, then they should honor any schedule made under the
8    rule. If they don't, they invite a ruinous affair beset with continuances and interruptions.

9        In this capital prosecution, given the scope of the gang allegations involving conspiracy,
10   murder and racketeering, a blanket withholding of key materials until fourteen days before trial
11   would almost certainly lead to fits and starts. For that reason, this order will not bless the
12   government's fourteen-day offering. To the extent that the government expects to produce any
13   witness information at all, it must either yield to the modified schedule approved by this order,
14   based upon sound case management considerations including witness safety as well as fair
15   procedure, or jeopardize the viability of the trial itself.

16   **7.    WITNESS SAFETY.**

17       The Court agrees with the government that early identification of its fact witnesses will
18   pose an undue safety risk. No trial date has been set. The defense contends it is too early even
19   to discuss a trial date. To disclose now, so far in advance of jury empanelment, will place
20   eyewitnesses at risk over a long period. Even without a further evidentiary hearing, this risk is
21   evident. True, the danger can be mitigated by a protective order restricting the information to
22   counsel and their investigators. Even so, when investigators seek to track down or inquire
23   about witnesses in the neighborhood, the word will spread. A protective order will not be a
24   complete answer.

25       On the other hand, identification of fact witnesses before trial is essential to avoid
26   mid-trial continuances and possibly a mistrial. Given that this is a capital prosecution with a
27   broad scope of racketeering and murder allegations, the fourteen-day offering by the
28

government, as stated, is not workable.  To effect a proper balance, the Court modifies the discovery schedule as follows:

    1.    Up until ninety days before trial, the government is relieved, as to any non-law enforcement fact witnesses, from providing the witness names, witness statements, witness locator data, or information that would identify any witness.  The government may redact such witness names and data from any materials disclosed before the ninety-day mark.

    2.    By the ninetieth day before trial, the government must disclose all previously-redacted information by providing unredacted copies of previously-redacted materials.  By the ninetieth day before trial, the government must also provide, to the extent the government plans to produce them eventually or is obligated to do so, all witness statements, locator data and *Brady* material concerning any non-law enforcement fact witnesses, including any cooperating witnesses.  Put differently, if the government is going to produce such material at all, it must do so by this milestone in order to avoid a series of mid-trial continuances.

    3.    All such information shall be provided solely under a protective order barring further disclosure, directly or indirectly, to any defendant or to anyone other than counsel and one investigator per defendant, *i.e.*, limiting access to two counsel and one investigator per defendant and for use solely in this case. Counsel and investigators may reveal the content of statements to defendants and to others only insofar as doing so will not reasonably suggest the identity of the witness.  Disclosure of protected information, however, may be made to any defendant or interviewee within 21 days before trial if but only if, in the prudent judgment of his counsel, such disclosure is reasonably necessary to prepare the defense.  Specific locator data, however, shall never be disclosed to any defendant or anyone other than counsel or the investigator without a prior court order.  All counsel and investigators must acknowledge in writing these restriction under the

protective order. The witness list required by Section 3432 shall also be provided 21 days before trial under the same protective terms.

        4.      This timetable is without prejudice to any party seeking a modification as to any specific item or witness. Such modifications may be sought by filing a formal motion before Judge Larson who may, in his discretion, hear out each side *ex parte* and *in camera*.

        5.      Except as required by *Brady*, nothing in this order requires disclosure of the identity of any confidential undercover informant unless the government plans to use the informant as a trial witness. The problem of confidential undercover informants can be addressed via separate motion practice.

## CONCLUSION

Judge Larson's order comprehended a large number of discovery requests, most of which were granted and will presumably be produced on an ongoing basis. Except as to the modification stated above concerning witness information, the order is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: August 26, 2005.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11