IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDGAR DIAZ, a/k/a "Hook," RICKEY ROLLINS, a/k/a "lil Rick," DON JOHNSON, a/k/a "Skanoodles," a/k/a "Noodles," ROBERT CALLOWAY, a/k/a "Papa," and DORNELL ELLIS, a/k/a "D Map," EMILE FORT, CHRISTOPHER BYES, PARIS RAGLAND, RONNIE CALLOWAY, and ALLEN CALLOWAY,<br><br>Defendants.<br>_____/ | No. C 05-00167 WHA<br><br><br><br>**ORDER RE JENCKS ACT** |

The Court has received a letter from the federal prosecutor stating an intent to seek a "writ of mandamus contesting the portion of the Court's order that obligates the government to provide *Jencks Act* material ninety days before trial" (Letter from Philip J. Kearney, Assistant U. S. Attorney dated Nov. 30, 2005).

The order dated August 26, 2005, expressly recognized and followed the Ninth Circuit caselaw allowing the government to withhold Jencks Act statements until after the direct testimony (see pages two through six of that order). Therefore, the Court was initially mystified over what the government planned to pursue in its writ petition.

This prompted the Court to re-examine the discovery schedule set forth in the same order. There is one aspect, on reflection, that needs clarification. Paragraph two on page ten stated:

> By the ninetieth day before trial, the government must disclose all previously-redacted information by providing unredacted copies of previously-redacted materials. By the ninetieth day before trial, the government must also provide, to the extent the government plans to produce them eventually or is obligated to do so, all witness statements, locator data and *Brady* material concerning any non-law enforcement fact witnesses, including any cooperating witnesses. Put differently, if the government is going to produce such material at all, it must do so by this milestone in order to avoid a series of mid-trial continuances.

The phrase "witness statements" in this paragraph does implicate the Jencks Act. This may seem inconsistent with the Court's own recognition of the force of the Act. Therefore, this order will revise that paragraph, making the following clarifying points.

*First*, what the August 26 order tried to state was that *if* the government plans to disclose Jencks Act statements at all in advance of the trial, it must do so at the ninety-day mark rather than merely fourteen days before trial to be sure of avoiding mid-trial continuances. That was the point of the last sentence in the quoted paragraph. The government itself has recognized that to strictly follow the Jencks Act and to release witness statements only after the witness's direct testimony during trial will likely require a series of trial continuances. This will be most disruptive. It will risk the possible loss of jurors due to illness or inability to continue to serve over the course of a prolonged trial. Possibly, it could even lead to mistrial. To avoid any such train wreck (after the long time it will take to select a death-qualified jury), the government has unilaterally selected fourteen days before trial as the proper length of lead time to avoid mid-trial continuances. The Act, however, does not allow the government to control the lead-time or the subject of continuances. That is wholly within the discretion of the Court, taking into account all the factors at the time the continuance is requested. *See* 18 U.S.C. 3500(c) ("[T]he court . . . may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such [Jencks Act] statement by said defendant and his preparation for its use in the trial."). It may be that fourteen days would do, but in this particular death-penalty case, that seems unlikely. If the government now wants a milestone

which the Court is prepared to say in advance would be adequate in all likelihood, then ninety days before trial is the answer. Fourteen days before trial cannot now be categorically blessed in advance. If the government produces the Jencks Act witness statements only fourteen days before trial, a motion for continuance will have to be seriously entertained *before* the jury selection process commenced. All that said, if the government still wishes to insist on producing the Jencks Act statements only after the witness has testified on direct, so be it. But it will have only itself to blame if this insistence leads to repeated continuances.

*Second*, the government itself has admitted that Form 302s are *not* covered by the Jencks Act (see comments of AUSA Anjali Chaturvedi at hearing, summarized at pages five through six in the August 26 order). The same would seem to be true for routine police reports by the San Francisco police department. The reason is that they are not signed, adopted or a substantially verbatim recital under the Jencks Act, 28 U.S.C. 3500(e)(1)–(2). Therefore, the universe of material really at issue on any such writ petition would seem to be exceedingly small.

If there is to be a petition, please ask the Court of Appeals to address this point, for this Court fears that what actually may be at stake is that the government is anticipating a flip-flop and taking the position later that Form 302s and/or police reports are somehow covered by the Act (despite AUSA Chaturvedi's representation at the hearing). This would loom important to the extent any Form 302s contain *Brady* material and would ordinarily be turned over far enough in advance of trial to be useful. By deeming them Jencks Act statements, however, the government might deem them within the protection of *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979), holding that where a Jencks Act statement includes *Brady* material, the Jencks Act prevails. If this is indeed the intent of the government, the plan should be aired before the Ninth Circuit during the petition proceedings.

*Third*, the problem is further complicated by the issue of redactions. The government has stated that it has already produced all police reports but with redactions to protect the identity of fact witnesses. To protect witnesses, the August 26 order approved that practice up

3

to ninety days before trial, at which time the names are to be disclosed under a protective order. The government has stated that it has *not* turned over any Form 302s , much less redacted versions of Form 302s.

Based on AUSA Chaturvedi's representations, as stated above, it seems highly unlikely that any Form 302s or police reports would ever qualify as Jencks Act statements. But, to the extent any do so qualify, it would further seem that if the government elects to waive the Act and produce a redacted version in advance of trial, then the government waives the protection of the Act and the Court can order the redacted names to be provided under a protective order ninety days before trial.

*          *          *

In conclusion, this order clarifies that the government is free to insist on its Jencks Act rights and to produce *true* Jencks Act statements only after the witness testifies, if ever, on direct examination. This applies even to *Brady* material contained within a *true* Jencks Act statement. If such mid-trial disclosures lead to motions for continuances or mistrials, then those motions will have to be decided at that time based upon the record then before the Court. To the extent any prior order was inconsistent with the foregoing, it is hereby superseded.

**IT IS SO ORDERED.**

Dated: December 2, 2005

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE