IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDGAR DIAZ, RICKEY ROLLINS,<br>DON JOHNSON, ROBERT CALLOWAY,<br>DORNELL ELLIS, EMILE FORT,<br>CHRISTOPHER BYES, PARIS<br>RAGLAND, RONNIE CALLOWAY,<br>ALLEN CALLOWAY, and REDACTED<br>DEFENDANTS Nos. ONE & TWO,<br><br>Defendants. | No. CR 05-00167 WHA<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR DISCLOSURE OF GRAND JURY TESTIMONY** |

**INTRODUCTION**

Defendants Edgar Diaz, Robert Calloway, Ronnie Calloway, Dornell Ellis, and Don Johnson move pursuant to Rule 6(e)(3)(E)(i) and (ii) to disclose grand jury testimony. This order holds that defendants have not made a sufficiently particularized showing of need, even assuming *arguendo* that such a showing would be sufficient to disregard the Jencks Act. Defendants also have not shown sufficient misconduct during the grand jury proceedings to warrant disclosure. The motion is, therefore, **DENIED**.

**STATEMENT**

On November 14, 2005, a grand jury returned a second superseding indictment against defendants. In that indictment, defendants were charged with three conspiracies: (1) a

narcotics conspiracy in violation of 21 U.S.C. 841; (2) a firearms conspiracy in violation of 18 U.S.C. 924(o); and (3) a RICO conspiracy 18 U.S.C. 1962(d).  The indictment also alleged eighteen acts of committing a violent crime in aid of racketeering, in contravention of 18 U.S.C. 1959; ten counts of unlawful use of a communication facility in violation of 18 U.S.C. 843(b); conspiracy to commit witness tampering in violation of 18 U.S.C. 1512(k); firearms offenses in violation of 18 U.S.C. 924(c); and narcotics offenses in violation of 21 U.S.C. 841.  Defendants Diaz, Robert Calloway, Fort and redacted defendants 1 and 2 are eligible for the death penalty.  All eligible defendants (except Fort) have made their death-penalty presentations to the Justice Department's Capital Case Review Committee.

The government voluntarily disclosed certain portions of the grand jury testimony, 1264 pages worth.  The portions voluntarily provided pertained to law enforcement witnesses.  No good deed going unpunished, defendants now rely on the voluntarily-produced portions as evidence that the government should produce the entire grand jury transcript to defense counsel or, in the alternative, to the Court for *in camera* review.  The voluntary disclosures included parts of the testimony of San Francisco Police Officers Mikail Ali and Tony Chaplin, BATF Agent Thomas Cleary, and FBI Agents Van Nimitsipa and Steven Robinson.  The revealed portions, defendants say, show prosecutorial misconduct before the grand jury.  This may be the tip of a larger iceberg, they say, and want the rest of the grand jury transcript to prove it.  They also want it to make presentations to the Capital Case Review Committee.

**ANALYSIS**

In a pending criminal prosecution, the Jencks Act, 18 U.S.C. 3500, builds a firewall around grand jury testimony.  The Act protects the secrecy of all such testimony.  Only after the direct testimony at trial can a court order its production and even then only as to that individual witness.

Rule 6, however, provides two other avenues for disclosure.  Pursuant to Rule 6(e)(3)(E):

2

> The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter:
>
> (i) preliminarily to or in connection with a judicial proceeding;
>
> (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.

Subpart (i) refers to judicial proceedings other than the criminal prosecution. *See, e.g.*, *United States v. Nix*, 21 F.3d 347, 351 (9th Cir. 1994). It happens, from time to time, that grand jury testimony is sought in connection with *other* proceedings, such as in a civil case involving one or more of the same witnesses. Even if the grand jury's term has expired, the Supreme Court has been emphatic that disclosure is barred by Rule 6 unless "a particularized need" is shown, a precisely defined need that would allow surgical lifting of the particular passages fitting the articulated need. *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682–83 (1958); *Dennis v. United States*, 384 U.S. 855, 869 (1966). "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only the materials so needed." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979).

Here, defendants argue that they need the testimony to present mitigating evidence for the potential imposition of a capital sentence. This argument fails for two reasons. The materials are sought for use in a pending prosecution, not in a separate judicial proceeding. The Capital Case Review Committee, moreover, is not a judicial proceeding. *See, e.g.*, *Sells, Inc. v. United States*, 719 F.2d 985, 989 (9th Cir. 1989) (citing *United States v. Baggot*, 463 U.S. 476 (1983)). Nor has any narrow request been structured, instead the entire transcript has been requested, either by disclosure to defense counsel or by *in camera* review. *See, e.g.*, *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980) (holding that decision whether to conduct *in camera* review is discretionary and not necessary absent showing of particularized need).

3

A prior order herein dated August 26, 2005, squarely held that there is no right to discovery created by virtue of the defense-input opportunity allowed in death-penalty authorization proceedings, citing *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000). The veil of secrecy should not be destroyed merely to allow for rummaging through the entire grand jury proceedings in search of snippets of mitigating testimony. That is far too speculative to be particularized.

It is true that in *United States v. Rodriguez*, 380 F. Supp. 2d 1041, 1058–59 (D. N.D. 2005), Judge Erickson ordered the government to produce the grand jury transcript. Although his order did not find expressly any "particularized need," it did find that immediate disclosure was justified where (i) the disclosure would help the defense prepare for both the guilt and penalty phases of trial, (ii) the government could not and did not articulate any reason for not releasing the transcript, and (iii) the government had already agreed to provide the entire transcript 30 days before trial.

