1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

EDGAR DIAZ, RICKEY ROLLINS, DON
JOHNSON, ROBERT CALLOWAY,
DORNELL ELLIS, EMILE FORT,
CHRISTOPHER BYES, PARIS RAGLAND,
RONNIE CALLOWAY, ALLEN
CALLLOWAY and REDACTED
DEFENDANTS Nos. ONE & TWO,

        Defendants.

_____/

No. CR 05-00167 WHA

**ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTIONS FOR
INSPECTION OF GRAND JURY
AND PETIT JURY RECORDS**

**INTRODUCTION**

     In this multi-count criminal proceeding, defendants request:  (1) access to grand and petit jury records (other than witness transcripts) for inspection and copying; (2) a delay of hearings on any motion to dismiss predicated on the irregularities in the composition of the grand jury until they have been fully litigated; and (3) a stay of the trial proceedings until inspection or discovery of jury records is completed and related challenges fully litigated. Defendants' request for discovery is **GRANTED IN PART** and **DENIED IN PART**.  Defendants' requests for a delay of hearings relating to any motion to dismiss is **GRANTED**, and defendants' request for a stay of the trial proceedings is **DENIED**.

**United States District Court**
For the Northern District of California

**STATEMENT**

On March 17, 2005, a grand jury sitting in San Francisco returned the first indictment in this matter.  A second superceding indictment was returned on October 27, 2005, charging the twelve defendants with a total of 86 substantive counts.

Defendants first requested access to jury records and master jury lists in a letter to the clerk of the court on April 12, 2006.  Defendants sought these records in preparation for their pending motion to challenge this district's jury-selection process.  Richard Wieking, Clerk of our district court, in turn, requested that defendants seek the Court's ruling on the issue.

Accordingly, defendant Edgar Diaz, on behalf of all defendants and specifically joined by Robert Calloway, Dornell Ellis, Don Johnson, and Rickey Rollins moved for access to grand jury ministerial records describing the procedural aspects of a grand jury investigation.  They anchor their request on Federal Rule of Criminal Procedure 6(e), *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778 (9th Cir. 1984), and other relevant caselaw.

In particular, these defendants request:

1.      All instructions given to any grand jury that heard evidence in the instant matter;

2.      Any order reflecting the beginning or extension of the term of any grand juries returning indictments in the instant matter;

3.      Records setting forth the method by which any grand juries were empaneled;

4.      Roll sheets reflecting the composition of any grand juries, attendance records of the jurors, and any substitutions;

5.      Voting records related to any decision to extend the life of any grand juries;

6.      All records of disclosures of names of persons receiving information about matters occurring before any grand juries, a list of all persons to whom disclosures were made, as well as the dates on which they were made,

and letters or warnings and petitions relating to any disclosure of grand jury materials; and

       7.     A copy of all grand jury subpoenas for documents or testimony, as well as the dates the materials were obtained, and a list of the exhibits presented to any grand jury.

Defendant Don Johnson, on behalf of Robert Calloway, Ronnie Calloway, Edgar Diaz, Dornell Ellis, and Rickey Rollins, filed a second parallel motion for discovery of jury records, to delay any hearings on the issue of jury composition, and to stay the trial pursuant to the Jury Selection and Service Act of 1968, 28 U.S.C. 1861–1867, *Test v. United States,* 420 U.S. 28 (1975), and relevant caselaw.

Movants make several requests for relief.  *First*, defendants seek access for inspection and copying of the following eight categories of materials:

       1.     All writings, memoranda, reports, manuals or information, including any JS-12 reports compiled by the court, or any consultant working for the court or any agency concerned with the operation of the court since implementation of General Order No. 6, which is the *Plan of the United States District Court for the Northern District of California for the Random Selection of Grand Jury and Petit Jurors*;

       2.     A copy of the source list and supplemented voter registration list from which the selection of all grand juries were composed in this case;

       3.     Lists, forms, materials, memoranda or procedures, including actual magnetic disks, setting forth the master jury wheel (a computerized list of the names and addresses of people who may be eligible to serve on a jury), the qualified jury wheel (a list of persons, chosen at random, who are eligible to serve on a jury), and grand jury wheel (persons eligible to serve on a grand jury) for each of the jury divisions within this district;

**United States District Court**
For the Northern District of California

> 4.     Any juror utilization reports prepared by the court, or any
> consultant working for the court or any agency concerned with the operation of
> the court since March 1999;
>
> 5.     A text description of the computer program and related manuals
> or other technical documentation describing the process by which voter
> registration and record information lists are merged and jurors selected, purged
> or otherwise edited, including any changes or modifications in the technical
> characteristics of the program;
>
> 6.     All transcripts, documents, manuals or memoranda describing the
> method by which grand jury forepersons were selected in the instant matter;
>
> 7.     All directives, instructions, handouts or information provided to
> grand jurors concerning their duties as grand jurors, their attendance and manner
> of deliberation; and
>
> 8.     All juror utilization reports, attendance records, statistical
> analyses, records, reports of the number of persons qualifying for jury duty and
> those summoned for jury duty, and potentially juror questionnaires that would
> allow review of the persons serving on jury duty, or of those who were
> disqualified, exempted or excluded from jury service, or who deferred service, in
> the past 24 months.

*Second*, defendants joining in the second motion move to delay any hearings on any motion to dismiss based on irregularities in grand jury composition until after discovery on the issue has been litigated. *Third*, movants request to delay trial until after inspection of all discovered material.

Defendants assert in their second motion that they have a right to such discovery because they are preparing a challenge to this district's jury-selection procedures. They argue that they have an essentially unqualified right to copy documents used by the jury commission or clerk to select juries. Movants claim that such a right is even more important because some of the defendants may face the death penalty if convicted. The government concedes that some

1    discovery is appropriate.  Even so, the government maintains that most of the documents are not

2    necessary to challenge the propriety of the grand jury.

**ANALYSIS**

4        Movants first request access to the grand jury's ministerial records pursuant to Federal

5    Rule of Criminal Procedure 6(e), *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d

6    778 (9th Cir. 1984), and other relevant caselaw.  Their first motion is predicated on the general

7    right of *public* access to the ministerial records of a grand jury proceeding.  Movants ground

8    their second motion for disclosure of jury-selection records on the Jury Selection and Service

9    Act, *Test v. United States,* 420 U.S. 28 (1975), and other relevant caselaw.  Defendants' second

10   motion is based on the right of a defendant to inspect otherwise *nonpublic* records in order to

11   prepare a challenge against a district's jury-selection procedures, and relate to jury composition

12   specifically.  Each motion is discussed in turn.

**1.    DEFENDANT'S FIRST MOTION FOR DISCOVERY:
DISCLOSURE PURSUANT TO THE PUBLIC RIGHT OF ACCESS.**

15       At issue in defendants' first motion are the competing interests between the public's

16   right to inspect government operations on the one hand, and the need for secrecy in grand jury

17   proceedings on the other.  In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–98

18   (1978), the Supreme Court observed the unique American right to inspect and copy public

19   records and documents.  The Supreme Court noted that American decisions generally do not

20   condition disclosure "on a proprietary interest in the document or upon a need for it as evidence

21   in a lawsuit."  The interest may be found, for example, "in the citizen's desire to keep a

22   watchful eye on the workings of public agencies . . . or [in] the operation of [the] government."

23   *Id.* at 598  (footnotes and citations omitted).

24       At the same time, the Supreme Court has recognized that "the proper functioning of our

25   grand jury system depends upon the secrecy of grand jury proceedings."  *Douglas Oil Co. of

26   Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979).  Federal Rule of Criminal Procedure 6(e)

27   provides that persons present at a grand jury proceeding "must not disclose . . . matter[s]

28   occurring before the grand jury."  In *Douglas Oil*, the Supreme Court explained that the rule of

     grand jury secrecy has been an integral part of our criminal justice system and our federal

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    common law since the seventeenth century.  Rule 6(e) "codifies the rule that grand jury

2    activities generally be kept secret."  *Id.* at 218 n.9.

3        While it is clear that the need for secrecy behind Rule 6(e)(2) covers "matter[s]

4    occurring before the grand jury," the Ninth Circuit has acknowledged a right of public access to

5    ministerial grand jury records.  *Special Grand Jury*, 674 F.2d at 780–81.  In *Special Grand*

6    *Jury*, the court defined "ministerial" records as those that "generally relate to the procedural

7    aspects of the impaneling and operation of the . . . Grand Jury, as opposed to records which

8    relate to the substance of the . . . Grand Jury's investigation."  *Id.* at 779 n.1.  Specifically, the

9    court concluded that (notwithstanding the limitations of Rule 6(e)(2) and its underlying

10   policies) access to ministerial records should be granted unless a specific reason barring

11   discovery is provided.

12       To support the requests of their first motion, defendants rely on the general policy

13   driving the secrecy of Rule 6(e).  The rule intends to protect only the essence of grand jury

14   proceedings that "reveal some secret aspect of the inner workings of the grand jury."

15   *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1413 (9th Cir. 1993).  The Ninth Circuit warned,

16   however, that the doctrine of grand jury secrecy was not wholly encapsulated in Rule 6(e).

17   Disclosures of grand jury records must also not defeat the purpose and policies underlying the

18   rule.  In particular, the court instructed that the rule seeks to:  "(1) prevent the escape of

19   prospective indictees, (2) insure the grand jury of unfettered freedom in its deliberations,

20   (3) impede the subornation of perjury and tampering of witnesses by targets of the investigation,

21   (4) encourage forthrightness in witnesses without fear of retaliation, and (5) act as a shield for

22   those who are exonerated by the grand jury."  *Special Grand Jury*, 674 F.2d at 782–83.

23       In sum, the Ninth Circuit has held that a district court should consider whether

24   disclosure would threaten the legitimate interests of the government, grand jurors, or other

25   persons connected with the grand jury proceedings.  *Id.* at 782 n.4.  The Ninth Circuit thus set

26   forth an instructive standard, which permits disclosure of ministerial grand jury records that do

27   not reveal the substance or essence of the grand jury's investigation or deliberations.  It is under

28   these guiding rules that this Court considers defendants' requests for disclosure pursuant to the

right of public access to records describing the procedural aspects of grand jury proceedings. (See *infra* Section 3, Requested Discovery, for discussion of the particular requests).

### 2. DEFENDANT'S SECOND MOTION FOR DISCOVERY: DISCLOSURE PURSUANT TO DEFENDANTS' PENDING MOTION TO CHALLENGE THIS DISTRICT'S JURY-SELECTION PROCEDURES.

In defendants' second motion, movants request disclosure pursuant to the right to discovery of jury-composition information derived from their pending motion to challenge this district's jury selection procedures.

Under the Jury Selection and Service Act, "[i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community in the district or division wherein the court convenes." 28 U.S.C. 1861. In criminal cases, "the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provision of [the Act that sets forth the rules for selection of] the grand or petit jury." The motion must be made either before the voir dire examination begins or seven days after the defendant discovered or could have discovered the grounds therefor, whichever is earlier. 28 U.S.C. 1867(a).

Under Sections 1861 and 1867, substantial noncompliance occurs when administration of the Act fails to return a jury drawn from a random cross-section of the community. In *United States v. Cannady*, 54 F.3d 544, 546–47 (9th Cir. 1995), the Ninth Circuit held that a prima facie challenge to the Jury Selection and Service Act requires a defendant to demonstrate: "(1) that the group alleged to be excluded [was] a 'distinctive' group in the community; (2) that the representation of [that] group in venires from which the juries [were] selected [was] not fair and reasonable in relation to the number of such persons in the community; and (3) that [the] underrepresentation [was] due to systematic exclusion of the group in the jury selection process." The court held, however that the defendant did not have a right to a jury that *exactly* matched the community from which it was drawn. Some statistical disparity was constitutionally and statutorily permissible. *See Cannady*, 54 F.3d at 548 (collecting cases and

holding that absolute disparities between the number of ethnic minorities in the master jury wheel as compared to a given community that were below 7.7 percent were insubstantial).

To support a fair cross-section claim under the Act, a defendant may gain access to jury-selection records not otherwise available to the public.  In particular, Section 1867(f) provides:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . as may be necessary in the preparation or presentation of a motion under . . . this section . . . .  The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.

In *Test v. United States*, the Supreme Court declared that Section 1867(f) grants a defendant an "essentially . . . unqualified right to inspect jury lists."  *Test*, 420 U.S. at 30. This right of inspection, the Supreme Court explained, was not only required by the plain text of the statute, but also by the statute's overall purpose of insuring that "juries [are] selected at random from a fair cross-section of the community."  28 U.S.C. 1861.  Access to such records may not be conditioned on the defendants showing a probability of success on the merits of the jury-selection challenge.  *United States v. Beaty*, 465 F.2d 1376, 1380 (9th Cir. 1972). Other circuits have agreed.  In *United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996), the First Circuit held that "a litigant need only allege that he is preparing a motion to challenge the jury selection process" in order to gain a right of access to jury-selection records.  Only a formal motion challenging the composition of the jury-selection process must be supported by a sworn statement.  The Jury Selection and Service Act requires no such statement in support of a request to examine jury-selection records.  28 U.S.C. 1867(d).

Defendants allege that they anticipate filing a motion challenging jury-selection procedures with this Court (Br. 2).  Defendants are therefore entitled to the jury lists, as required by *Test*, and the relevant demographic data necessary for the preparation of their motion, as required by the Jury Selection and Service Act.

3. **REQUESTED DISCOVERY.**

### A.      Grand Jury Instructions.

In both motions, defendants request all instructions given to any grand jury that heard evidence in this matter.  In response to defendants' motion for discovery pursuant to the right of public access, the government does not object to this request, and only asks for a two-week period during which to provide the instructions.  The government does not specifically oppose the request in its response to defendants' second motion.  This Court agrees that such instructions do not fall within the bar of Rule 6(e) because their disclosure would not reveal the substance or essence of the grand jury proceedings.  Furthermore, disclosure of jury procedures and responsibilities poses no security threat to past, current or prospective jurors.  Accordingly, defendants' request for instructions given to any grand jury that heard evidence in this matter is **GRANTED**.

### B.      Records Setting Forth the Method of Jury Empaneling.

Defendants also request those records setting forth the method by which the grand jury was empaneled.  The government does not expressly respond to this particular request in defendants' motion pursuant to public access to jury records.  In response to defendants' second motion, the government also does not object to discovery.  Pursuant to a court order, the government has agreed to produce the manual of procedures that the clerk uses to compile the master and qualified jury wheels.  That manual contains the forms, procedures and checklists that the clerk uses to assemble the master jury wheel (a computerized list of the names and addresses of people who may be eligible to serve on a jury), the qualified wheels (a list of persons, chosen at random, who are eligible to serve on a jury), and by which the juries are empaneled (Weir Decl. ¶ 9).

Records reflecting the methods or procedures by which a grand jury is empaneled fall clearly within the definition of ministerial records as defined by the Ninth Circuit.  Such records are not protected from disclosure by Rule 6(e) secrecy because they reveal nothing of substance about the grand jury's investigation.  Sara Sun Beale, William C. Bryson, et al., *Grand Jury Law and Practice* 5:6, at n.2 (1986) (updated Nov. 2005).  Additionally, such discovery is

necessary to determine whether a successful, fair cross-section challenge exists, and is therefore required under the Jury Selection and Service Act. Accordingly, defendants' request for disclosure of the jury-selection procedures manual is **GRANTED**.

No other writings, memoranda, reports, manuals or other documents exist concerning the demographic make-up of the jury pool conducted by the clerk's office for the grand jury returning the indictment against defendants, nor for the selection of the forthcoming petit jury (Weir Decl. ¶ 11). That request is accordingly **DENIED**.

### C.   Orders Reflecting the Beginning or Extension of the Grand Jury Term.

Pursuant to the right of public access to jury records, defendants also request any order reflecting the beginning of the term or extension of the term of any grand jury that investigated the current matter. The Ninth Circuit has not yet addressed this issue. In support of this request, defendants invoke *In re Grand Jury Investigation*, 903 F.2d 180, 182 (3d Cir. 1990), which held that disclosure of the commencement and termination dates of the grand jury did not violate Rule 6(e). Specifically, the court explained that disclosure of those dates did not infringe on the freedom and integrity of the deliberative process. The Seventh Circuit agreed in *In re Cudahy*, 294 F.3d 947, 951 (7th Cir. 2002). There, the court held that the existence of a grand jury did not automatically designate all matters relating to the grand jury as secret. Instead, disclosure was permitted as long as it did not reveal the identities of the targets or subjects of the grand jury's investigation.

In response, the government argues that any court order reflecting the beginning or extension of the grand jury term should not be disclosed because it is against the policy of the United States Attorney's Office for the Northern District of California. Whether or not disclosure of grand jury term dates is the policy of the United States Attorney's Office for this district is not dispositive as to whether disclosure is mandated by the Jury Selection and Service Act. Furthermore, the Third Circuit's 1990 survey of district disclosure policies revealed that a majority of districts made the dates of their grand jury terms publicly available. The Third Circuit ordered discovery of ministerial records in *Grand Jury Investigation* because the

1    government in that case offered no specific or substantive reasons militating against disclosure.

2    *Grand Jury Investigation*, 903 F.2d at 184 n.7.

3        In the instant matter, the government has submitted a response opposing defendants'

4    motion for disclosure of the grand jury term dates.  Even so, the government only provides a

5    broad warning that disclosure of the dates would result in a general detriment to the

6    government's case, as well as jurors' freedom and security.  The government offers no specific

7    reason to bar discovery.  Without particular objections, it is not clear how disclosure of the

8    grand jury term dates will prejudice the government.  The public right of access to grand jury

9    records that are purely ministerial requires no showing of particularized need on behalf of

10   defendants.  *Special Grand Jury*, 674 F.2d at 780–81.

11       Disclosure of grand jury proceedings must include considerations of the possible effects

12   on the functioning of future grand juries, as well as the immediate effects on the particular

13   grand jury.  *Douglas Oil*, 441 U.S. at 222.  Because the grand jury in this particular matter is no

14   longer sitting, it is not apparent how disclosure of the commencement and termination dates will

15   now be a risk to any jurors.  The policy behind the rule may — under certain circumstances —

16   be violated if the grand jury dates of a *sitting* grand jury were to be disclosed, but the Court

17   does not decide that issue at this time.  Absent a more specific harm, defendants' request for the

18   court's orders reflecting the commencement or extension of any term of the grand jury that

19   returned an indictment against defendants is hereby **GRANTED**.

20                    **D.    Voting Records and Similar Records.**

21       Pursuant to the public right of access, defendants also request any orders to transfer

22   evidence from one grand jury to another (where more than one grand jury returned each of the

23   pertinent indictments) and any voting records regarding any extension of the grand jury.

24   Defendants argue that neither of these requests seeks disclosure of juror names or explanations

25   of the nature of the evidence transferred and should therefore be disclosed.

26       Defendants argue that a request for any order to transfer evidence between grand juries

27   is procedural because it does not disclose the names of jurors or any other substantive

28   information occurring before the grand jury.  An order to transfer evidence from one grand jury

United States District Court

For the Northern District of California

to another may be purely ministerial if it does not reveal the items shown to either grand jury. An order that describes or lists the evidence shown to a grand jury is not ministerial, however, because it reveals the substance of matters "occurring before" the grand jury. *Dynavac*, 6 F.3d at 1403.  To the extent that defendants' request does not reveal substantive grand jury material, all orders must be disclosed.  Any such order currently in possession of the United States Attorney's Office should be reviewed for determination of whether it reveals nonministerial information about the grand jury proceedings.  If the government opposes any disclosure, it may file an *ex parte* motion (of no longer than three pages) to the Court explaining its objection. Defendants' request for any order to transfer evidence between any grand juries in the instant matter is otherwise **GRANTED**.

Defendants argue that the request for voting records to extend the life of any grand jury is similarly procedural.  In *Special Grand Jury*, however, the Ninth Circuit held that the language of Rule 6(e) is reasonably understood as protecting from disclosure the transcripts of grand jury testimony, votes of jurors on substantive questions, and similar records. *Special Grand Jury*, 674 F.2d at 780.  The government presents a persuasive argument that any vote by grand jurors is substantive, or "occurring before the grand jury," and therefore inviolably secret (Opp. 5).  Disclosure of particular votes of grand jurors on any matter may therefore encroach on grand jury privacy.  In fact, at least one other district court has held that a defendant's request for voting records relating to any decision to extend the life of a grand jury was nonministerial.  *In re Grand Jury Proceedings, Special Grand Jury 89-2*, 813 F. Supp. 1451, 1470 (D. Colo. 1992).  Defendants' request for such records is therefore **DENIED**.

Finally, defendants request a copy of any subpoenas for documents, names of persons receiving information and lists of exhibits presented to the grand jury, as well as a list of persons to whom materials were disclosed.  The government objects because defendants offer no reason for overcoming the grand-jury secrecy doctrine, particularly against the presumption of regularity in grand jury proceedings (Opp. 5, citing *United States v. R. Enters., Inc.*, 498 U.S. 292, 300–01 (1991)).  The Court agrees with the government.  Quite simply, these requests are for information regarding the proceedings "occurring before the grand jury."  Disclosure of the

exhibits presented to grand jurors, persons who have seen the exhibits and a list of the materials disclosed is not solely procedural, and may reveal the essence of the grand jury proceedings.  At least one other district court has agreed that a defendant's request for all names of persons receiving information about matters occurring before the grand jury was nonministerial.  *Special Grand Jury 89-2*, 813 F. Supp. at 1470.  Defendants offer no reason to distinguish the instant matter from that decision.  Accordingly, defendants' request for disclosure of those items is **DENIED**.

### E.       Juror Names, Roll Sheets and Attendance Records.

Pursuant to the public's right of access to jury records, defendants request disclosure of grand juror attendance information and in camera disclosure of the grand juror names that returned defendants' indictments.  In their second motion, defendants also seek a copy of juror utilization reports for this district's grand and petit juries.  Juror utilization reports for a grand jury set forth the number of grand jurors present in each grand jury session and the number of hours in each session.  Jury utilization reports for a petit jury set forth the number of prospective jurors reported on a given day and, of that total, the number of persons:  (1) selected as jurors, (2) challenged or excused by the court for cause, and (3) not selected or challenged.

In their motion for public access, defendants contend that the grand-jury roll sheets, attendance records and records of substitutions are necessary to determine whether a quorum of the grand jury was present throughout the proceedings and whether the jurors returning the indictment were present to review the evidence (Br. 6).  In *Special Grand Jury*, however, the Ninth Circuit stated that, as to "roll sheets reflecting composition of the . . . Grand Jury, attendance records of the Jurors, and any substitutions[,] . . . [i]t would be reasonable to hold that this element of the request runs afoul of the doctrine of grand jury secrecy, in spite of the fact that it seems not to fall within the scope of the Rule 6(e) language." *Special Grand Jury*, 674 F.2d at 782.  The Court agrees with the government that the composition of the particular grand jury that indicted defendants, whether disclosed in camera or otherwise, falls within the purview of Rule 6(e).

**United States District Court**
For the Northern District of California

1    Defendants may access nonministerial records upon a showing of need. *Douglas Oil*,

2    441 U.S. at 221.  In *Douglas Oil*, the Supreme Court held that grand-jury transcripts for use in

3    other judicial proceedings requires a showing of particularized need.  In *United States v.*

4    *Plummer*, 941 F.2d 799, 806 (9th Cir. 1991), the Ninth Circuit applied the principle of

5    particularized need for disclosure of nonministerial grand jury transcripts to an action

6    challenging a defendant's immunity agreement and his eventual conviction.  Here, because the

7    requested records of grand jury roll sheets, attendance information and utilization reports are

8    not purely ministerial, defendants must demonstrate particularized need for disclosure.

9    Consistent with the Ninth Circuit's holding in *Special Grand Jury*, defendants have not

10   demonstrated any interest great enough to overcome the traditional interests of grand jury

11   secrecy.  *See also United States v. McElhiney*, No. 98-40083-01-RDR, 2002 WL 31498985, *5

12   (D. Kan. Aug. 2, 2002) (holding that interest in grand-jury secrecy not outweighed by

13   defendant's interest in disclosure of roll sheets).

14        Defendants are not entitled to disclosure of these records under the Jury Selection and

15   Service Act either.  It is not clear how reports of the number of persons selected and excused as

16   jurors is necessary to support a claim for a substantial failure to maintain a representative jury

17   composition.  For the reasons that the jury questionnaires are not necessary for such a claim,

18   defendants' request for grand juror attendance information, juror utilization reports, and in

19   camera disclosure of names of grand jurors that returned the pertinent indictments is **DENIED**.

20                **F.    Jury Lists and JS-12 Reports.**

21        The government concedes that some disclosure beyond what is granted by the public

22   right of access is also appropriate.  *First*, the government agrees that the jury lists for the

23   2003 master and qualified jury wheels — from which the grand jurors that returned the

24   pertinent indictments were chosen — are required by *Test* (Opp. 7–8).  Jury lists for the 2003

25   San Francisco/Oakland master jury wheel include approximately 80,000 names compiled from

26   voter registration records that are supplemented with a list of persons with state identification

27   cards (Weir Decl. ¶ 5).  The 2003 qualified jury wheel is composed of a subset of persons who

28   are eligible to serve on a jury.  Both lists include the names of the grand jurors that returned the

**United States District Court**
For the Northern District of California

1  indictment against defendants.  Because the Supreme Court has expressly held that jury lists are

2  required to raise a fair cross-section challenge, defendants' request for disclosure of the jury

3  lists of the grand jury that indicted them is **GRANTED** with a prohibition against disclosure of

4  the addresses and other personal information of those individuals.  The list shall be disclosed to

5  defendants' counsel and investigators, as needed to prepare their fair cross-section challenge in

6  this criminal action.  The names may not be revealed for any other purpose.  Defendants also

7  request the current (2005) master and qualified jury wheels in preparation of their challenge of

8  the forthcoming petit jury-selection process.  Inspection of the 2005 jury wheels is **GRANTED**,

9  but with the same restrictions.  The lists shall only be disclosed to defendants' counsel and

10  investigators, as necessary, and may only be used in conjunction with the fair cross-section

11  challenge in this criminal matter.  The Northern District of California does not maintain a

12  separate grand jury wheel (Weir Decl. ¶ 6).  Accordingly, that request is **DENIED**.

13       *Second*, the government does not oppose production of the 2003 JS-12 report relating to

14  the selection process of the pool from which the jurors who returned the initial and second

15  superceding indictments were selected (Opp. 7).  JS-12 forms provide:  (1) the number of names

16  placed on the master wheel and the number of names drawn from the master wheel to whom

17  questionnaires were mailed; (2) the number of questionnaires completed and returned, returned

18  as undeliverable by the post office, or not yet returned; (3) a demographic analysis of samplings

19  drawn from returned jury questionnaires and from those placed on the qualified jury wheel; and

20  (4) a statistical comparison of the jury wheel sample against general-population data by racial,

21  ethnic and gender classifications.  The government concedes that the forms provide defendants

22  with the statistics necessary to identify whether an identifiable group was substantially

23  under-represented in the jury pool from which defendants' grand jury was drawn.  The Court

24  agrees.  Defendants' request for production of the 2003 JS-12 report is therefore **GRANTED**.

25  To allow defendants to prepare their challenge to the jury-selection procedures used for the

26  potential petit jury, their request for the 2005 JS-12 report is **GRANTED**.

27       Defendants also request similar records and statistics, including JS-12 forms, for all jury

28  wheels since the implementation of General Order No. 6, which is the *Plan of the United States*

*District Court for the Northern District of California for the Random Selection of Grand Jury and Petit Jurors*.  The government objects to this request as overbroad.  In particular, the government contends that permissible discovery extends only to documents pertinent to the grand jury that indicted them (Opp. 8).  The government relies on *United States v. Layton*, 632 F. Supp. 176, 178 (N.D. Cal. 1986), which held that it was inappropriate to allow a defendant to challenge jury-selection proceedings that had not been used to select his jurors and could not have resulted in prejudice to the defendant.  While the Ninth Circuit has not ruled on this issue, several circuits have.  In *United States v. Bearden*, 659 F.2d 590, 601 (11th Cir. 1981), the Eleventh Circuit held that a defendant did not have standing to complain about the excusal of jurors in other cases.  The Sixth Circuit also expressly held that a defendant's unqualified right to inspection was "satisfied by disclosure of the master lists and the relevant demographic data about the general pool from which the *specific* grand jurors were selected." *United States v. McClernon*, 746 F.2d 1098, 1123 (6th Cir. 1984) (emphasis added).

Movants point to several decisions requiring defendants to demonstrate that data of discrimination exists "over an extended period of time" and, therefore, defendants should be allowed to inspect jury records of past grand and petit juries.  *E.g.*, *Hernandez v. Texas*, 347 U.S. 475, 480 (1954).  Defendants confuse the requirements for disclosure under the Act and disclosure for a constitutional claim.  The decisions cited involved *constitutional* fair cross-section challenges.  Defendants may be permitted to inspect the records of past and petit juries in preparation of a constitutional claim, but defendants must first present some evidence tending to show the existence of the essential elements of their challenge.  *See Douglas Oil*, 441 U.S. at 221.  Disclosure under the Act is only permitted in preparation of a claim under the Act. 28 U.S.C. 1867(f).  Given the facts currently before the Court, defendants' request for writings, reports or other similar records relating to jury-selection procedures for past grand juries and past petit juries is not authorized by 28 U.S.C. 1867(f).  The request is therefore **DENIED**.

### G.   Other Requested Disclosures.

Movants also seek access to a range of other jury-selection documents.  The government argues that any additional discovery is not "necessary" to the preparation of a motion under

**United States District Court**
For the Northern District of California

Section 1867, and would needlessly disrupt the operation of the clerk's office. *See Layton*, 519 F. Supp. 946, 952 (N.D. Cal. 1981) ("We must also keep in mind the extremely disruptive potential of this kind of motion."). The Court agrees with the government. While a defendant has a statutory right to data required for a proper assessment of the composition of the panel, the Jury Selection and Service Act does not automatically permit disclosure of other jury information absent a sworn statement of facts which, if true, would constitute a substantial failure to comply with the Act. 28 U.S.C. 1867(d); *United States v. Buckner*, 830 F.2d 102, 104 (7th Cir. 1987). The right to discovery by the Act and *Test* is not limitless.

### i.     *Jury Questionnaires.*

Defendants seek access to the jury questionnaires of the grand jury that indicted them. Jury questionnaires are used to collect information regarding a prospective juror's background, including but not limited to his or her address, age, race, education, general experiences, and knowledge of defendants, witnesses or attorneys in matters before the grand or petit jury. While the Supreme Court required disclosure of jury lists in *Test*, it did not require the disclosure of jury questionnaires. *Test*, 420 U.S. at 30; *accord United States v. Davenport*, 824 F.2d 1511, 1514–15 (7th Cir. 1987) ("*Test* does not hold that completed juror questionnaires must be made available in addition to jury lists."). Defendants are entitled only to discovery "necessary" to prepare a motion alleging substantial noncompliance with the Act's jury selection procedures. Because JS-12 forms supply the relevant demographic data (such as racial, ethnic and gender statistics) required to challenge this district's jury-selection procedures, defendants do not need the questionnaires in preparation of their motion.

With regard to the request for completed jury questionnaires of those persons not qualifying for service, defendants have not shown that this district's jury-selection plan provides for disqualification, exclusion, excusal or exemption inconsistently with the Act. Clerks may make determinations in the jury-questionnaire screening process that are neither "subjective" nor "extrastatutory." *United States v. Evans*, 526 F.2d 701, 706 (5th Cir. 1976). The Clerk of this Court makes his qualification determinations in accordance with the Northern District's selection plan, consistent with the Jury Selection Act (Opp., Exh. A (*Jury Selection*

1   *Plan for the Northern District of California, Section IX, Exclusion, Excuse or Exemption of*

2   *Jury Service, at 6–8))*.  Discretionary determinations are made by the chief judge.  Disclosure of

3   jury questionnaires and jurors' personal and private information cannot therefore assist in the

4   preparation of defendants' motion, and is not necessary.

5       Defendants are correct in arguing that, when and if they make a substantive jury-

6   composition motion, disclosure might be proper.  The discovery claim itself, however, must still

7   fall under the Act for this Court to order disclosure.  28 U.S.C. 1867(f).  Otherwise, disclosure

8   of nonpublic grand jury records could be mandated for a number of frivolous claims.  In

9   addition, any screening processes with a disparate impact on protected groups would be

10  apparent from the demographics of the qualified jury wheel, which defendants will receive in

11  the JS-12 forms.

12      The government also contends that defendants' right to discovery is limited to records

13  that support a motion challenging a substantial failure to comply with the Act or otherwise

14  barred by existing law (Opp. 9).  Disclosure of records for the preparation of a challenge against

15  minor infractions is not permitted.  Because the Ninth Circuit has held that the clerk's failure to

16  follow up on unreturned questionnaires would not be a "substantial failure" to comply with the

17  Act, *United States v. Santos*, 588 F.2d 1300, 1303 (9th Cir. 1979), the government argues that

18  disclosure of the questionnaires for that purpose is not required.  The Court agrees.  For the

19  foregoing reasons, defendants' motion for completed jury questionnaires and lists of all

20  disqualified and excused persons is **DENIED**.

21              *ii.*     ***Foreperson Selection Records***.

22      Defendants request transcripts, documents, manuals and memoranda describing the

23  method by which grand jury forepersons are selected.  Disclosure of materials necessary to

24  support a claim under the Act is required by 28 U.S.C. 1867(f).  Alternatively, defendants may

25  bring a claim that discrimination in the foreperson-selection procedures violated their

26  constitutional rights.  In order to gain a right of disclosure for a constitutional claim, defendants

27  must present some evidence tending to show the existence of the essential elements of their

28  claim.  *United States v. Armstrong*, 517 U.S. 456, 468 (1996).  The government objects to the

**United States District Court**
For the Northern District of California

1   disclosure of foreperson selection records on the ground that the Act does not authorize it.  In

2   *Layton*, 519 F. Supp. at 957, however, Chief Judge Robert Peckham concluded that "the

3   allegation regarding discrimination in the selection of forepersons fails to state a claim under

4   the statute."  The Court agrees that defendants cannot support a claim for discovery under the

5   Act.  The request for discovery cannot therefore be necessary to the preparation of a valid

6   challenge.  Defendants have provided no specific evidence or arguments to support a

7   constitutional claim.  Accordingly, defendants request for records relating to the selection of

8   jury forepersons is **DENIED**.

9                       *iii.*       *Original Source List.*

10              Defendants seek the original source list from which the initial selection of the grand jury

11  used in this case was made.  The government opposes disclosure of the raw data list as

12  "essentially meaningless" to defendants' challenge that the grand jury that indicted them was

13  not drawn from a fair cross-section of the community.  Defendants reply that this district and

14  other circuits have suggested that statistics showing the demographics of the grand-jury pool are

15  significant to a fair cross-section claim.  This Court agrees that defendants have an unqualified

16  right to relevant demographic data relating to the jury wheel from which their grand jury was

17  drawn and from which the petit jury will be drawn.  *Test*, 420 U.S. at 30.  Defendants will have

18  access to the demographic composition of the grand-jury and petit-jury pool, however.  The

19  JS-12 forms that the government will provide (pursuant to this order) provides defendants with

20  demographic data relating to the pertinent grand jury and qualified jury wheels.  The raw data

21  contained in the original source list is not *necessary* to the preparation of defendants' fair

22  cross-section challenge.  The Act does not therefore permit disclosure of the list.  Accordingly,

23  defendants' request is **DENIED**.

24                      *iv.*       *Computer Program Description.*

25              The clerk's office uses two source lists in compiling its master jury wheels:  voter

26  registration lists and lists of persons who have obtained a driver's license or state identification

27  card (Weir Decl. ¶¶ 3–4).  The clerk's office contracts the compilation of names from these

28  two lists and creation of the master jury wheels to a private firm.  Defendants seek a text

United States District Court

For the Northern District of California

1   description of the computer program that compiles the two lists and purges any duplicate

2   names.  Defendants also seek a description of all technical characteristics of the program,

3   including those methods used to purge duplicates from the lists.  The program itself, manuals

4   and technical documentation are not in the possession of the clerk.  The clerk's office submitted

5   a description of the instructions it provides to the private company (*see* Weir Decl. ¶ 4).  The

6   government also objects to additional disclosure because they contend that the procedural

7   manual which they have agreed to provide already includes a detailed description of the

8   procedures employed in the merge-purge jury selection process.  To the extent that the clerk's

9   manual and the Weir declaration comply with defendants' request for a description of how the

10  information lists are merged, that request is **GRANTED**.  Defendants have offered no reason as to

11  how a more detailed program description is necessary to the preparation of their fair

12  cross-section challenge.  All requests for additional documents relating to the description or

13  technical characteristics of the computer program are therefore **DENIED**.

14              **H.       Disclosure Deadline and Further Discovery**

15              The Jury Selection and Service Act requires disclosure of all materials necessary to

16  prepare a fair-cross section challenge.  At the current junction, all discovery requests denied in

17  this order are unnecessary to support a claim under the Act.  If, however, defendants later

18  demonstrate that additional disclosure is necessary to their challenge, they may request further

19  discovery by motion to the Court.  Until then, the government (in coordination with the clerk's

20  office if necessary) shall comply with all the discovery requests granted in this order by **JULY**

21  **21, 2006**.

22              **I.       Stay of Trial and Delay of Hearings.**

23              Defendants move for a delay of hearings on any motion to dismiss predicated on the

24  irregularities in the composition of the grand jury.  So that defendants have a chance to fully

25  litigate their challenges to the jury-selection procedures in this capital case, that request is

26  **GRANTED**.  The last date that defendants may file a motion challenging the jury-selection

27  proceedings shall be August 18, 2006.

28

Defendants also request that this Court stay the trial proceedings until inspection or discovery of jury records is completed.  Only after a court has determined that there has been "a substantial failure to comply with the [jury selection] provisions" does the Act provide that the "court shall stay the proceedings pending the selection of a grand [or petit] jury in conformity" with the Act.  28 U.S.C. 1867(d).  Additionally, the current trial date will allow ample time to litigate the jury-composition issues.  Defendants have not alleged any specific prejudice that will result from the current trial schedule.  That request is accordingly **DENIED**.

### CONCLUSION

For the reasons stated above, defendants' motions for discovery are **GRANTED IN PART** and **DENIED IN PART**.  Defendants' motion for a delay of any hearings relating to the composition of the grand jury is **GRANTED**; and defendants' motion for a stay of trial is **DENIED**.

**IT IS SO ORDERED.**

Dated:  June 30, 2006

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

21