IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDGAR DIAZ, RICKEY ROLLINS, DON JOHNSON, ROBERT CALLOWAY, DORNELL ELLIS, EMILE FORT, CHRISTOPHER BYES, PARIS RAGLAND, RONNIE CALLOWAY, ALLEN CALLOWAY, and REDACTED DEFENDANTS NOS. ONE & TWO,<br><br>Defendant. | No. CR 05-00167 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO EXCLUDE JARGON EXPERT AND DENYING MOTION TO PRECLUDE EXPERT WITNESSES FROM RELYING ON OUT-OF-COURT STATEMENTS AND WITNESS PRECLUSION SANCTION** |

**INTRODUCTION**

In this criminal RICO action, defendants seek to exclude the expert testimony of San Francisco Police Sergeant/Inspector Toney Chaplin. The government's expert disclosure for Chaplin indicated that he would testify "as an expert in the 'street language' or 'slang' used by African American gangs in the San Francisco area" (Cutler Exh. B-1). On September 13, 2006, a *Daubert* hearing was conducted regarding Chaplin's proposed testimony. Inspector Chaplin testified and was cross-examined.

Defendants also filed a related motion that this order disposes of. In that motion, defendants challenge the admissibility of the expert testimony of Chaplin, San Francisco Police Lieutenant Kitt Crenshaw, and ATF Special Agent Thomas Cleary (Diaz Br. 1). Defendants contend that each of the three experts' testimony are inadmissible because of similar defects

present in all of their proposed testimony. Crenshaw will testify as a narcotics-distribution expert (Cutler Exh. B-2). Cleary will testify as a "general expert on firearms and specifically as an expert in the interstate nexus of firearms and ammunition" (Cutler Exh. B-3).

This order disposes of the motion specific to Chaplin *and* the motion applicable to all three experts. For the following reasons, the motion specific to Chaplin is **DENIED IN PART AND GRANTED IN PART**. The motion applicable to all three experts is **DENIED.** A separate order addresses yet a separate motion to exclude Crenshaw's testimony for defects specific to his proposed testimony.

**STATEMENT**

At the *Daubert* hearing, Chaplin testified that he has been an SFPD officer for 16-½ years. He has been a member of the SFPD Gang Task Force since 1999. Specifically, he is assigned to the African American gangs "wing" of the task force, which investigates African American gangs in San Francisco. Chaplin himself is African American. During his career, he has investigated over 500 gang cases, and spoken with over 100 gang members in custodial and noncustodial situations. He has also spoken with community members in gang-related areas of San Francisco. Chaplin once testified in another case as an expert on African American gangs. He has never testified as an expert regarding gang jargon. He has, however, testified as a fact witness "dozens of times."

Chaplin is a certified gang professional. He was trained on the subject of African American gangs by attending conferences and classes put on by various law enforcement agencies and commercial companies. He has reviewed literature on gangs. He has also downloaded materials from gang websites and other informational websites, and has had daily contact with gangs as part of his regular duties. He teaches about African American gangs to police academy recruits, to probation officers, and at "gang-free community" seminars.

Chaplin was an officer involved in the investigation of some of the acts alleged against defendants here. During the investigation, he listened to taped conversations between several defendants in this case, who were members of the Down Below Gang. Over his career, he has listened to taped conversations in four or five other gang-related cases. He is assigned to the

Bayview Hunters Point district of San Francisco, and has been in the Sunnydale housing project, where the Down Below Gang purportedly operates. In the past two years, he has spent about ninety percent of his time investigating the Bayview Hunters Point district of San Francisco. He has had contact with some defendants in this case.

Chaplin testified about his methodology of interpreting gang jargon. He explained that his expertise arose from his contacts during the course of his career. He has spent time talking to gang members, people who were "commingled" with gangs, and other community members. When he hears a new slang term, he determines its meaning by finding out the definition from people who might be familiar with the term. Such individuals might include the speaker himself, other people in the community, or other officers in the Gang Task Force. Often he will hear a term on the street and is able to understand it from the statement's context and previous encounters with the phrase. On cross-examination, he agreed that there is no written material to show how he arrived at his conclusions regarding various terms. Moreover, there is no glossary published by a law enforcement agency or gang expert that would define the slang relevant to this case.

Chaplin testified that was prepared to interpret taped conversations of defendants. In the Chaplin expert disclosure, there is a list of jargon terms with corresponding definitions. Chaplin testified that his testimony would be limited to those phrases. Those jargon terms are taken from the audio tapes of conversations between various defendants. Chaplin testified that the terms are not used solely by street gangs, nor are they specific to the Sunnydale projects or Bayview Hunters Point.

Chaplin initially testified that with the exception of two phrases on the list, he had "heard" all the phrases before listening to the tape recordings. The first phrase he believed he had not heard before the investigation was "the code," which the expert disclosure defines as "Down Below specific term for not talking to authorities" (Cutler Exh. B-1). Chaplin testified that he formed his opinion regarding the definition of "the code" by reading letters exchanged by Down Below members; periodically hearing the word used in conversation, i.e., "He ain't sticking to the code"; and hearing it on rap albums as "G-code" or "gangsta code." Chaplin

3

clarified that he had, in fact, heard the term prior to the investigation. The Down Below Gang, however, had used it far more than any other gang Chaplin had contact with.

The second phrase Chaplin had not heard before the investigation was "row was still on the flow," which he defines as "Hook's reference to dropping a clip on the ground" (*ibid*.). Chaplin only learned that definition from the context of that particular reference. The phrase was uttered by an individual during a taped conversation that Chaplin reviewed. During a murder investigation in which defendant Diaz was a suspect, an eyewitness told officers that a magazine from an assault weapon used in the crime had been left on the ground. Chaplin believed that the jargon phrase and the eyewitness's statement referred to the same event. Chaplin thus interpreted the word "row" to mean an assault rifle clip and "flow" to mean "floor," as in "flo'."

## ANALYSIS

**1.  CLAIMS RELATED TO CHAPLIN.**

### A.  Rule 702.

"Rule 702 assigns to the district court the role of gatekeeper and charges the court with assuring that expert testimony rests on a reliable foundation and is relevant to the task at hand." *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) (internal quotations omitted). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This order finds that Chaplin's testimony satisfies the requirements of Rule 702.

It is conceded that there is no literature or glossary one might consult to verify Chaplin's testimony. Nor is there a list of slang terms on file with the SFPD. In that sense, Chaplin's testimony is not "verifiable." It is plain, however, that the "*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the

4

methodology or theory behind it." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000). Rule 702 does not require verification. It requires only "reliable principles and methods." Furthermore, the Supreme Court has clearly stated that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999)

Chaplin's testimony is based on standard principles of language interpretation, the foundation of which is repetition and context. Defendants cannot reasonably dispute the manner in which Chaplin acquired his expert knowledge. We come into this world with no knowledge of language, but we learn to communicate through repetition and context. Similarly, immigrants who come to our country with no knowledge of English learn the language through repetition and context. To take only one example, nicknames are often never written down, but we learn them through repetition and context. For Chaplin, repetition and context based on experience are his methodologies. In his long career as a gang investigator, he has spent significant time talking to gang members and others who fraternize with them. He comes in contact daily with the phrases he will define at trial. As the Ninth Circuit stated, "FRE 702 works well for this type of data gathered from years of experience and special knowledge." *Hankey*, 456 F.3d at 1169. This case is similar to *United States v. Decoud*, 456 F.3d 996, 1013-14 (9th Cir. 2006), in which the Ninth Circuit found admissible the testimony of a gang jargon expert who relied upon: "(1) his training and experience; (2) each word in the context of the specific phone call; and (3) each phone call in the context of other phone calls that he understood."

The one phrase for which Chaplin failed to establish a reliable basis for his understanding was "row was still on the flow." Prior to the investigation, Chaplin was unfamiliar with that phrase. Chaplin's only articulated basis for his interpretation was the context in which it was uttered in our very case. He only pieced together an understanding based on other investigatory facts. In this instance, context alone is an insufficient basis on which to support his interpretation of the word. His interpretation of that term fails scrutiny under Rule 702 on the basis of lack of repetition.

5

Defendants point out that Chaplin has never testified as an expert witness in gang jargon. The Ninth Circuit is clear, however, that this is not fatal to a party's attempt to qualify a witness as an expert. "[T]here is nothing in Rule 702 that requires an expert to have been previously qualified as an expert; such an approach would lead to absurd results." *United States v. Abonce-Barrera*, 257 F.3d 959, 965 (9th Cir. 2001). Chaplin's credentials are impressive, and his methodology is sound. Rule 702 only requires that Chaplin demonstrate "knowledge, skill, experience, training, or education" in the field of his opinion testimony. This order finds that he has done so.

### C.   Rule 404(b).

Defendants contend that "Chaplin will be talking about what he has learned during the investigation of prior criminal activity or bad acts" (Johnson Br. 6). Rule 404(b) generally prohibits using evidence of "other crimes, wrongs, or acts" to prove the "character of a person in order to show action in conformity therewith." Chaplin will be testifying as an expert regarding the interpretation of jargon recorded on tapes. As an expert, he will not be testifying as a fact witness to establish any of defendants' prior acts. Chaplin's testimony will not violate Rule 404(b).

### D.   Cultural Stereotypes.

At the *Daubert* hearing, defendants cited *United States v. Verduzco*, 373 F.3d 1022, 1033-34 (9th Cir. 2004), and *Jinro American Inc. v. Secure Investments., Inc.*, 266 F.3d 993, 1005-10 (9th Cir. 2001). Those cases involved the proffered testimony of "culture experts," which the Ninth Circuit determined to be unreliable and prejudicial. In *Jinro*, for example, the "expert" offered "impressionistic generalizations about Korean businesses based on his 'hobby' of studying Korean business practices, unspecified input from his office staff and his marriage to a Korean woman." That testimony was "unreliable and should not have been dignified as an expert opinion."

*Jinro* and *Verduzco* have nothing to do with our case. Those cases dealt with supposed conduct based on culture. Our case deals with the meaning of words actually uttered using interpretation based on reliable methods.

6

**2.    CLAIMS RELATED TO ALL EXPERTS.**

Defendants claim that: (1) the government has not provided all of the experts' foundational material, (2) the experts' testimony will violate defendants' rights under the Confrontation Clause, and (3) the experts should not be allowed to testify as both expert witnesses and fact witnesses. These claims lack merit.

**A.    Experts' Foundational Material.**

Defendants contend that they have not been provided "all of the foundational materials ordered produced by the Court as to [the expert] witnesses" (Diaz Br. 1-2). At the *Daubert* hearing, they expressed that they wanted access to the foundational materials that formed the basis for the experts' knowledge. They claim that the government is violating this Court's July 21, 2006 order, which stated that by "July 31, government counsel shall itemize each police report which has been relied on by an expert (by Bates numbers). This must be done separately for each expert. If this has already been done in the last government summaries, it need not be done again."

Defendants misperceive the July order. That order did not require the disclosure of the entire basis for the experts' opinions. It only required the police reports the experts were *relying on* to come to their conclusions in *this* case. It did not require identification of all documents and witnesses forming the basis of the experts' entire body of knowledge and experience. No rule, statute, or case necessitates such disclosure. At oral argument, the government represented that it had complied with the July order and has itemized all relevant police reports. This order rests on that representation.

**B.    Confrontation Clause.**

Defendants contend that the experts' reliance on out-of-court statements violates defendants' Confrontation Clause rights, citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Defendants also object to the witnesses' use of hearsay to support the foundation of their expertise. While the government's experts' opinions may rely, in part, on prior interviews and, thus, out-of-court statements, this will not violate the Confrontation Clause, *Crawford*, or the hearsay rule. *See United States v. Magallanez*, 408 F.3d 672, 679 (10th Cir. 2005).

7

Moreover, under Rule 703, an expert may base his or her opinion at trial on inadmissible facts and data of a type "reasonably relied upon by experts in the particular field in forming opinions upon the subject." This order finds that the experts' reliance on out-of-court statements will not impinge on defendants' rights.

### C. Fact and Expert Witnesses.

Defendants also claim that it would be error to allow the officers to testify as experts because they also investigated some of the defendants in this case. To the Court, this is like complaining that a treating physician should not be allowed to give expert testimony. It seems like a strange objection.

Though the Ninth Circuit has permitted officers who investigated a defendant to serve as expert witnesses, there appears to be no Ninth Circuit authority directly on point. *See Abonce-Barrera*, 257 F.3d at 965. Defendants cite *United States v. Dukagjini*, 326 F.3d 45, 53-55 (2d Cir. 2003), which gave three reasons for noting that "the use of the case agent as an expert increases the likelihood that inadmissible and prejudicial testimony will be proffered." *First*, "when a fact witness or a case agent also functions as an expert for the government, the government confers upon him the aura of special reliability and trustworthiness surrounding expert testimony, which ought to caution its use." *Second*, "expert testimony by a fact witness or case agent can inhibit cross-examination, thereby impairing the trial's truth-seeking function." *Third*, "when the prosecution uses a case agent as an expert, there is an increased danger that the expert testimony will stray from applying reliable methodology and convey to the jury the witness's sweeping conclusions about [a defendant's] activities . . . ." The Second Circuit, however, did not create a *per se* rule against fact witnesses testifying as expert witnesses. Indeed, it was only when the district court permitted the witness to stray beyond the court's "properly established . . . limits on [the expert] testimony" that the court "failed to fulfill its gatekeeping function."

The Second Circuit's warnings are noted. As the Sixth Circuit has stated, "the district court and the prosecutor should take care to assure that the jury is informed of the dual roles of a law enforcement officer as a fact witness and an expert witness, so that the jury can give

8

proper weight to each type of testimony." *United States v. Thomas*, 74 F.3d 676 (6th Cir. 1996). This order holds that the experts shall be "permitted to testify as both a fact and an expert witness," so long as the government is careful to delineate when they are testifying as an expert witness, and when they are not. *United States v. Harris*, 192 F.3d 580, 589 (6th Cir. 1999).

## CONCLUSION

Accordingly, defendants' motion to exclude Chaplin's testimony is **DENIED IN PART AND GRANTED IN PART.** If cross-examination at trial develops a record that his basis for any phrase is fatally thin, the Court will then consider a motion to strike Chaplin's testimony. As discussed above, however, Chaplin may not testify to the meaning of the phrase "row was still on the flow." Otherwise, Chaplin has sufficiently demonstrated that: (1) his testimony is based on sufficient facts or data; (2) his testimony is the product of reliable principles and methods; and (3) he has applied the principles and methods reliably to the facts of this case.

Additionally, for the above-stated reasons, defendants' Motion to Preclude Expert Witnesses From Relying on Out-of Court Statements and Witness Preclusion Sanction is **DENIED.**

**IT IS SO ORDERED.**

Dated: September 19, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE