IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>EDGAR DIAZ, RICKEY ROLLINS,<br>DON JOHNSON, ROBERT CALLOWAY,<br>DORNELL ELLIS, EMILE FORT,<br>CHRISTOPHER BYES, PARIS<br>RAGLAND, RONNIE CALLOWAY,<br>ALLEN CALLOWAY, and REDACTED<br>DEFENDANTS Nos. ONE & TWO,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　　／ | No. CR 05-0167 WHA<br><br>**ORDER DENYING<br>DEFENDANTS' MOTION TO<br>SUPPRESS INTERCEPTED<br>COMMUNICATIONS**<br>(Motion Docs. 590, 600, 603,<br>620, 626) |

**INTRODUCTION**

In this RICO gang prosecution, defendant Emile Fort moves to suppress all communications intercepted while Fort was an inmate at the San Francisco County jail on state charges of murder. Defendants Dornell Ellis and Edgar Diaz also move to suppress the same conversations to the extent either was in the intercepted conversations. Defendants Rickey Rollins and Don Johnson have joined Ellis's motion to suppress the intercepted communications that involve either of them. The motions are based on the following grounds: (1) the state order authorizing the interception was illegal; (2) the interception violated movants Ellis and Diaz's Fourth Amendment rights; and (3) the interception of the communications also violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 2510–22.

## STATEMENT

Inspector Antonio Casillas applied for an order from the San Francisco Superior Court of California on May 28, 2004, the same day an arrest warrant was issued for Fort. The arrest warrant was issued for the murder of Jovanie Banks and Michael Hill as well as the wounding of Restelle Richson on January 19, 2004 (Casillas Decl. In Support of State Order Granting Authorization, June 15, 2005, at 2).[1] The order, granted on June 1, 2004, authorized the interception of all communications made by Fort while he was an inmate at the San Francisco County jail. On July 8, 2004, Fort was arrested and incarcerated in the San Francisco County jail based upon the May 2004 arrest warrant. The San Francisco Sheriff's Department recorded all communications made by Fort either via telephone or in the visiting room (State Order Granting Authorization, June 1, 2004). Monitoring under the June 2004 order continued until March 31, 2005, when Fort and his attorney learned of the monitoring. Inspector Casillas subsequently sought and obtained further authorization to continue monitoring Fort's communications on June 15, 2005 (Casillas Decl. at 7; State Order Granting Authorization, June 15, 2005). The visiting room had glass dividers between the inmate and his visitor. Visiting-room communications took place through a telephone (Tamburello Decl. at ¶ 5). Both orders required the Sheriff's Department to place warning signs on the wall alerting Fort that recordings might occur. Additionally, the Sheriff's Department was not to disclose the existence of the recordings to Fort. Both orders were to remain in effect until further order of the Court.

The Sheriff's Department posted signs on the telephones Fort used. Each stated: "Non Attorney calls may be recorded or monitored." After each order was granted, the department recorded Fort's telephone conversations and visiting-room communications. This included communications with other defendants in this case. Calls were intercepted beginning in July 2004 and continued at least through July 2005 (Opp. 4). Outgoing calls

---

[1] Fort has been charged in the instant action with the murder of Jovanie Banks and Michael Hill; he has also been charged with the attempted murder of Restelle Richson (Second Superseding Indictment, Counts 8–10).

2

from the prison began with a recorded announcement: "This call is from an inmate at the San Francisco County jail. Thank you for using Evercom" (Fort's Br. at 2). The same message repeated when the call terminated.

Movants now seek to suppress those intercepted communications. They allege the order authorizing interception of communications was unlawful because it did not comply with California law. Cal. Pen. Code § 629.50. In the absence of a lawful court order, movants argue that the communications must be suppressed. All movants argue for suppression of the intercepted communications under Title III, specifically 18 U.S.C. 2511(1)(b). Ellis, Diaz, Rollins, and Johnson additionally argue that the intercepted communications must be suppressed because the interception violated their Fourth Amendment rights.

The government responds that (1) the illegality of the state court order is irrelevant for purposes of federal evidentiary rules, (2) even if state law did apply, a state consent exception nullifies the movants' argument, (3) the Fourth Amendment rights of Ellis, Diaz, Rollins, and Johnson were not violated because they had no reasonable expectation of privacy in jailhouse communications, and (4) a federal consent exception applies under Title III.

**ANALYSIS**

This order will first discuss movants' claims that the state court order violated Title III's general prohibition on recording communications. Next, it will examine movants Ellis, Diaz, Rollins, and Johnson's Fourth Amendment claims. Finally, this order will address the state court order.

1. **DOES TITLE III'S PROHIBITION AGAINST ELECTRONIC RECORDINGS COMPEL SUPPRESSION OF THE INTERCEPTED COMMUNICATIONS OR DO THEY FALL WITHIN THE CONSENT EXCEPTION IN SECTION 2511(2)(C)?**

It is true that Title III requires suppression of certain illegally intercepted communications. 18 U.S.C. 2518(10)(a). The government, however, invokes an exception to Title III's prohibition. Section 2522(2)(c) provides that it shall not be unlawful for any person acting under color of law to intercept any communication where one party has given prior consent to the interception. While consent is generally express, consent may be *implied* where one party knowingly acquiesced to the surveillance. *United States v. Van Poyck*, 77 F.3d 285,

3

292 (9th Cir. 1996); *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004). The circumstances "must indicate that [the] party to the communication knew that interception was likely and agreed to the monitoring." *Staves*, 383 F.3d at 981.

Accepted forms of notice have included signs posted above telephones warning of potential monitoring and recording, prison manual statements that conversations may be recorded, and signed consent forms authorizing any recordings. *Van Poyck*, 77 F.3d at 292 (comparing the *Van Poyck* facts with similar facts in *United States v. Amen*, 831 F.2d 373, 379 (2d Cir. 1987)). The sign in *Van Poyck* stated: "The Bureau of Prisons reserves the authority to monitor conversations on the telephone. Your use . . . constitutes consent to this monitoring. A properly placed phone call to an attorney is not monitored." *Van Poyck*, 77 F.3d at 287. While in most decisions there has been more than one form of notice, no court has found that only one form of notice is insufficient.

At the hearing, movants argued that both knowledge *and agreement* must be proven to establish Fort's implied consent. Movants also stressed the importance of the exact language used in *Van Poyck* — that use constitutes consent. As long as there is express notice that calls may be recorded, however, this order holds that voluntary use of the telephone after such notice is consent. There is no need for the notice to embellish itself with "your use constitutes consent." Clear-cut notice of the potential for surveillance is enough.

The sign posted here stated that non-attorney calls "may be" recorded. The difference between "may be" and "is being" in this context is very slight. The import of the language is the same; the party making the call knows there is a distinct chance his call will be recorded. Indeed, Fort admitted that he knew he was being recorded on the tapes themselves (Opp. Exh. C, E, F). Fort even stated that a deputy alerted him that the tapes were being recorded (Opp. Exh. C). Later, Fort warned others not to talk about things too much on the

4

1 telephone (Opp. Exh. E). Fort clearly acquiesced and thereby consented to the recordings.
2 Title III was not violated.[2]

3 At the hearing, movants stressed *United States v. Freidman*, 300 F.3d 111 (2d Cir.2002),
4 as an example where the court did not find implied consent. That decision actually cuts against
5 movants. In that case, there was a sign on the telephones in the booking area but *no sign* on the
6 telephones in the jail cells. The booking-area sign read as follows (*Id.* at 118):

> TELEPHONE CALLS
>
> The arrestee has the right to make free telephone calls within the local calling area, or at his own expense if outside the local calling area, to three of the following:
>
> 1) An attorney of your choice or, if you have no funds, the public defender.
>
> This phone call shall not be monitored, eavesdropped upon, or recorded.
>
> 2) A bail bondsman.
>
> 3) A relative.
>
> 4) Any other person.

16 The court approved of that sign (the booking-area sign), finding a reasonable person would
17 know that calls, other than those made to attorneys, could be intercepted but "the sign in the
18 booking area did not provide notice that calls from the jail cell also were subject to interception
19 sufficient to support the finding that [defendant] Kenneth had impliedly consented to their
20 interception." *Id.* at 120. In *Freidman*, the problem was not the booking-area sign but rather
21 the lack of any notice that the jail-cell telephones were also subject to interception. We do not
22 have that problem here. There was a sign right on the telephones in question. Our signs were
23 even clearer than those approved (for the booking area) in *Freidman*. Our signs explicitly
24 stated that non-attorney calls might be subject to recording while the *Freidman* sign was more

---

[2] Fort now declares under penalty of perjury that he did not consent to the recordings nor was he ever orally advised by any jail or law enforcement personnel of any recording or monitoring policies (Fort's Exh. 5). Consent need not be express and can be made impliedly when a defendant knowingly agrees to the surveillance. *Van Poyck*, 77 F.3d at 292.

5

convoluted. The *Freidman* sign required the reader to deduce that if attorney calls were not subject to monitoring, eavesdropping, or recording, then the other calls might be.

While movants cite several decisions that criticize an implied-consent exception, none is controlling. The cited decisions disapproved of stretching the implied-consent exception to the prison setting because prisoners have no other communication options. They held that taking a risk cannot equal implied consent. In these cases though, after disapproving of the implied consent exception, the courts went on to find another exception in Title III satisfied. Controlling Ninth Circuit authority does recognize the implied-consent exception and approves of it. *Van Poyck*, 77 F.3d at 291(citing with approval *Amen*, 831 F.3d at 379); *Staves*, 383 F.3d at 981.³

### 2. IS THERE A FOURTH AMENDMENT RIGHT TO PRIVACY WHEN RECEIVING A TELEPHONE CALL FROM AN INMATE?

Those on the other end of the calls could not see the sign, so the argument is made that *their* Fourth Amendment rights were violated. Fourth Amendment protections are triggered only when "the state intrudes in an area where there is a constitutionally protected reasonable expectation of privacy." *New York v. Class*, 475 U.S. 106, 112 (1986) (citing *Katz v. United States,* 389 U.S. 347, 360 (1967)). In ascertaining whether a person has a Fourth Amendment right to privacy, a court must discern "what expectations of privacy are constitutionally 'justifiable' — what expectations the Fourth Amendment will protect in the absence of a warrant." *United States v. White*, 401 U.S. 745, 752 (1971). The Fourth Amendment "does not protect the merely subjective expectation of privacy, but only those '[expectations] that society is prepared to accept as reasonable.'" *Oliver v. United States*, 466 U.S. 170, 177 (1984).

---

³ A common exception to Title III's general prohibition on recording is the "ordinary course of employment" exception created in 18 U.S.C. 2510(5)(a). This exception excludes any equipment used by an investigative or law enforcement officer in the ordinary course of his duties. This exception is not applicable here because the San Francisco County jail did not appear to routinely record communications. It appears the jail did not have sufficient manpower to do so *(see* Opp. Exh. B, Kennedy Decl. at ¶14).

6

### A. Visiting Room Expectations.

The visiting room at a public jail is not a constitutionally protected area. *Lanza v. New York*, 370 U.S. 139, 142–43 (1962). "In prison, official surveillance has traditionally been the order of the day." *Id*. at 143. Accordingly, movants' claim of an expectation of privacy in the visiting room must fail.

### B. Outbound Calls.

The Ninth Circuit has noted that "no prisoner should reasonably expect privacy in his outbound calls." *Van Poyck*, 77 F.3d at 290–91. The Ninth Circuit additionally stated: "We hold that *any* expectation of privacy in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered . . . ." *Id*. at 291 (emphasis added).

The inquiry here, however, is whether Ellis or Diaz — who were then at large — had a justifiable expectation of privacy in their telephone conversations with Fort. Ellis and Diaz knew that Fort was in jail (Opp. at 10) and consequently knew that his phone calls originated from the county jail regardless of whether they heard the recorded announcement. From the circumstances here — Ellis writing to Fort in jail while in prison himself at San Quentin and Fort making statements to Diaz on the telephone regarding his incarceration — Ellis and Diaz had no reasonable expectation of privacy in their communications. Because both Ellis and Diaz knew Fort was incarcerated they should not have reasonably expected their communications to remain private and confidential. Rollins and Johnson also could not have reasonably expected privacy in their communications with Fort. Rollins and Johnson do not allege that they did not receive notice via the Evercom message alerting recipients that the phone call originated from the San Francisco County jail.[4]

The rationale underlying *Van Poyck* is applicable even though Ellis, Diaz, Johnson, and Rollins were not prisoners at the time of the intercepted communications. Movants could not

---

[4] Ellis's attorney improperly attempts to swear to facts his client supposedly knew. He declares that Ellis never heard the first announcement on the outgoing phone calls (Goldrosen Decl. at ¶ 5). The local rules require that Ellis so swear himself. The Goldrosen declaration will be disregarded. At all events, there are sufficient facts supporting Ellis's knowledge that Fort was in jail at the time of the calls.

7

have reasonably believed their conversations would remain private when the other party was in jail. Although movants may have subjectively preferred privacy, this preference alone is not enough. Fourth Amendment rights are objectively based on reasonable expectations, not merely on individual and subjective wishes.[5]

The Supreme Court has recognized an exception to a party's expectation of privacy when the other party becomes a police informant. Misplaced trust in the informant is not a shield to the admissibility of the evidence. *White*, 401 U.S. at 749; *Hoffa v. United States*, 385 U.S. 293, 302 (1966). If the police may record all phone calls with merely the consent of an undercover agent or an informant, then surely the same is true when there is a lawful basis for recording the outgoing call — such as here where there is a warning that all calls might be monitored. Fort gave his implied consent. Those on the other end of the calls have no greater rights than had Fort expressly consented as an undercover informant. Consent is consent. Movants' misplaced trust in the privacy of the calls does not shield them now.

**3. MUST THE EVIDENCE BE SUPPRESSED IF THE STATE ORDER WAS UNLAWFUL?**

Movants argue that the intercepted communications must be suppressed because the state court order failed to comply with California's wiretap statute. They argue that without this valid court order, there is no applicable exception under Title III. The legality of the state order is irrelevant, however, because Fort impliedly consented to the recordings, as explained above.

**CONCLUSION**

For the reasons stated above, the motions to suppress the intercepted communications are **DENIED.**

**IT IS SO ORDERED.**

Dated: September 27, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[5] While the government cites movants' use of coded language as evidence of movants' awareness that their communications were not completely private (Opp. 9), movants claim that their language is simply "slang" and not code (Repl. Br. 9–11, n.4). Whether movants were in fact using coded language or slang is not central to determining whether movants could have reasonably expected privacy in their communications with Fort. The other movants' knowledge that Fort was in jail is sufficient to find it unreasonable for them to believe their communications would remain private.

8