1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7

8                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,

11              Plaintiff,                          No. CR 05-0167 WHA

12      v.

13   EDGAR DIAZ, RICKEY ROLLINS,            **TENTATIVE CASE**
     DON JOHNSON, ROBERT CALLOWAY,          **MANAGEMENT ORDER**
14   DORNELL ELLIS, EMILE FORT,             **RE GOVERNMENT TRIAL**
     CHRISTOPHER BYES, PARIS                **DISCLOSURE PLAN**
15   RAGLAND, RONNIE CALLOWAY,
     ALLEN CALLOWAY, TERRELL JACKSON
16   and REDACTED DEFENDANT NO. ONE,

17              Defendants.

18   _____/

19          This is a tentative order and an invitation to critique it.  A final order will issue after the

20   critique.  This is in response to the government's proposed disclosure plan filed on October 31,

21   2006.  That plan called for the disclosure of witness names and their respective Jencks material

22   no later than noon on the Friday of the week before the witness testifies.  Any *Brady* material

23   would also be disclosed on the same schedule.  Defendants have objected to the plan as unfair

24   and providing too little lead time to use the material effectively at trial.

25          By way of background, a prior set of orders focused on redacted police reports and

26   defense access to the redacted information.  Those orders dealt only with Rule 16.  That issue is

27   now on appeal in the Ninth Circuit.

28

United States District Court

For the Northern District of California

This tentative order addresses a different problem, namely providing access to *Brady* information and Jencks Act statements in a timely way. These disclosure obligations are independent of Rule 16. Thus, regardless of the rulings that will ultimately be provided by the Ninth Circuit in the pending Rule 16 appeal, we need to install a sensible plan for the *Brady* and Jencks Act disclosures. And, the pending appeal involves only local police reports, whereas *Brady* information can comprehend Form 302s as well as other forms of information. Conversely, some police reports (whether or not discoverable under Rule 16) will fall short of constituting *Brady* information. Thus, while there is some overlap in the material covered by the two issues, each issue also involves different information.

**1.    SUPERVISORY AUTHORITY.**

A key threshold question is the extent to which a district court has authority, under their supervisory and case management powers, to order prosecutors to make *Brady* disclosures *prior* to trial. With respect to *Brady* materials that also happen to be Jencks Act statements, *i.e.*, "statements" within the meaning of 18 U.S.C. 3500(e), the Ninth Circuit has plainly held that the Jencks Act trumps *Brady*. *United States v. Alvarez*, 358 F.3d 1194, 1211 (9th Cir. 2004); *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979), *cert. denied*, 445 U.S. 966 (1980). In light of these holdings, the government will be within its Jencks Act rights in withholding Jencks Act statements until after the witness testifies on direct — and this will be so even if the Jencks Act statements contain *Brady* material. A district court has no authority or discretion to override such insistence on strict observance of the Jencks Act. But, as stated in a prior order (*e.g.*, the order dated August 26, 2005), this insistence may lead to trial continuances, as the Act expressly contemplates. 18 U.S.C. 3500(c).

The Court expects that grand jury testimony and certain police reports will constitute most of the Jencks Act statements.[1] The government has conceded that its Form 302s were studiously prepared so as *not* to be Jencks Act statements. The Form 302s will be producible,

---

[1] All police reports that relate to the subject matter of the direct testimony and that were prepared or approved by any officers who testify will constitute true Jencks Act statements and must, upon defense motion, be produced, if not earlier, immediately after the direct testimony in *un*redacted form.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  if at all, only pursuant to *Brady*.  The remaining concern, therefore, is the universe of *Brady*

2  material outside the scope of the Jencks Act, such as the Form 302s, full police reports

3  (rather than redacted ones), juvenile court records and other *Brady* information.

4       In addition to earlier briefing, the Court has requested two recent rounds of briefing on

5  the issues addressed by this tentative order, namely, the scope of its authority to prescribe a

6  *pretrial* timetable for *Brady* disclosures.  It is, of course, true that the government has an

7  independent duty to turn over *Brady* material without any request therefor, much less a court

8  order.  And, it must do so at least by the point in time that the disclosure can be effectively used.

9  *Kyles v. Whitley*, 514 U.S. 419, 433, 437 (1995); *United States v. Bagley*, 473 U.S. 667, 682

10  (1980).  The government is fond of saying that it knows its *Brady* obligations and will honor

11  them.  While in the routine case this would be sufficient, these considerations beg the question

12  whether, in a case like this which even the government concedes is not routine (Reply Br. 2),

13  a district court has the authority to order the disclosures by a date certain *before* the trial to

14  further ensure the efficient administration of justice and to avoid a cascade of mid-trial

15  continuances and the need to recall witnesses.

16       The Ninth Circuit ruled in 1973 that district courts do have such discretion, under its

17  supervisory powers, to order divulgence of names and prospective witnesses prior to

18  commencement of trial.  Judge Wallace wrote for a unanimous panel as follows:

19      The Federal Rules of Criminal Procedure are intended to
   constitute a comprehensive procedural code for criminal cases in
20  the federal courts.  But even the rules themselves do not purport
   to set outer limits of the power of the court.  On the contrary,
21  Fed.R.Crim.P. 57(b) states:

22      If no procedure is specifically prescribed by rule, the
   court may proceed in any lawful manner not inconsistent
23  with these rules or with any applicable statute.

24      As the rules do not contain provisions pertaining to the
   divulgence of names of prospective witnesses, ordering their
25  production is not inconsistent with the rules.  Similarly, there is
   no statute on the subject except for § 3432.  Therefore, the rules
26  did not necessarily foreclose the district court from making the
   attacked order [footnote omitted].  However, the real question is
27  whether there is power, aside from the rules, for the district court
   to make the order here attacked.

28

3

> It is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice. "A federal court has the responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness." *United States v. Baird*, 414 F.2d 700, 710 (2d Cir. 1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970).

*United States v. Richter*, 488 F.2d 170, 173–74 (9th Cir. 1973).

Although *Richter* directly involved only disclosure of witnesses, the same general principle would seem to enable a district court to require pretrial disclosure of *Brady* information. It is true that since 1973, Rule 57(b) — relied on in the quoted material in *Richter* — has been changed to say:

> A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local district rules unless the alleged violator was furnished with actual notice of the requirement before the noncompliance.

The essence of the old rule still resides in this new authority so long as actual notice of the order regulating practice is furnished to the parties. Another rule change was considered after *Richter* but not adopted. That would have required reciprocal witness disclosures. *See United States v. Hearst*, 412 F. Supp. 863, 867 (N.D. Cal. 1975). But the failure to adopt that change did not abrogate the discretionary authority to order, on a case-by-case basis, such disclosure as warranted. And, while it is certainly true that the defense has no automatic right to *Brady* material prior to trial, *Richter* held that district judges have discretion, upon a proper record, to order relief on a case-by-case basis. *Richter* has never been overruled and appears to be valid within our circuit. *See United States v. Talbot*, 51 F.3d 183, 187–88 & n.4 (9th Cir. 1995); *United States v. Acosta*, 357 F. Supp. 2d 1228, 1234 (D. Nev. 2005).

The Third Circuit has also addressed the precise issue now presented, holding that the district court has authority to order that *Brady* material be disclosed prior to trial:

> Today, we affirm this court's longstanding policy and applaud the district court's effort to ensure prompt compliance with *Brady*. We flatly reject the notion, espoused by the prosecution, that "it is the government, not the district court, that in the first instance is to decide when to turn over *Brady* material." Brief for Appellant at 28. The district court may dictate by court order when *Brady*

> material must be disclosed, and absent an abuse of discretion, the government must abide by that order.  Moreover, we expressly disapprove of the government's belated attempt to question the district court's authority.

*United States v. Starusko*, 729 F.2d 256, 261 (3d Cir. 1984).  The Third Circuit's opinion cited to *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983).  In turn, *Higgs* cited to a string of decisions from at least seven circuits said to stand for the proposition that "the district court, within its discretion, may order such disclosure to ensure the effective administration of the criminal justice system."  *Id*. at 44 n.6.  *Richter* was there cited as the Ninth Circuit's entry.

In sum, this order concludes that district courts have the authority, upon a proper record, to exercise their discretion to require *Brady* material to be disclosed prior to a criminal trial.

### 2.    THE EXERCISE OF DISCRETION.

In exercising its discretion, the Court has considered a number of factors.  *First*, the Court has considered the need to protect witnesses, particularly civilian witnesses, from retaliation for testifying for the government.  This subject has been canvassed herein several times.  The "Protective Order For Witness Security" dated June 16, 2006, sets forth findings and considerations.  The record has not changed in this respect since June 2006.

*Second*, the Court has considered the need to avoid disruptive trial continuances. In the Court's judgment, the lead time for disclosure under the government's plan would be too short and would lead to multiple recesses and/or the need to recall witnesses for cross-examination long after the witness has testified.  Jury comprehension would suffer as a result.  In this massive case involving eight homicides, 30-plus RICO predicate acts, and 86 counts, it will be hard for the jury to catalog the evidence vis-a-vis the various defendants. Jury comprehension is a paramount consideration in a case of this magnitude and severity. As problematic, a string of continuances would present a risk of jurors needing to be discharged due to hardship or sickness, posing a risk of a mistrial.

*Third*, the Court has taken into account the likely lead time defense counsel will need to use the material effectively, remembering that the trial will be underway (or virtually so) with its parallel time demands.  This includes the need to track down witnesses, including impeachment witnesses. The problem is exacerbated by the government's insistence that it will turn over

Jencks Act statements very close in time to when the witnesses testify.  Providing *non*-Jencks Act *Brady* material beforehand will allow some productive work to precede the last-minute turnover of Jencks Act statements.

    *Fourth*, the Court has taken into account the likelihood that the trial will be dogged by *Brady* disputes with respect to almost every witness.  In this regard, over the last eighteen months of supervising this case the Court has become increasingly concerned that the government has taken too crabbed a view of its *Brady* obligations.  If history is any guide, each *Brady* disclosure (or nondisclosure) will provoke hearings out of the jury's presence to ascertain the extent of *Brady* compliance.  Allowing ourselves a modest amount of lead time will serve to clarify these issues before the witness takes the stand.

    **3.**    **THE SCOPE OF *BRADY*.**

    Writing for a unanimous panel, Judge Trott has summarized the *Brady* rule as follows:

> *Brady* material is any evidence material either to guilt or punishment which is favorable to the accused, irrespective of the good faith or bad faith of the prosecution.  *Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).  A prosecutor's duty to reveal such evidence does not depend on a request by the defense.  *United States v. Bagley*, 473 U.S. 667, 683, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985); *Thomas v. Goldsmith*, 979 F.2d 746, 749–50 (9th Cir. 1992).  The *Brady* rule encompasses impeachment evidence as well as exculpatory evidence.  *Bagley*, 473 U.S. at 676, 105 S.Ct. at 3380.  Prior statements of a witness that are both material and inconsistent with his anticipated testimony fall within the *Brady* rule.  *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

*United States v. Hanna*, 55 F.3d 1456, 1459 (9th Cir. 1995).  In *Hanna*, the court of appeals vacated a conviction and remanded for the United States "affirmatively to demonstrate" whether it had discharged its *Brady* obligations.  There, the police report contradicted the officer's trial testimony about how the gun was found.  The court of appeals felt the prosecutor had not adequately investigated to learn all further evidence that might contradict the officer, refusing to accept the prosecutor's "cursory statement" that it had produced all *Brady* information known to it.  The problem was, the Ninth Circuit felt, that the prosecutor might well have found more impeachment evidence had she looked a bit harder.

Here, the government's statement of the scope of *Brady* material (Br. 4–5), is fine as far as it goes but most of the definitions offered by the defense (Br. 8–9) also seem sound. Although the *United States Attorney's Manual* does not create discovery rights, one item therein deserves special emphasis:

> While items of information viewed in isolation may not reasonably be seen as meeting the standards in paragraphs 1 and 2 above, several items together can have such an effect.

*USAM* ¶ 9-5.001(C)(4) (2006).

In other words, the test is not whether any single item will make or break a case — rather, it is whether the cumulative effect of the evidence would reasonably cast doubt on the integrity of a guilty verdict. This accords with this Court's view of *Brady*. This order must also stress that *Brady* requires production of material exculpatory as to one or more defendants even if it inculpates another defendant. The government has tended to disagree with this view at times. Beyond the foregoing, it will not be productive to canvass the law. A separate order will issue on the specific documents subject to the motion.

### 4.   PRETRIAL DISCLOSURE OF *BRADY* MATERIALS.

Having considered the foregoing factors and all other arguments and circumstances in this proceeding, the Court finds that the government's proposed disclosure plan would be unfair (as not supplying adequate lead time) and would lead to jury confusion and frustration (due to an inordinate number of continuances). Instead, pursuant to its supervisory and case-management authority, the Court orders as follows:

A.   Except as set forth in paragraphs B and C below, the government shall provide to counsel for any defendant not severed for later trial all information constituting, as to that defendant, non-Jencks Act *Brady* material. Such disclosures shall be made **FOURTEEN CALENDAR DAYS** before the trial date, January 22, 2007. All such information shall be subject to the protective order restricting disclosure issued on June 16, 2006. The Court finds, as it has before, that witness security will be enhanced, not diminished, by this order. All protected information on a protected civilian witness may be disclosed by counsel

7

to a defendant on trial only after the witness' name is used in open court, as might occur during jury voir dire, or the Thursday of the week before the witness testifies, whichever is sooner.

B.     As to the "primary witnesses" defined on pages 2 and 8 of the protective order dated June 16, 2006, the disclosures shall be made at least **FOURTEEN CALENDAR DAYS** prior to the government's calling of the witness. The information required by this paragraph may, therefore, be provided after the commencement of trial (as to witnesses testifying fourteen or more days after the trial commences).  This information shall also be provided under the protective order referenced above and may be disclosed to the defendant only on the timetable in the preceding paragraph.

C.     *Brady* information that inculpates only persons uncharged in this case must be disclosed to all defense counsel by **DECEMBER 16, 2006.** This information will be produced without being placed under a protective order absent a further showing of necessity by the government.

D.     With respect to the issue of juvenile records and other impeachment records for government witnesses, it will not be sufficient for the government merely to disclose rap sheets.  Although impeachment under Rule 609 usually extends only to the code section and name of the offense (without exploration of the underlying details), the underlying facts may show a bias or prejudice that is admissible independent of Rule 609.  The government must obtain and review rap sheets, underlying police incident reports, district attorney files, and juvenile court records and then turn over all such information indicating that the witness:

(i)     has been convicted of a felony or a misdemeanor involving dishonesty or false statement within the last ten years;

(ii)     has been convicted of murder regardless of the date of conviction;

**United States District Court**
For the Northern District of California

1          (iii)      has now (or has ever had) a bias against any

2     defendant or the Down Below Gang;

3          (iv)      has now (or has ever had) a bias in favor of a rival

4     gang;

5          (v)      is now on parole or probation or has any charges

6     pending or any arrest still subject to prosecution; or

7          (vi)      is now cooperating with law enforcement in this or

8     any other case or has done so within the last four years.

9     This turnover must be made as per the schedule set forth in paragraphs A–C

10     above.  The government must examine any location where such materials might

11     reasonably be expected, not just the locations identified in its recent reply

12     memorandum (Reply Br. 3–4).  Given that the government will obtain the

13     juvenile records, the longer lead time requested by the defense will be

14     unnecessary.  If there are no such responsive records, then the government must

15     so certify that it has searched and found no such responsive records.  This order

16     is without prejudice to any argument that the evidence is inadmissible.

17     Whether it is or not will depend on *in limine* practice.  The order is intended to

18     place defense counsel in a viable position to develop the impeachment evidence

19     so that its admissibility can be timely considered.

20          E.      With respect to the issue of *Brady* information for witnesses the

21     government eventually elects *not* to call, the government must promptly place

22     and keep them under subpoena, so that defendants shall, when the time comes,

23     be in a position to call them in the defense case.  All such *Brady* material shall be

24     disclosed as soon as the government makes the election and at all events at least

25     FOURTEEN CALENDAR DAYS before the government rests its case in chief.

26          F.      This order does not require a witness list.  It requires

27     identification of witnesses only insofar as *Brady* information is available with

28

9

**United States District Court**
For the Northern District of California

1    respect to the witness.  Nor does it require Jencks Act statements to be produced

2    prior to the direct testimony.

3          G.      Failure to comply with this timetable may lead to witness

4    preclusion or testimony preclusion or other appropriate sanction.

5                              *         *         *

6          This tentative order shall be discussed at the upcoming final pretrial conference.

7    By **NOVEMBER 28, 2006, AT NOON**, both sides may file memoranda limited to five pages

8    critiquing the tentative order.  The page limit is designed to encourage emphasis on the matters

9    that are of most sincere concern to the parties, so much ink having already been spilled.

10   Please address what provisions of the protective order should be adopted to the needs of this

11   problem.

12                             *         *         *

13         It is true that earlier orders stated that if the government would produce *Brady* and

14   Jencks Act material (under a protective order) **NINETY DAYS** before trial, then we could be

15   certain trial continuances due to late production would be unnecessary.  That remains true.

16   The present order, however, compels production on a schedule which will avoid *most* risk of

17   continuances even though not *all* risk.

18         The Court does not deem this order to substitute for the Rule 16 order on appeal in the

19   Ninth Circuit or to supply an alternative solution for the same problem.  It addresses a different

20   problem.  Nor should the shorter lead times in this order be viewed as a concession that the lead

21   times required by the Rule 16 order were too extended.  Again, they each address a different set

22   of concerns.

23

24         **IT IS SO ORDERED.**

25

26   Dated:  November 22, 2006.

27                                              WILLIAM ALSUP
                                                UNITED STATES DISTRICT JUDGE

28