1
2
3
4
5
6               IN THE UNITED STATES DISTRICT COURT
7
8          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10

**United States District Court**
For the Northern District of California

UNITED STATES OF AMERICA,                    No. CR 05-00167 WHA

              Plaintiff,

     v.                                       **ORDER GRANTING IN PART
                                              AND DEFERRING IN PART
EDGAR DIAZ, RICKEY ROLLINS,                   DEFENDANTS' MOTIONS TO
DON JOHNSON, ROBERT CALLOWAY,                 STRIKE THE NOTICES OF
DORNELL ELLIS, EMILE FORT,                    INTENT TO SEEK THE DEATH
CHRISTOPHER BYES, PARIS                       PENALTY
RAGLAND, RONNIE CALLOWAY,
ALLEN CALLOWAY, TERRELL JACKSON
and REDACTED DEFENDANT NO. ONE,

              Defendants.
                                         /

                            **INTRODUCTION**

       In this criminal RICO prosecution, the government has filed notices of intent to seek the

death penalty against defendants Edgar Diaz and Emile Fort.  The notices list, among other

things, the aggravating factors that the government will attempt to prove to the jury at the

penalty phase.  The government is currently considering whether to file a similar notice against

a third co-defendant, Terrell Jackson.  Defendants Diaz and Fort have filed several motions

challenging the Federal Death Penalty Act and seeking to strike, in part or in full, the

government's notices.  This order addresses one important issue raised by

defendants — whether the government has provided adequate notice of the factual basis for the

aggravating factors it has listed in its notices.  This order holds that, for many of the aggravating

1  factors, the government has not provided sufficient notice.  Accordingly, the government must

2  file amended notices for defendants Diaz and Fort by **MARCH 9, 2007**.

### STATEMENT

4  Defendants Diaz and Fort are each charged with three separate murders.  Diaz is charged

5  with the murders of Beverly Robinson, Kenya Taylor, and Antoine Morgan.  Fort is charged

6  with the murders of Glenn Maurice Timmy "Baby" Molex, Jovanie Banks, and Michael Hill.

7  The government filed notices of intent to seek the death penalty against Diaz on July 7, 2006,

8  and against Fort on October 3, 2006.

9  For each charged murder, the notices list two or more "statutory proportionality factors"

10  under 18 U.S.C. 3591(a)(2).  These are the "gateway" mental state factors that the jury must

11  find unanimously and beyond a reasonable doubt as a prerequisite for finding that a defendant is

12  death-eligible.  Also for each charged murder, the government lists several "statutory"

13  aggravating factors under 18 U.S.C. 3592(c).  These factors are described as "statutory" because

14  they are enumerated in the FDPA.  For example, the defendants are charged with the following

15  statutory factor for all counts of murder:  "The defendant committed the offense after

16  substantial planning and premeditation to cause the death of a person.  18 U.S.C.

17  § 3591(a)(2)(D)."  Additionally, for each charged murder, two "non-statutory" aggravating

18  factors are listed, so called because they are not enumerated in the FDPA.  The non-statutory

19  factors alleged specific to the murders are "victim impact evidence" and "participation in

20  additional homicides."  Finally, at the end of the notices is a list of other non-statutory

21  aggravating factors that do not relate directly to individual homicides.  For both defendants, the

22  additional non-statutory aggravating factors are:  "participation in additional serious acts of

23  violence," "contemporaneous criminal conduct," "obstruction of justice," "leadership role in a

24  criminal enterprise," and "future dangerousness of defendant."

### ANALYSIS

26  Defendants Diaz and Fort have moved to strike the aggravating factors in the

27  government's notices for, among other things, insufficient notice.  The principal argument that

28  this order addresses is defendants' contention that many of the aggravating factors in the notices

United States District Court

For the Northern District of California

1   lack sufficient allegations to inform defendants of the facts the government will attempt to

2   establish during the penalty phase.  In light of the insufficiencies, defendants request that the

3   aggravating factors be struck or, in the alternative, that the government be required to amend

4   the notice to provide an outline of evidence to support the aggravating factor.

5          This order holds that defendants are entitled to more detailed notice as to several of the

6   aggravating factors and that amendment of the notice will be a sufficient remedy.  This order

7   rules on the sufficiency of the notice *only* and reserves ruling on all other issues raised by

8   defendants.  This will allow the government enough time to revise the notice and serve it on

9   defendants so that defendants may prepare for the penalty phase.

10         In *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 470–73 (S.D.N.Y. 2001), the court

11  discussed in detail a district court's authority to order the government to provide a more

12  detailed death notice.  This order agrees with the reasoning of the *Llera Plaza* court to require

13  the government in this case to provide more detailed notices for defendants Diaz and Fort.

14         The *Llera Plaza* court first noted that other courts had "ordered prosecutors to provide

15  greater specificity in [death notices] in order to allow the defendant to prepare adequately for

16  sentencing proceedings and to allow the court to ensure the reliability of the evidence

17  presented." *See Llera Plaza*, 179 F. Supp. 2d at 471 (citing *United States v. Davis*, 912 F. Supp.

18  938 (E.D. La. 1996); *United States v. Beckford*, 964 F. Supp. 993 (E.D. Va. 1997)).  The FDPA

19  does not require the government to provide any specific type of notice.  Moreover, Federal Rule

20  of Criminal Procedure 7, requiring the government to provide a "plain, concise, and definitive

21  written statement of the essential facts," only applies to informations and indictments, not death

22  notices.  Nevertheless, the *Llera Plaza* court, agreeing with the Eastern District of California's

23  decision in *United States v. Kaczynski*, No. CR-S-96-259GEB, 1997 WL 716487, at *19 (E.D.

24  Cal. Nov. 7, 1997), held that "the Constitution requires that the defendants be given some notice

25  of the type of evidence the government intends to introduce at the sentencing phase." *Llera*

26  *Plaza*, 179 F. Supp. 2d at 471–72.  The *Kaczynski* court held, in relevant part:

27              While many of the safeguards incident to criminal prosecutions
                do not apply to the sentencing process, it is axiomatic that due
28              process principles must be satisfied.  *See Clemons v. Mississippi*,
                494 U.S. 746 (1990); *Gardner v. Florida*, 430 U.S. 349, 358

(1977).  The defendant's ability to defend against the case presented by the prosecutor, which includes advocating for a particular punishment, is one of the "hallmarks" of due process. *See Simmons v. South Carolina*, 512 U.S. 154, 175 (1994) (O'Connor, J., concurring).  Moreover, a defendant must not be sentenced to death on the basis of information which he had no opportunity to refute.  *Id.* (quotations and citations omitted).  Therefore, at a minimum, due process requires a defendant to receive sufficient notice of aggravating factors to enable him to respond and to prepare his case in rebuttal.  In evaluating whether due process is satisfied, the Death Penalty Notice must be considered in conjunction with the offenses as charged in the indictment, which can provide the requisite specificity to an otherwise insufficient notice.

*Kaczynski*, 1997 WL 716487, at \*19.  The *Llera Plaza* court concluded that the right to present a complete defense would hardly be "'meaningful' if the defense were forced to confront sentencing phase evidence without any notice of what that evidence might be."  Thus, the court held that the death notices, "in conjunction with the indictment, must inform the defendants of the theories and facts that the government will use to establish each aggravating factor in this case."  *Llera Plaza*, 179 F. Supp. 2d at 472.

This order follows the *Llera Plaza* and *Kaczynski* decisions, as well as other district courts that have similarly required the government to provide more information regarding the allegations in the notice.  *See, e.g.*, *United States v. Bin Laden*, 126 F. Supp. 2d 290, 304–05 (S.D.N.Y. 2001); *United States v. Cooper*, 91 F. Supp. 2d 90, 110 (D.D.C. 2000); *see also United States v. McVeigh*, 944 F. Supp. 1478, 1488 (D. Colo. 1996) ("The notice filed by the government gives the defendants the opportunity to prepare for the hearing and provides the court with some frame of reference for ruling on objections to the information offered at the hearing.").  Indeed, "it has been uniformly recognized that if the death penalty provides insufficient notice to the defendant, the Court retains inherent authority to require the government to provide more specifics in order to give the defendant the opportunity to prepare for the penalty phase, as well as to provide the court with some frame of reference for ruling on objections to the death penalty notice."  *United States v. Karake*, 370 F. Supp. 2d 275 (D.D.C. 2005).  Thus, for those statutory aggravating factors where defendants have not been provided sufficient notice, the government must amend the notices to provide the facts "the government will use to establish the statutory aggravating factors."  *Llera Plaza*, 179 F. Supp. 2d at 472.

4

**United States District Court**

For the Northern District of California

The government states in its papers that the discovery, the pleadings filed in this case, and the indictment will aid defendants in determining the factual bases for the aggravating factors. The government's briefs, however, do not point to the specific facts in the 95-page indictment or 20,000 pages of discovery that support the factors the notices allege. It is possible that the revised death notices will simply reiterate facts that are alleged in the indictment or supported elsewhere in the discovery. Nevertheless, the government should lay out in its revised notice the factual details it intends to use to establish the aggravating factors at the penalty phase. The Court expects that the revised notice will be "akin to an informative outline," though it need not be "a revelation of evidentiary detail or the Government's theory of its case." *Bin Laden*, 126 F. Supp. 2d at 304–05 (S.D.N.Y. 2001).

Defendants also request a pre-sentencing hearing so that the Court may review the reliability of the evidence the government intends to present. The Court expects that the majority of the evidence used to support the aggravating factors will be the same evidence presented during the guilt phase. After the guilt phase, the Court will more easily be able to determine whether the government's evidence is reliable enough to be submitted to the jury during sentencing. *See Ford v. Wainwright*, 477 U.S. 399, 410–11 (1986) ("In capital proceedings generally, this Court has demanded that factfinding procedures aspire to a heightened standard of reliability. This especial concern is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different.") (citations omitted). On the other hand, there is sure to be some evidence that will be presented to the jury for the first time during the penalty phase. Courts have conducted pre-sentencing — and in some instances, pre-trial — evidentiary hearings to evaluate the reliability of the evidence the government intends to introduce at the penalty phase. *See Llera Plaza*, 179 F. Supp. 2d at 470; *Davis*, 912 F. Supp. at 949. The Court will be in a better position to evaluate the need for an evidentiary hearing once the government has amended its notices. *See Glover*, 43 F. Supp. 2d at 1227.

     **1.**     **STATUTORY AGGRAVATING FACTORS.**

United States District Court

For the Northern District of California

1    For each of the murders charged against defendants, the notices list one or more

2  statutory aggravating factors.  The notices do not provide any factual support for the factors.

3  Instead, the government merely recites the factors and cites the FDPA.  The following statutory

4  factors were challenged by defendants for the government's failure to provide sufficient notice.

**A.    The Defendant Committed the Offense After Substantial Planning and Premeditation to Cause the Death of a Person.  18 U.S.C. 3592(c).**

7    This statutory factor is alleged against both defendants for all murders for which they

8  are charged.  Defendants contend that the government has provided no information regarding

9  what acts established the "substantial planning and premeditation" that the notice alleges.  This

10  order agrees.  The government must provide an informative outline of the factual basis on

11  which it intends to show that the planning and premeditation were substantial.  *See*, *e.g.*, *United*

12  *States v. Glover*, 43 F. Supp. 2d 1217, 1226 (D. Kan. 1999).

**B.    The Defendant, in the Commission of the Offense, or in Escaping Apprehension for the Violation of the Offense, Knowingly Created a Grave Risk of Death to One or More Persons in Addition to the Victim of the Offense.  18 U.S.C. 3592(c)(5).**

16    The "grave risk of death" factor is alleged against Fort for the three counts of murder he

17  is charged with and against Diaz for Count 10, the murder of Beverly Robinson.  The

18  government must provide a more detailed proffer for this statutory aggravating factor as well.

19  The government did not explain in its briefs or at oral argument who was put at grave risk, what

20  the grave risk was, or how the defendant "knowingly" created the risk.  The government must

21  provide an informative outline of the factual basis on which it intends to establish this statutory

22  aggravating factor.  *See*, *e.g.*, *Llera Plaza*, 179 F. Supp. 2d at 473.

**C.    The Defendant Committed the Offense in an Especially Heinous, Cruel, or Depraved Manner in That It Involved Torture or Serious Physical Abuse to the Victim.  18 U.S.C. 3592(c)(6).**

25    The "heinous, cruel, or depraved manner" aggravating factor is alleged against Diaz

26  with respect to Count 12, the murder of Kenya Taylor.  The government provided no factual

27  support for this statutory factor in its notice.  As with the foregoing statutory factors, the

28  government must provide an informative outline of the factual basis on which it intends to

establish the "heinous, cruel, or depraved manner" aggravating factor during the penalty phase.

1

**United States District Court**
For the Northern District of California

2.       **NON-STATUTORY AGGRAVATING FACTORS.**

2                    A.       **VICTIM IMPACT EVIDENCE.**

3            For each of the murders charged against defendants, the notices list "victim impact

4  evidence" as a non-statutory aggravating factor specific to the offense.  The notices allege:

5                    **Victim Impact Evidence.**  The defendant caused injury, harm,
                     and loss to the family of [the victim] because of the victim's
6                    personal characteristics as an individual human being and the
                     impact of his death upon the [victim's] family.  *See Payne v.*
7                    *Tennessee*, 501 U.S. 808, 825–26 (1991).

8            The notices here provide defendants with no notice of the type of "injury, harm, and

9  loss" to the victims' families and what "personal characteristics" the victims possessed to

10 support this aggravating factor.  As one district court has stated:

11                   The court finds that the defendant is entitled to greater specificity
                     regarding this factor, to wit, which members of the family have
12                   suffered, the nature of their suffering, and the nature of the
                     "permanent harm."  For example, whether members of the family
13                   sought counseling or other medical treatment, such as
                     hospitalization, and whether and to what extent members of the
14                   family suffered financial harm, are relevant considerations in
                     discerning whether this factor is indeed "aggravating" in this case.
15
*Glover*, 43 F. Supp. 2d at 1225.  It is noted that several other courts have required the
16
government to produce a similar summary of victim impact evidence.  *See Llera Plaza*, 179 F.
17
Supp. 2d at 474–75; *Bin Laden*, 126 F. Supp. 2d at 304; *Cooper*, 91 F. Supp. 2d at 111; *Glover*,
18
43 F. Supp. 2d at 1225.  This order also requires the government to supplement its notice to
19
provide an informative outline of the factual basis on which it intends to establish this non-
20
statutory aggravating factor for each charged murder.
21
                    B.       **Participation in Additional Homicides.**
22
             The notices for both defendants list as non-statutory aggravating factors the accusation
23
that they were involved in other homicides.  For example, for Count 10, the murder of Beverly
24
Robinson charged against defendant Diaz, the notice alleges the following:
25
                     **Participation in Additional Homicides.**  The defendant
26                   participated in other homicides in addition to the murder[] of
                     Beverly Robinson, including the murders of Kenya Taylor and
27                   Antoine Morgan.

28

7

Defendants contend that this factor does not provide sufficient notice because it accuses defendants of participating in other murders, "including" the murders charged in the indictment. To defendants, the open-ended word "including" is too vague and the lack of a factual basis for other homicides does not provide them with sufficient notice.

At oral argument, the government represented that with respect to defendant Diaz, the uncharged murders it intended to introduce were those of Matthew Moore and Ronnie Allen. With respect to defendant Fort, the only uncharged murder the government was considering introducing was that of Ronnie Allen. This order holds that it is too vague for the notice to allege that defendants participated in other murders "including" the murders charged in the indictment. Neither the notices nor the indictment inform defendants of the other homicides in which they are believed to have participated. The notices must be amended to state specifically which uncharged homicides the government will introduce at the penalty phase to prove this factor against defendants. The government must omit any language — such as the word "including" — that leaves open the possibility that other unidentified homicides may be introduced. *See United States v. Davis*, Crim. A. No. 94-381, 1996 WL 6997, at *1 (E.D. La. Jan. 5, 1996) ("[T]he government has listed certain acts 'among others' that it will seek to introduce against each defendant. The use of 'among others' in lieu of listing specific acts does not meet the notice requirement of the death penalty statute."). Furthermore, because these are uncharged crimes, the government must provide an informative outline of the factual basis on which it intends to establish this non-statutory aggravating factor. *See Llera Plaza*, 179 F. Supp. 2d at 475.

### C.   Participation in Additional Serious Acts of Violence and Contemporaneous Criminal Conduct.

The following non-statutory aggravating factors are also alleged against both defendants:

> **Participation in Additional Serious Acts of Violence.** The defendant participated in other serious acts of violence in addition to [the charged murders]. These serious acts of violence include, but are not limited to, the following: [list of criminal acts].
>
> **Contemporaneous Criminal Conduct.** In addition to being convicted of the [charged murders], the defendant was engaged in

8

United States District Court

For the Northern District of California

other criminal conduct, included but not limited to enterprise crimes, drug offenses and witness tampering.[1]

For the "participation in additional serious acts of violence" and "contemporaneous criminal conduct" non-statutory factors, the government again used the non-limiting "include, but are not limited to" language.  This is too vague to provide defendants with sufficient notice.  As with the "additional homicides" factor, the government must indicate the specific crimes that support these factors.  The government must also provide an informative outline of the factual basis on which it intends to establish these non-statutory aggravating factors.  This is particularly important with respect to uncharged acts.

### D.    Obstruction of Justice.

The non-statutory "obstruction of justice" factor is alleged against both defendants.  For example, defendant Diaz's notice states:

> **Obstruction of Justice.**  The defendant participated in a conspiracy to murder Jamar Jackson, a potential witness against him and other members of the Down Below Gang.

Defendant Fort's notice alleges that he "instigated conspiracies" to murder Jamar Jackson and Harry Cael, Jr.

This order recognizes that some of defendants' activities with respect to the "obstruction of justice" factor are mentioned in the indictment.  Nevertheless, the government must provide an informative outline of the factual basis on which it intends to establish the obstruction of justice by both Diaz and Fort.

### E.    Leadership Role in a Criminal Enterprise.

The notices allege that both defendants were leaders of the Down Below Gang.  For example, the notice for defendant Fort states:

> **Leadership Role in a Criminal Enterprise.**  The defendant belonged to the Down Below Gang — an "enterprise," as defined by 18 U.S.C. § 1961(4) — from at least September of 2003 to the date of the Second Superseding Indictment.  In the structure of the

---

[1]  For "contemporaneous criminal conduct," defendant Diaz's notice also alleges that he was involved in "violent crimes."

enterprise, the defendant was below a redacted defendant, but still had a leadership role.[2]

As with the "obstruction of justice" factor, this order recognizes that some of defendants' activities with respect to defendants' "leadership roles" are mentioned in the indictment. Nevertheless, the government must provide an informative outline of the factual basis on which it intends to establish this factor against both Diaz and Fort.

### F.    Future Dangerousness of the Defendant.

The non-statutory aggravating "future dangerousness" factor is alleged against both defendants. The following is quoted from the death notice for defendant Diaz; the notice for defendant Fort is the same in all material respects:

> **Future Dangerousness of the Defendant.** The defendant represents a continuing danger to the lives and safety of other persons. The defendant is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others, as evidenced by, at least, one or more of the following:
>
> (a) Continuing Pattern of Violence: The defendant has engaged in a continuing pattern of violence, attempted violence, and threatened violence, including, at least, the crimes alleged against defendant in the Indictment.
>
> (b) Lack of Remorse: The defendant has demonstrated a lack of remorse for the capital offenses committed in this case, as indicated by defendant's statements and actions during the course of and following the offenses alleged in the indictment.
>
> (c) Low rehabilitative potential: The defendant has demonstrated a low potential for rehabilitation as evidenced by his longstanding involvement in criminal activities— including conspiracy, drug trafficking and violence — leading up to the capital offenses charged in the Indictment.
>
> (d) Membership in a criminal enterprise: The defendant has actively led, and demonstrated an allegiance to, the Down Below Gang, a criminal enterprise falling within the definition of 18 U.S.C. § 1962(d).

For each defendant, the notice divides the "future dangerousness" non-statutory aggravating factor into four subparts. Each of the subparts must be further clarified in the

---

[2] Only the last sentence of this factor differs for defendant Diaz. Diaz's notices states: "In the structure of the enterprise, the defendant was below codefendants Emile Fort, a/k/a "Twin," and a redacted defendant, but still had a leadership role."

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    government's amended notice.  *First*, in the "continuing pattern of violence" subpart, the

2    government again is too vague when it says that the factor is supported by defendants' acts of

3    violence "including, at least, the crimes alleged against defendant in the indictment."  The word

4    "including" does not provide defendants with enough notice.  Furthermore, the government

5    must be specific regarding what acts demonstrate this factor.  *Second*, the government alleges

6    that defendants demonstrated a "lack of remorse" by their "statements and actions during and

7    after the offenses alleged in the indictment."  This is insufficient.  The government must detail

8    the specific "statements and actions" it intends to use to support the "lack of remorse" subpart.

9    *Third*, the government alleges that defendants have "low rehabilitative potential."  According to

10   the notices, defendants demonstrate this subpart by "longstanding involvement in criminal

11   activities, including . . . drug trafficking and violence."  The government's amended notice must

12   outline the acts that will be used to demonstrate defendants' low rehabilitative potential and

13   may not use the open-ended qualifier "including."  *Fourth*, the government must outline the

14   facts that establish "defendants' membership in a criminal enterprise."

15        As with the uncharged-crimes aggravating factors, the government must provide an

16   informative outline of the factual basis on which it intends to establish the "future

17   dangerousness" factor.

18        **3.    MENTAL STATES.**

19        In the notices, the government has alleged multiple mental states as "gateway" factors

20   for each of the murders charged against defendants.  Defendants make several arguments with

21   respect to the multiple mental states alleged, including whether pleading multiple mental states

22   is permissible.  As noted above, however, this order only addresses whether the factors the

23   government has alleged are enumerated with sufficient particularity so that defendants may

24   "adequately defend" against the factors.  At least one court has held that "the defendant is

25   entitled to know the underlying factual basis for each of the gateway factors."  *Glover*, 43 F.

26   Supp. 2d at 1233.  Here the government has offered no reason why it cannot amend the notice to

27   "articulate the specific factual basis underlying each gateway intent factor."  Accordingly, the

28

11

1  government must provide an informative outline of the factual basis on which it intends to

2  establish the mental states.

3  **CONCLUSION**

4  The government is **ORDERED** to provide more detailed notices for both Diaz and Fort by

5  **MARCH 9, 2007**.  Any motion by defendants for an evidentiary hearing to evaluate the

6  reliability of penalty-phase evidence must be filed by **MARCH 23, 2007**.  Any opposition by the

7  government must be filed by **MARCH 30, 2007**, with any reply due by **APRIL 6, 2007**.  The

8  Court will thereafter determine whether any hearing to evaluate the government's penalty-phase

9  evidence will be necessary.

10

11  **IT IS SO ORDERED.**

12

13  Dated:  January 23, 2007.

14  WILLIAM ALSUP
   UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California