Our case is different. Here, the government *has* articulated a reason for maintaining secrecy—namely, civilian witness security. Here, the government has *not* agreed to release the entire transcript 30 days before trial. These differences are sufficient. But of equal importance, *Rodriguez* does not come to grips with the express prohibition in the Jencks Act that such transcripts not be released in pending prosecutions (until after the trial testimony of the witness).

Any *Brady* exculpatory material contained in the grand jury testimony will ultimately have to be turned over by the government. As many prior orders herein have said, however, Jencks Act material—even if also *Brady* material—cannot be compelled prior to the direct testimony of the witness. This is the inflexible rule in our circuit. *United States v. Alvarez*, 358 F.3d 1194, 1211 (9th Cir. 2004) (citing *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979), *cert. denied*, 445 U.S. 966 (1980)).

*          *          *

Defendants also argue that disclosure is necessary to demonstrate that prosecutors and witnesses committed misconduct during the grand jury proceedings sufficient to dismiss the

4

1 indictment. There is insufficient preliminary evidence of any such misconduct, however, to
2 justify removing the important cloak over grand jury proceedings here. This minimal
3 preliminary evidence does not justify review by defense counsel or by the Court *in camera*.

4     The standard for misconduct during grand jury proceedings is extremely high. *See, e.g.*,
5 *United States v. De Rosa*, 783 F.2d 1401, 1404 (9th Cir. 1986) "[D]ismissal of an indictment is
6 required only in flagrant cases in which the grand jury has been overreached or deceived in
7 some significant way." *United States v. Cederquist*, 641 F.2d 1347, 1352–53 (9th Cir. 1981)
8 (quoting *United States v. Thompson*, 576 F.2d 784, 786 (9th Cir. 1978)). "It must be shown that
9 the prosecutor's conduct significantly infringed upon the ability of the grand jury to exercise its
10 independent judgment." *Id.* at 1353.

11     Defendants point to several examples from the disclosed portions of the grand jury
12 testimony as evidence of the purported misconduct. Defendants highlight the testimony of
13 Officer Ali. Officer Ali purportedly misstated the number of gunshot wounds of one murder
14 victim (Br. 4). He also purportedly appealed to racial prejudices. Officer Ali testified that
15 gangs such as the Crips and the Bloods were "large black gangs" (*id*. at 5). He also testified
16 that the Down Below Gang—the gang in question in this action—"falls in line with the kind of
17 gang trends within [the] black community" (*ibid*.). Officer Ali also stated that drugs in the
18 Sunnydale area, where the Down Below Gang purportedly operates, come from "folks of Latin
19 American descent" (*ibid*.).

20     Certainly, "[a]ppeals to racial, ethnic, or religious prejudice" are not to be tolerated.
21 *United States v. Cabrera*, 222 F.3d 590, 594 (9th Cir. 2000). As an initial matter, however,
22 Officer Ali is himself African-American, suggesting that racial animus on his part is unlikely.
23 Moreover, none of the cited examples indicate that Officer Ali's statements constituted appeals
24 to racial prejudice or other impropriety. His testimony about the Bloods and the Crips, for
25 instance, came in the context of questioning by the grand jury as to the context for certain
26 alleged violence perpetrated by the Down Below Gang. His mentioning of these two infamous
27 gangs was merely intended to draw an instructive analogy familiar to the grand jury members.
28 The racial makeup of the members of the Crips and Bloods also happens to describe the

membership of the Down Below Gang. Likewise, the other cited instances where Officer Ali made racial references were merely descriptive references, not improper appeals to race. As the government notes, Officer Ali has years of expertise dealing with gangs, in particular gangs composed of African-American members. It may (or may not) ultimately be permissible for Officer Ali to testify about certain relevant racial aspects of gang life.

Defendants also point to the conduct of Prosecutor Phillip Kearney during the grand jury proceedings. Defendants maintain that Prosecutor Kearney improperly "testified" rather than simply asking questions. According to defendants, Prosecutor Kearney led Officer Ali with questions about how gangs start and by offering spins on the officer's answers. As one purported example, Prosecutor Kearney stated (*id*. at 6):

> When you say "socioeconomic," a big motivation is being able to make money. Like if they have a particular turf, isn't it true that they can sell drugs on the turf and, you know, the defensive—you know, defending turf goes hand in hand with making money on the turf, goes hand in hand with a way of life. Is that a fair statement?

It is true that "[p]rosecutors share with courts the duty not to interfere with the grand jury's function." *United States v. Al Mudarris*, 695 F.2d 1182, 1185 (9th Cir. 1983). Government counsel should save his argument for argument and not mix it in with the questions and answers. But the excerpts assigned are too attenuated to justify wholesale revelation of the grand jury's proceedings. *See Ferreboeuf*, 632 F.2d at 835 ("Mere unsubstantiated, speculative assertions of improprieties in the proceedings do not supply the 'particular need' required to outweigh the policy of grand jury secrecy") (internal citation omitted). Moreover, government counsel apparently gave cautionary instructions to the grand jury that government counsel was not a sworn witness, and that no "testimony" by government counsel should be considered. Finally, from defendants' cited examples, it appears that government counsel was often simply summarizing testimony, which is proper, rather than improperly inserting himself as a witness.

United States District Court
For the Northern District of California

**CONCLUSION**

For the foregoing reasons, defendants' motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 29, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE