1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

EDGAR DIAZ, EMILE FORT, TERRELL
JACKSON, and RAYMON MILBURN,

        Defendants.

_____/

No. CR 05-00167 WHA

**ORDER GRANTING IN PART,
DENYING IN PART, AND
DEFERRING IN PART
DEFENDANTS' MOTIONS TO
STRIKE THE NOTICES
OF INTENT TO SEEK THE
DEATH PENALTY**

**INTRODUCTION**

In this criminal gang prosecution, the government has filed amended notices of intent to

seek the death penalty against defendants Emile Fort and Edgar Diaz. Defendants have moved

separately to strike the notices, or in the alternative for other relief such as striking portions of

the notices or holding evidentiary hearings. For the below-stated reasons, defendants' motions

are **GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART** and will, as to some issues,

require an evidentiary hearing prior to the penalty phase if such a phase is necessary. Where the

government has failed to provide an informative factual outline in support of its factors, as

previously ordered to do, this order grants the government one last chance to provide adequate

support for the factors included in its notice.

**United States District Court**
For the Northern District of California

**STATEMENT**

Defendants Diaz and Fort are each charged with three separate murders.  Diaz is charged with the murders of Beverly Robinson, Kenya Taylor, and Antoine Morgan.  Fort is charged with the murders of Glenn Maurice Timmy "Baby" Molex, Jovanie Banks, and Michael Hill. The government filed notices of intent to seek the death penalty against Diaz on July 7, 2006, and against Fort on October 3, 2006.

This Court previously directed the government to amend the notices to provide more factually detailed support for the factors listed in the notices.  *United States v. Diaz* (*Diaz I*), No. CR 05-00167 WHA, 2007 WL 196752 (N.D. Cal. Jan. 23, 2007) (Alsup, J.).  A separate order addressed other challenges to the notice, finding that the majority of defendants' claims were without merit and a few remaining issues would be addressed following the government's amended notices.  *United States v. Diaz* (*Diaz II*), No. CR 05-00167 WHA, 2007 WL 656831 (N.D. Cal. Feb. 28, 2007) (Alsup, J.).

The government filed its amended notices on March 9, 2007.  Defendants then filed separate motions to strike the notices, or for other relief such as striking elements of the notices or holding evidentiary hearings to assess the reliability of the government's evidence.

**ANALYSIS**

1.    **STATUTORY AGGRAVATING FACTORS.**

A.    **The Defendant Committed the Offense After Substantial Planning and Premeditation to Cause the Death of a Person (18 U.S.C. 3592(c)(9)).**

The amended notice alleges the "substantial planning and premeditation" factor with respect to all murders with which Fort is charged.  This factor is alleged against Diaz for the murders of Kenya Taylor and Antoine Morgan.  This Court's January 23 order instructed the government to provide an informative outline of the factual basis with which it intends to establish this factor.

In its amended notice regarding Diaz, the government has alleged the following with respect to the murder of Kenya Taylor:

> Evidence will demonstrate that defendant Diaz received orders to kill Kenya Taylor prior to the date of the homicide.  During the

2

1                intervening time period, defendant Diaz planned to kill Taylor
and began looking for an opportunity.  Defendant Diaz further
2                lured Taylor to an appropriate location for the killing.

3 (Docket No. 1177 at 5).  Regarding the murder of Antoine Morgan, the government alleges as

4 follows:

5                Evidence will demonstrate that a co-conspirator stated a belief
that the victim was related to or involved in the murder of an
6                associate of the Down Below Gang.  That co-conspirator issued
an order to kill the victim in retaliation to all DBG members.
7                That order was issued prior to the killing of the victim.  During
the intervening time period, defendant Diaz planned to kill
8                Morgan and began looking for an opportunity to carry out that
plan.  Defendant Diaz further lured Morgan to an appropriate
9                location for the killing.  Defendant Diaz gave a signal prior to the
killing for other individuals to leave the area where he killed
10                Morgan.

11 (*id*. at 6–7).

12        Following the government's revisions, defendant Diaz maintains that the notice

13 continues to be overly vague.  Diaz contends that the description regarding the murder of Kenya

14 Taylor is not sufficiently detailed because it does not answer certain fundamental questions

15 such as when the orders were given, by whom, how Diaz planned to kill Taylor, and how Diaz

16 lured Taylor to an appropriate location.  Diaz also maintains that the amended notice fails to

17 detail the type of evidence, such as eyewitness testimony or forensics, that the government

18 intends to introduce in support of these allegations.  Diaz contends that the description

19 regarding the murder of Antoine Morgan is similarly deficient.  The amended notice with

20 respect to both murders is allegedly too conclusory to allow Diaz to prepare for sentencing

21 proceedings or to allow the Court to ensure the reliability of the evidence.  Accordingly, Diaz

22 requests that the Court strike this factor.

23        The January 23 order explained that the Court "expects that the revised notice will be

24 'akin to an informative outline,' though it need not be 'a revelation of evidentiary detail or the

25 Government's theory of its case.'" *Diaz I*, 2007 WL 196752, at *3 (quoting *United States v. Bin*

26 *Laden*, 126 F. Supp. 2d 290, 304–05 (S.D.N.Y. 2001) (Sand, J.)).  The Court expressed concern

27 that defendants would be deprived of the right to present a complete defense "'if the defense

28 were forced to confront sentencing phase evidence without any notice of what that evidence

1    might be.'" *Ibid.* (quoting *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 472 (S.D.N.Y.
2    2001) (Pollak, J.)).

3        The government did not address this allegation in its opposition to the motion.  The
4    government has, however, sufficiently amended the notices to set out the factual basis for this
5    factor.  The allegations relating both to the murder of Kenya Taylor and to the murder of
6    Antoine Morgan indicate that defendant Diaz received an order, planned the killing, sought out
7    an appropriate spot for the killing, and lured the victim to the place of the murder.  This basic
8    outline provides sufficient notice so that Diaz knows the basis of the allegation and can prepare
9    a defense.  It is not necessary for the government to lay out the details of its evidence at this
10   point.  Accordingly, this order denies the request to strike or order an amendment to the
11   "substantial planning and premeditation hearing" factor.

12          **B.      The Defendant, in the Commission of the Offense, or in Escaping**
                       **Apprehension for the Violation of the Offense, Knowingly Created a**
13                     **Grave Risk of Death to One or More Persons in Addition to the**
                       **Victim of the Offense (18 U.S.C. 3592(c)(5)).**
14
15       The "grave risk of death" factor is alleged against Fort for all three counts of murder
16   with which he is charged, and against Diaz for the murder of Beverly Robinson.  The Court
17   noted that in the original notice, the government failed to explain "who was put at grave risk,
18   what the grave risk was, or how the defendant 'knowingly' created the risk."  *Diaz I*, 2007 WL
19   196752, at *4.  The Court accordingly ordered the government to provide a more detailed basis
20   for this factor.

21              **(1)      *Defendant Fort.***

22       With respect to the allegation against defendant Fort for the murder of Baby Molex, the
23   government added the following language in the amended notice:

24              The defendant shot a gun at the victim's father and other man near
                him outside the victim's home.  These shots wounded the victim's
25              father, narrowly missed the other man, and killed the victim.

26   (Docket No. 1176 at 2–3).

27       The statute requires that the defendant "knowingly created a grave risk of death to 1 or
28   more persons in addition to the victim of the offense."  18 U.S.C. 3592(c).  Fort alleges that in
     order to meet this statutory factor for the murder of Baby Molex, the government must show

United States District Court

For the Northern District of California

1    that Fort knowingly created a grave risk of death for the victim (Baby Molex) *and* at least one

2    other person.  Fort contends that the amended notice does not contain any basis to support the

3    allegation that he had knowledge of any risk to the actual victim, Baby Molex.

4           The government maintains that the knowledge of risk to the victim and the actual risk to

5    the victim are both irrelevant because this factor is designed for situations where a defendant

6    knowingly created a risk to persons *other than* the victim.  The issue is thus whether

7    "knowingly created a grave risk" applies just to other parties or if it also applies to the victim.

8    Other courts have interpreted this factor to focus on the risk to parties other than the victim.

9    *United States v. McVeigh*, 944 F. Supp. 1478, 1490 (D. Colo. 1996) (Matsch, J.) (no vagueness

10   problem where the government intended to "prove that the truck bomb was of such force as to

11   create a risk to persons who were not physically affected by the explosion"); *see also United

12   States v. Cheever*, 423 F. Supp. 2d 1181, 1203 (D. Kan. 2006) (Belot, J.).  This order agrees and

13   holds that it is unnecessary for the government to allege in support of this factor that defendant

14   had knowledge of a grave risk to the actual victim.  It is sufficient that the government allege a

15   known grave risk to someone *other* than the victim.  Here, Fort allegedly meant to kill the

16   baby's father, but the bullet instead killed the baby.  That is sufficient.

17                                   **(2)    *Defendant Diaz.***

18          In its amended notice for Diaz, the government adds the following detail to support the

19   "grave risk of death" factor with respect to the murder of Beverly Robinson:

20                 A witness or witnesses will testify that the defendant and his co-
                   conspirators fired their weapons in close proximity to civilians, as
21                 well as public housing units where civilians resided, causing
                   grave risk of death to those civilians by possible stray bullets.
22

23   (Docket No. 1177 at 3).

24          Diaz maintains that the government's evidence is insufficient as a matter of law to

25   support the "grave risk of death" factor.  Diaz contends that because the notice alleges only

     *possible* stray bullets, the government could not establish a grave risk of harm, but rather a
26
     possible risk at most.  Diaz asserts that the Court has the inherent power to review the
27
     sufficiency of government evidence in support of aggravating circumstances.  *See United States
28
     v. Sampson*, 335 F. Supp. 2d 166, 198 (D. Mass. 2004) (Wolf, J.).

                                                  5

United States District Court
For the Northern District of California

1    Diaz further maintains that this factor as amended is vague because it fails to provide

2  important details such as who the witnesses were, who the civilians were, and how these

3  civilians faced a grave risk of death.  Finally, Diaz asserts in his reply that the reference to co-

4  conspirators is irrelevant and should be struck.

5    This order first addresses the contention that the amended notice fails as a matter of law

6  to establish the "grave risk of death" factor.  Whether or not a grave risk of death is created

7  depends on the underlying facts and circumstances.  In *United States v. Allen*, the Eighth Circuit

8  held that where the risk is not a "significant and considerable possibility," the defendant should

9  not be eligible for death.  *United States v. Allen*, 247 F.3d 741, 787 (8th Cir. 2001).  In another

10  decision, the Fifth Circuit found that this factor was present when a number of bullets were fired

11  out of a moving vehicle and where there was evidence of bullets ricocheting off the ground in

12  the near vicinity of eyewitnesses.  *United States v. Robinson*, 367 F.3d 278, 289 (5th Cir. 2004).

13    Here, the notice alleges that Diaz shot a firearm in close proximity to civilians and

14  public-housing units.  This provides a foundation for the "grave risk of harm" factor.  While it is

15  likely that the government will need to prove additional details at the penalty phase, such details

16  are not required at this point.  The government's allegations in the notice are not insufficient as

17  a matter of law to establish this factor.

18    Next, this order turns to the question of whether the amended notice is sufficiently

19  detailed to provide adequate notice to defendant Diaz.  The government maintains that the level

20  of detail is sufficient and that Diaz is not entitled to witness names at this point.  The

21  government contends that "defendant Diaz is well aware of the place at which this crime is

22  alleged to have been committed, as well as the manner in which it is alleged to have been

23  committed" (Docket No. 1212 at 10).  Diaz contends that such an argument is equivalent to

24  stating that Diaz does not need notice of the charges against him, which is contrary to the

25  presumption of innocence.

26    This order finds that the level of detail in the notice is sufficient.  The January 23 order

27  required the government to provide an informative outline showing the detailed basis for this

28  factor.  Such an outline does not mandate details such as witness names.  At this point, it is

1    sufficient that the government has indicated that the shooting took place in close proximity to

2    civilians and residences.  The government has thus indicated its basis for the factor, and Diaz

3    has adequate information with which to prepare a defense.

4         Finally, this order addresses the contention that the amended notice's reference to co-

5    conspirators should be struck due to irrelevance.  Diaz maintains that this aggravating factor is

6    meant to focus only on the actions of the defendant.  When considering the factor that the

7    defendant committed the offense in an especially heinous, cruel, or depraved manner, the Fifth

8    Circuit indicated that the jury must focus on the acts of the defendant and not those of co-

9    conspirators.  *United States v. Hall*, 152 F.3d 381, 415 (5th Cir. 1998).  Here, as in *Hall*, the

10   language of the statute requires that the jury focus on the acts of the defendant.  The statute here

11   requires that "[t]he defendant . . . knowingly created a grave risk of death."  18 U.S.C.

12   3592(c)(5).  When considering whether others were placed at a grave risk of death by

13   defendant's actions, however, it is necessary to review the totality of the circumstances.  While

14   consideration of this factor must focus on defendant's actions, defendant's actions should not be

15   viewed in isolation.  The actions of co-conspirators are not necessarily irrelevant as a matter of

16   law.  The reference to co-conspirators need not be struck at this point.

     **C.    The Victim was Particularly Vulnerable Due to Old Age, Youth, or
            Infirmity (18 U.S.C. 3592(c)(11)).**

18        The government alleges the "particularly vulnerable" factor against defendant Fort for

19   the murder of Baby Molex.  In support of this factor, the government states that at the time of

20   the murder, Baby Molex was approximately seven weeks old.

21        Fort maintains that the government has not alleged facts sufficient to establish this

22   factor.  The "particularly vulnerable" factor requires a nexus between the victim's vulnerability

23   and the death.  *Sampson*, 335 F. Supp. at 213.  Fort alleges that the government has not stated

24   any basis to show that the victim's young age contributed to his death or that Fort somehow

25   took advantage of this vulnerability.

26        This order holds that it is not necessary for a defendant to know of the victim's

27   vulnerability, but rather that the victim's vulnerability somehow contributed to the victim's

28   death.  *Ibid*.  In *United States v. Minerd*, the court found that "a three-year old child is

United States District Court

For the Northern District of California

vulnerable within the meaning of the statute, since she would have been completely dependent upon her mother for protection." *United States v. Minerd*, 176 F. Supp. 2d 424, 447 (W.D. Pa. 2001) (Cohill, J.). Where a victim was killed instantly by an explosion, however, a court found that youth clearly played no factor in the death and that this factor was not present. *United States v. Johnson*, 136 F. Supp. 2d 553, 560 (W.D. Va. 2001) (Moon, J.).

Here, Baby Molex was vulnerable because, due to his age, he was necessarily attached to his parents and unable to live elsewhere. He was accordingly in close proximity to the alleged target of the shooting and unable to escape. This order finds that the "particularly vulnerable" factor should not be struck prior to the presentation of evidence because of the plausible connection between the victim's age and death.

### 2. NON-STATUTORY AGGRAVATING FACTORS.

#### A. Victim-Impact Evidence.

For each of the murders charged against defendants, the notices include "victim impact evidence" as a non-statutory aggravating factor. In its January 23 order, this Court instructed the government to provide notice of the type of injury, harm, and loss to families, as well as the type of personal characteristics the victims possessed in support of this aggravating factor. The Court referenced the following district court decision:

> The court finds that the defendant is entitled to greater specificity regarding this factor, to wit, which members of the family have suffered, the nature of their suffering, and the nature of the "permanent harm." For example, whether members of the family sought counseling or other medical treatment, such as hospitalization, and whether and to what extent members of the family suffered financial harm, are relevant considerations in discerning whether this factor is indeed "aggravating" in this case.

*United States v. Glover*, 43 F. Supp. 2d 1217, 1225 (D. Kan. 1999) (Lungstrum, J.).

The "victim impact" factor is listed with regard to each individually charged murder. In its amended notices, the government added details regarding the ways in which each of the victims' families have suffered. For example, Fort's notice regarding the murder of Jovanie Banks indicates that Banks' family members suffered "anger, anxiety, fear, depression, paranoia, financial losses, and need for counseling" as a result of his death (Docket No. 1176 at 5). Diaz's notice regarding the murder of Kenya Taylor indicates that Taylor's death caused

family members to suffer from "fear of going outside, restrictions on children's activity, lack of trust for people, therapy, not going out after dark, relocation to [a] more expensive neighborhood, fear of the defendants and their families, not inviting others into their homes, anger, anxiety, grief, sleep loss, nightmares, loss of appetite, depression, fatigue, and crying uncontrollably" (Docket No. 1177 at 5).

### (1) *Lack of Specificity.*

Defendants maintain that the amended notices do not provide sufficient detail. Specifically, defendant Fort asserts that the government provided no personal information regarding the victims, other than the fact that Baby Molex was an infant. Fort contends that the broadness of the notice enhances the potential for undue prejudice from the admission of this evidence. Fort maintains that the information that one of the alleged victims was a seven-week-old infant would be particularly prejudicial.

Defendants contend that if this factor is not struck, an evidentiary hearing is necessary to determine the reliability of the witnesses and the type of testimony to be expected. Defendant Diaz contends that the Court should not wait until the penalty phase to determine the potential for prejudice because the issue may be reviewed prior to trial, and such determination could impact how defendant conducts jury selection.

This order first considers whether the government has provided sufficient detail to support the "victim impact" factor. The government asserts that its allegations adequately provide the defendants with an idea of the type of evidence it will present. This order agrees. The government has provided sufficient detail regarding the exact harms suffered by the victims. In the case of Baby Molex, the government described his young age as a relevant consideration. This information is sufficient to allow for a defense to be prepared.

Next, this order considers the timing for balancing the potential prejudice against the probative value of "victim impact" testimony should such balancing be deemed necessary. The government maintains that the potential for prejudice is properly addressed at the time of a penalty phase, while defendants request that the balancing be performed prior to trial. With bifurcated proceedings where victim-impact evidence is only introduced during the sentencing

United States District Court

For the Northern District of California

1   phase, the Court's review of such evidence could reasonably be postponed until after the guilt

2   phase has concluded.  It would undoubtedly be an emotional strain to testify at the trial of

3   someone accused of murdering a close family member.  Given that many cases never make it to

4   the sentencing phase, or even to trial, it would be preferable to delay such testimony until it is

5   clear that it will be necessary.  Diaz's claim that this determination should be made prior to trial

6   because it could impact jury selection decisions is neither supported by precedent nor

7   sufficiently convincing to outweigh the risk of imposing an unnecessary burden on those

8   testifying and on the efficient use of judicial resources.  Accordingly, this order denies

9   defendant's request for a pretrial hearing to review victim-impact evidence.  Such a hearing will

10  be held, if at all, prior to the sentencing phase should the trial reach that point.

11              **(2)**     ***Multiple Special Circumstances Based on One Factor.***

12          Defendant Diaz maintains that the "victim impact" factor is being inflated into three

13  factors, one for each victim.  Diaz alleges that this is improper under *People v. Allen*, 42 Cal. 3d

14  1222, 1273 (1986).  In *Allen*, the California Supreme Court considered the aggravating factor

15  that the defendant had committed multiple homicides.  The state had alleged the "multiple

16  homicide" factor six times when the defendant was accused of three murders.  The California

17  Supreme Court held that alleging the "multiple-homicide" factor more than once was improper

18  because it increased the risk of arbitrary imposition of the death penalty.  Here, Diaz contends

19  that it is similarly inappropriate to allege the "victim impact" factor more than once.

20          To the extent that the state court decision applies here, this order declines to extend the

21  reasoning from *Allen* to the context of victim-impact evidence.  It is appropriate to consider the

22  victim impact separately for each murder where the defendant is charged with more than one.

23  Victim-impact evidence does not suffer the same redundancy problem identified in the *Allen*

24  decision.  Each alleged murder was a separate act with a unique victim.  Each victim had family

25  members who have allegedly been impacted in specific ways.  Accordingly, this factor is not

26  being improperly inflated by appending it separately to each murder.

27          **B.        Participation in Additional Serious Acts of Violence and
                    Contemporaneous Criminal Conduct.**

28

United States District Court

For the Northern District of California

"Participation in additional serious acts of violence" and "contemporaneous criminal conduct" are non-statutory factors alleged against defendant Fort.  Only "participation in additional serious acts of violence" is alleged against defendant Diaz.  In its January 23 order, the Court ordered the government to provide an informative outline of the basis for these factors.

In response to this Court's order, the government modified these allegations to include the following language: "These acts are all charged in the Second Superseding Indictment, and discovery has been provided on all alleged crimes" (Docket No. 1176 at 8; Docket No. 1177 at 8).

**(1)     *Lack of Specificity.***

Defendant Diaz maintains that the reference to discovery does not suffice to provide an informative outline of the basis for the "participation in additional serious acts of violence" and "contemporaneous criminal conduct" factors.  The government maintains that it has provided defendants with a sufficient basis to prepare for the penalty phase.

The government has attempted to make this argument before.  This Court specifically noted the following in its January 23 order:

> The government's briefs . . . do not point to the specific facts in the 95-page indictment or 20,000 pages of discovery that support the factors the notices allege.  It is possible that the revised death notices will simply reiterate facts that are alleged in the indictment or supported elsewhere in the discovery.  Nevertheless, the government should lay out in its revised notice the factual details it intends to use to establish the aggravating factors at the penalty phase.

*Diaz I*, 2007 WL 196752, at *3.  The government was clearly on notice that, given the concern over the volume of discovery and complexity of the indictment, merely referring to the indictment and discovery is not sufficient to provide an informative outline regarding this factor.  Accordingly, the government's amended notices are insufficient with regard to the "participation in additional serious acts of violence" and "contemporaneous criminal conduct" factors.  The government plainly disregarded this Court's order.  Because, however, there is still substantial time before trial and thus no prejudice to defendants in allowing amendment, the government is ordered to amend this factor to address the vagueness discussed in this Court's

11

1    prior order.  The government has already had one chance to amend, and if it is unable to provide

2    sufficient clarity in its second attempt, the Court will strike this factor entirely.

3                            **(2)**      ***Duplicative and Cumulative.***

4          Diaz asserts that the "participation in additional serious acts of violence" factor is

5    unconstitutionally duplicative and cumulative because it is subsumed in the "continuing pattern

6    of violence" and "low rehabilitative potential" subparts of the "future dangerousness" factor.

7          An "aggravating factor that is necessarily and wholly subsumed by a different

8    aggravator within the same death penalty notice is invalid per se and should not be submitted to

9    the penalty jury for sentencing instruction."  *Bin Laden*, 126 F. Supp. 2d at 299.  The prior order

10   herein held that if the bases for the non-statutory factors "are too similar or substantially

11   overlap, the Court will give serious consideration to whether the factors are duplicative and

12   cumulative so as to be unconstitutional unless collapsed to a more compact set of factors for

13   presentation to the jury."  *Diaz II*, 2007 WL 656831, at *16.

14         Because the government will be amending its notice to provide more specificity as to

15   this factor, it is premature for the Court to determine whether or not the bases for the factors are

16   too similar or substantially overlap.  A decision on this question is deferred pending the

17   government's amended notice.

18                     **C.      Participation in Additional Homicides.**

19         "Participation in additional homicides" is a non-statutory factor alleged against both

20   defendants.  In its January 23 order, the Court found that it was too vague for the notice to

21   merely allege participation in other murders "including" those charged in the indictment.  The

22   Court thus ordered the government to provide an informative outline of the specific basis for

23   this factor.

24         In response to this Court's order, the government modified these allegations to include

25   the following language:  "These acts are all charged in the Second Superseding Indictment, and

26   discovery has been provided" (Docket No. 1176; Docket No. 1177).

27                            **(1)**      ***Duplicative and Cumulative.***

28

**United States District Court**

For the Northern District of California

12

United States District Court

For the Northern District of California

1      Defendant Diaz maintains that the "participation in additional homicides" factor is

2   unconstitutionally duplicative and cumulative.  Diaz maintains that the factor is subsumed in the

3   "continuing pattern of violence" and "rehabilitative potential" subparts of the "future

4   dangerousness" factor.

5      Because this order finds that the government needs to amend the "continuing pattern of

6   violence" and "rehabilitative potential" subparts of "future dangerousness," it is premature to

7   determine whether or not these factors overlap with "participation in additional homicides."

8   Accordingly, such a decision is deferred pending the government's amended notices.

9                        **(2)**      ***Multiple Special Circumstances Based on One Factor.***

10     The "participation in additional homicides" factor is alleged three times against each

11  defendant, once for each charged capital count.  Defendant Diaz maintains that the government

12  improperly inflates this factor by alleging it multiple times for each defendant.  Diaz contends

13  that it would be prejudicial at the penalty phase to present this factor to the jury more than once.

14  At the August 3 hearing, the government maintained that the notices are proper and that because

15  it is unforeseeable for which if any of the alleged crimes there will be convictions, it is

16  reasonable at this point to allege the factor once for each victim.

17     The concern here focuses on the presentation of this factor to the jury at the penalty

18  phase.  Accordingly, this order finds that the notices need not be amended.  How this factor will

19  be presented to the jury may be addressed by a motion *in limine* following the guilt phase of the

20  trial.

21                  **D.      Obstruction of Justice.**

22     The government alleges that defendant Fort participated in a conspiracy to murder two

23  potentially adverse witnesses, Harry Cael, Jr. and Jamaar Jackson.  The government also alleges

24  that defendant Diaz participated in the conspiracy to murder Jackson and that the conspiracy

25  directly relates to the activities of the Down Below Gang.

26     The Court's January 23 order instructed the government to provide an informative

27  outline of the factual basis for the "obstruction of justice" charge.  The Court also asked in its

28  February 28 order whether "the government's proffer on the 'obstruction of justice' factor: (1)

supports the conclusion that there was a conspiracy or (2) demonstrates that the conspiracies to

murder Jaamar Jackson and Harry Cael, Jr. were related to the activites of the Down Below

Gang." *Diaz II*, 2007 WL 656831, at *28. In response to the order, the government added the

following sentence to the amended notices: "These acts are all charged in the Second

Superseding Indictment, and discovery has been provided on all alleged crimes" (Docket No.

1176 at 9; Docket No. 1177 at 8).

Defendants maintain that the Court intended for the government to provide more than a

vague reference to the indictment and discovery. This order agrees. A vague reference to the

enormous amount of material included in the indictment and discovery does not adequately

allow defendants to prepare a defense to this allegation. The Court specifically recognized that

some of these activities would be described in the indictment, but nevertheless required an

informative outline. *Diaz I*, 2007 WL 196752, at *6. Clearly, referring to the indictment does

not satisfy this order. Accordingly, the government will be given a final opportunity to amend

its notices to provide the factual outline previously described. The questions raised in this

Court's February 28 order cannot yet be considered. The parties may address these questions

upon the filing of the government's revised notices.

**E.      Leadership Role in a Criminal Enterprise.**

The original notices alleged that both defendants were leaders of the Down Below Gang.

The Court ordered the government to provide an informative outline of the basis for this factor

(Doc. 1111 at 10).

With respect to defendant Fort, the government responded to the order by alleging the

following:

> The defendant gave orders to other members of DBG regarding
> their violent acts. Lower members of DBG were required to
> follow the defendant's orders. If they did not follow his orders,
> there were serious consequences. Defendant continued to direct
> the activities of DBG members while he was incarcerated.

(Docket No. 1176 at 9). With respect to Diaz, the government alleges the following:

> The defendant could give orders to certain members of DBG, who
> were expected to listen to him. He was, however, expected to
> follow the orders of Fort, Gregory Jackson (while he was alive),
> and redacted defendant #1, all of whom ranked higher than he in

14

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

DBG hierarchy.  The defendant could exercise his leadership role over lesser members of DBG by directing their violent activities.

(Docket No. 1177 at 9).

### (1)    *Lack of Specificity.*

Defendants maintain that the government's amended notice is inadequate to meet this Court's order.  Specifically, Diaz maintains that merely stating that Diaz *could* exercise a leadership role is not the same as stating that he did exercise such a role.  Fort asserts that the government's amended notice is inadequate because it does not provide details such as the orders themselves and which members received the orders.

While the government concedes its factual basis was general, the government was not required to provide specific details of witness testimony.  The government has sufficiently provided an outline of how it would prove leadership roles of each defendant.  The defendants have adequate information with which to prepare a defense.  Accordingly, this order will not strike this factor or require additional amendment to this factor.

### (2)    *Insufficiency of the Evidence.*

Diaz maintains that because of the lack of specificity, the evidence is insufficient as a matter of law to establish the "leadership in a criminal enterprise" factor.  Diaz contends that to allow a jury to consider such a speculative theory — that he *could* exercise a leadership role — would violate the reliability requirement of the Eighth Amendment.

It is premature to determine the sufficiency of the evidence supporting this factor without seeing the government's evidence presentation.  Most, if not all, of the government's evidence on the leadership factor will be presented at the guilt phase.  It would thus be better to address the sufficiency of the evidence as it relates to the sentencing factor through a motion *in limine* prior to the penalty phase.  Accordingly, this order declines to find the "leadership in a criminal enterprise" factor insufficient as a matter of law, without prejudice to defendants raising this issue prior to the penalty phase.

### (3)    *Duplicative and Cumulative.*

The Court also questioned in its February 28 order whether the "leadership role in a criminal enterprise" factor could stand as an independent factor when "membership in a

criminal enterprise" is alleged in support of the "future dangerousness" factor. *Diaz II*, 2007 WL 656831, at *22.

Fort asserts that these allegations are duplicative because being a leader of a gang wholly subsumes being a gang member. The government denies that the use of the same or similar evidence indicates that certain factors or subparts are duplicative. The government maintains that there is a difference between whether a defendant would pose a continued threat to the safety of others as a member of a criminal enterprise and whether a defendant is a leader in a criminal enterprise.

"An aggravating factor that is necessarily and wholly subsumed by a different aggravator within the same death penalty notice is invalid per se and should not be submitted to the penalty jury for sentencing consideration." *Bin Laden*, 126 F. Supp. 2d at 299. At this point, however, it is premature to decide whether or not these factors are duplicative. As described below, the government's notice regarding "membership in a criminal enterprise" fails to provide the factual outline previously ordered. Without knowing the government's specific basis for that factor, it is unclear whether or not these factors overlap. As a result, a decision on whether these factors overlap is deferred pending the government's amended notices.

### F. Future Dangerousness.

The government alleges the non-statutory aggravating "future dangerousness" factor against both defendants, which the government describes as follows: "The defendant represents a continuing danger to the lives and safety of other persons. The defendant is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others" (Docket No. 1177 at 9). This factor is divided into four subparts. These subparts include "continuing pattern of violence," "lack of remorse," "low rehabilitative potential," and "membership in a criminal enterprise."

#### (1) *Irrelevance.*

The "future dangerousness" factor is relevant to the extent that a defendant poses a threat of future danger while incarcerated. Accordingly, the Court's February 28 order stated that one issue the parties could address in these motions is "[w]hether, considering the facilities

**United States District Court**
For the Northern District of California

and security procedures available to the government, evidence of defendants' future dangerousness would be relevant to the sentencing decision and whether such evidence's probative value would be outweighed by the danger of unfair prejudice, confusion of issues, and misleading the jury." *Diaz II*, 2007 WL 656831, at *27.

Fort maintains that the amended notice on its face shows that the "future dangerousness" factor is either irrelevant or of such little probative value that admission of the evidence is unjustified. Fort maintains that the government effectively concedes the issue with its failure to indicate how its evidence would correspond to future dangerousness if defendant were imprisoned for life.

The government maintains that it has sought information relating to the defendants' prior behavior while imprisoned. Because the government does not yet have this information, it is unable to explain how this factor is relevant given the security available if defendants were given a prison sentence of life without parole.

The government's response is inadequate at this point, as it fails to address this Court's concerns. The government will, however, be allowed a last opportunity to amend its notices to add any information it has obtained regarding prior behavior, as well as information regarding the available facilities and security procedures. It is unclear why this information regarding facilities and security procedures was not included in the first amended notices. A second amendment to the notices, however, would not be prejudicial to defendants at this time and is thus permissible.

### (2)   *Continuing Pattern of Violence.*

The government's original notices used essentially the same wording to support the "continuing pattern of violence" subpart for each defendant: "The defendant has engaged in a continuing pattern of violence, attempted violence, and threatened violence, including, at least, the crimes alleged against defendant in the Indictment" (Docket No. 812 at 6). In its January 23 order, the Court found that the government's original basis for the subpart was too vague. The Court took issue with the use of the word "including," which fails to provide notice of the specific basis for this factor.

1

United States District Court
For the Northern District of California

The government amended its notice by replacing the words "including, at least" with "namely" and by providing additional details.  Regarding defendant Fort, the government added the following details:

> The defendant has been arrested at least 16 separate times for adult offenses and twice for juvenile offenses between 1998 and 2005.  This resulted in at least four convictions.  These prior offenses included, attempted murder, participating in a criminal street gang, batteries and fighting, many narcotics offenses, and [many] possessions of firearms, a silencer, and ammunition.  The defendant has previously been incarcerated in juvenile hall and San Francisco County jail.  The defendant has been found to have violated his probation.

(Docket 1176 at 9–10).  In reference to defendant Diaz, the government's amended notice provided as follows:

> The defendant has been arrested at least three separate times for adult offenses and five times for juvenile offenses between 1999 and 2005.  These prior offenses included three separate arrests for attempted murder, participating in a criminal street gang, carjacking, conspiracy, and many narcotics offenses, and many possessions of firearms, a silencer, and ammunition.  The defendant has previously been incarcerated in juvenile hall and San Francisco County jail.

(Docket 1177, p. 9).

Defendants contend that the amended notices are vague.  Fort maintains that the level of detail provided regarding prior arrests and incarceration is insufficient because the notice does not describe the time, place, or other circumstances of the alleged crimes.  Diaz contends that the government's use of the term "included" in his amended notice violates the Court's order because it is not specific enough regarding exactly what will be used to establish this factor.  This subpart is allegedly too vague to allow defendants to prepare for sentencing proceedings or to allow the court to ensure the reliability of the evidence.

Defendants further maintain that the amended notices do not allege evidence sufficient to establish a "continuing pattern of violence."  Fort maintains that he has been convicted only three times for relatively minor misdemeanors and that neither these convictions nor his past arrests are probative on the question of pattern of violence.  Fort maintains that evidence of his prior incarcerations is even more irrelevant and notes that there are limitations on the government's ability to introduce unadjudicated conduct.  Diaz similarly contends that the

allegations regarding his prior arrests and incarcerations are insufficient to establish this subpart.

Furthermore, defendants contend that the "continuing pattern of violence" and "low rehabilitative potential" subparts are unconstitutionally duplicative and cumulative because they are based on the same facts.

Finally, Fort maintains that the government's amended notice goes beyond the crimes alleged in the indictment. The original notice indicated that this factor is supported by prior acts of violence, including those charged in the indictment. Fort maintains that it is fundamentally unfair for the government to revise its notice to add further allegations that are unrelated to curing defects in the original notice.

This order agrees with the contention that the amended notices are vague. While the government has moved toward providing the detailed outline ordered by this Court, it continues to use open-ended qualifiers. The government refers to "at least" a certain number of arrests, which "included" specified offenses. This leaves open the possibility that other arrests and offenses could be introduced. At the August 3 hearing, the government stated that it intends to rely on all prior convictions as well as select prior arrests. At that hearing, the government indicated a willingness to specify these prior arrests. Accordingly, the government is ordered to amend its notices to remove open-ended qualifiers that do not sufficiently narrow the potential evidence. The government must also identify the specific prior conduct (not just arrests) it intends to introduce.

The question of whether the amended notices are insufficient to establish the "continuing pattern of violence" subpart of the "future dangerousness" factor is deferred pending the government's amendments to the notices. Because this order finds that both the "continuing pattern of violence" and "low rehabilitative potential" subparts require amendment, the decision as to whether or not these subparts unconstitutionally overlap is also deferred pending the government's amended notices.

With respect to whether the amended notice for defendant Fort has unfairly added new allegations unrelated to curing defects in the original notice, this allegation is without merit.

United States District Court

For the Northern District of California

1    The government's original notice indicated its foundation for this subpart included *at least*

2    those crimes charged in the indictment.  Alleging crimes beyond those in the indictment does

3    not expand beyond the original notice due to the original notice's open-ended language, which

4    the government has been required to cure.

5                    **(3)    *Lack of Remorse.***

6            The government's original notice alleged "lack of remorse" based on defendants'

7    "statements and actions during and after the offenses alleged in the indictment" (Docket No.

8    1177 at 9).  The Court's January 23 order instructed the government to detail these statements

9    and actions it intends to use in support of the "lack of remorse" subpart.

10           Defendants maintain that the amended "lack of remorse" subpart is defective because it

11   intends to rely in part on "negative evidence" — defendants' failure to speak and act rather than

12   actual statements and actions.  Specifically, the government asserts that each defendant "has

13   never demonstrated any remorse or regret for any crime he has committed, including the capital

14   crimes" (Docket No. 1176 at 10; Docket No. 1177 at 9).  The government previously stated that

15   it would not rely on defendants' silence, decision not to testify, or refusal to plead guilty in

16   order to establish this factor and would instead use affirmative evidence (Docket No. 1097 at

17   30).  Defendants contend that the government should not be allowed to enlarge the notice and

18   that such enlargement implicates defendants' Fifth Amendment rights.

19           Defendant Diaz further maintains that the "lack of remorse" subpart is unreliable and

20   fails to meet this Court's order.  In support of this subpart, the amended notice purports that

21   "[e]vidence will demonstrate that just prior to killing Kenya Taylor, defendant Diaz bragged to

22   Taylor that he had killed Antoine Morgan" (Docket No. 1177 at 9).  Diaz maintains that this

23   allegation is unreliable because the indictment alleges that Taylor was killed before Morgan.

24   Accordingly, it is illogical to assert that Diaz would brag to Taylor about killing Morgan.  Diaz

25   further maintains that this subpart is contrary to the Court's order because it does not detail

26   specific statements or actions on which the government intends to rely.  It instead relies merely

27   on an allegedly illogical statement and negative evidence.

28

                                              20

**United States District Court**
For the Northern District of California

1    This order first considers the allegation that the government has enlarged the notice and

2    may violate defendants' Fifth Amendment rights by relying on negative evidence.  The issue is

3    whether the government is breaking its original promise to rely on affirmative evidence to

4    demonstrate "lack of remorse" and not to rely on defendants' invocation of their right to silence,

5    decision not to testify, or refusal to plead guilty.  This order notes that the government's

6    recognition that it cannot rely on negative evidence protected by the Fifth Amendment *does not*

7    preclude the government from introducing other evidence of defendants' failure to show

8    remorse.  The reliance on "negative evidence" that does not implicate defendants' constitutional

9    rights is entirely permissible.  It would be illogical to preclude the government from presenting

10   evidence of a failure to show remorse, when the factor itself is "lack of remorse."  The notices,

11   therefore, are not deficient.

12   Nevertheless, the Court notes the possibility that the government may encroach on

13   defendants' Fifth Amendment rights.  While the government is not precluded from showing a

14   lack of remorse, it cannot rely on behavior protected by the Fifth Amendment, as the

15   government previously recognized.  In response to a similar assertion that a defendant's silence

16   cannot be used to establish lack of remorse, the court in *Bin Laden* found that such an objection

17   is "more properly the subject of an evidentiary hearing to occur immediately before the penalty

18   phase" when the Court will have a better idea of the exact evidence the government intends to

19   introduce.  *Bin Laden*, 126 F. Supp. 2d at 304.  For the same reason, this order finds that an

20   evidentiary hearing will be necessary prior to the penalty phase, should a penalty phase be

21   needed, in order to determine whether defendants' Fifth Amendment rights will be violated.

22   This order now considers the assertion that defendant Diaz's amended notice is

23   unreliable and insufficient to meet this Court's order.  The allegation that Diaz bragged to

24   Taylor that he killed Morgan is questionable given that the indictment asserts that the murder of

25   Taylor preceded that of Morgan.  This, however, is not necessarily unreliable.  It is possible that

26   the government is alleging that Diaz bragged about something that he had not yet actually done.

27   This is unclear.  The government's amendments are insufficient to meet this Court's previous

28   order.  The government is thus ordered to amend its notice regarding Diaz to clarify this factor

1   to ensure that it is not inconsistent with the indictment and so that Diaz is able to understand

2   what is being alleged and to prepare a defense.

3                              **(4)    *Low Rehabilitative Potential.***

4           The government's original notice supported the "low rehabilitative potential" subpart by

5   alleging that "defendant has demonstrated a low potential for rehabilitation as evidenced by his

6   longstanding involvement in criminal activities, including drug trafficking and violence, leading

7   up to the capital offenses charged in the Indictment" (Docket No. 1177 at 10).  This Court's

8   January 23 order instructed the government to detail the acts that will provide the basis for this

9   subpart.  The Court further noted that the government could not merely use an open-ended

10  qualifier such as "including."  To further establish this subpart in its amended notices, the

11  government refers to the "continuing pattern of violence" subpart, which describes past arrests

12  and incarcerations of defendants.

13          Diaz maintains that this subpart should be struck.  Diaz alleges that the government has

14  not provided a sufficient factual basis for this factor.  Furthermore, defendants maintain that the

15  "low rehabilitative potential" subpart and the "continuing pattern of violence" subpart are

16  unconstitutionally duplicative.

17          The "low rehabilitative potential" subpart is insufficient to meet this Court's prior order.

18  Merely referencing the "continuing pattern of violence" subpart does not specify what exactly

19  will be used to demonstrate "low rehabilitative potential."  The Court thus orders the

20  government to amend this subpart to establish an outline of its factual basis.

21          As described in the "continuing pattern of violence" section, because both subparts

22  require amendment, it is premature for the Court to determine whether these two factors are

23  unconstitutionally duplicative.

24                          **(5)    *Membership in a Criminal Enterprise.***

25          As to each defendant, the government originally alleged that "defendant has

26  demonstrated an allegiance to and active membership in the Down Below Gang" in support of

27  the "membership in a criminal enterprise" subpart.  In its January 23 order, this Court instructed

28  the government to outline the facts that establish this subpart.  In order to provide greater detail

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

in support of "membership in a criminal enterprise," the government's amended order merely references its allegations in support of the "leadership role in a criminal enterprise" factor.

Defendant Diaz contends that the "membership in a criminal enterprise" subpart should be struck for vagueness. Diaz maintains that the notice's cross-reference to the "leadership in a criminal enterprise" factor is inadequate. Additionally, both defendants argue that the "leadership role in a criminal enterprise" and "membership in a criminal enterprise" subparts are unconstitutionally duplicative and cumulative of one another because they are also based on the same circumstances. Diaz maintains that these factors must be collapsed.

This order first addresses the assertion that the "membership in a criminal enterprise" factor is vague. This Court required the government to lay out the specific foundation for each factor. Merely referencing another factor is not sufficient to establish a detailed outline of what evidence specifically relates to this particular factor. Part of the evidence may turn out to be duplicative, and if so, the government may choose to repeat itself. In order for defendants to adequately prepare a defense and in order for this Court to assess whether or not these factors are impermissibly duplicative, it is necessary for the government to lay out a factual basis for each of the factors. Accordingly, the government is ordered to amend this factor to provide the factual outline previously ordered.

As previously described, it is premature for this Court to consider the assertion that the "membership in a criminal enterprise" and "leadership role in a criminal enterprise" factors are duplicative. This decision is deferred pending the government's amended notices.

### 3.   MENTAL STATE FACTORS.

Under the heading of "Statutory Proportionality Factors Enumerated under 18 U.S.C. § 3591(a)(2)," the amended death notices list between two and four mental states as to each separate charged homicide. In its January 23 order, the Court ordered the government to provide an informative outline of its basis for establishing each gateway mental state. Defendant Diaz challenges the adequacy of the government's amended notice.

The government has added a number of details to the amended notice for Diaz. With respect to the murder of Beverly Robinson, the government provides the following:

> The defendant, after participating in the 'round-up' of the victim for the possible theft of a DBG community firearm, fired his weapon at the victim.  When the victim fled from the group of DBG members, the defendant pursued him with his weapon while other DBG members continued to shoot at the victim.

(Docket No. 1177 at 2).  Regarding the murder of Kenya Taylor, the government states as follows:

> Evidence will demonstrate that defendant Diaz planned to kill Kenya Taylor due to a belief that Taylor had assisted in the killing of a co-conspirator of Diaz and member of the DBG.  Defendant Diaz approached Taylor while armed and assisted in shooting Taylor with a handgun while a co-defendant shot Taylor with an assault rifle.  These actions killed Taylor.

(*id*. at 4).  Finally, the government alleges the following concerning the murder of Antoine Morgan:

> Evidence will demonstrate that the defendant approached the victim and fired his gun at the victim three times.  The medical examiners report will show that the victim was struck with three gunshot wounds: one to the back of the head, one to the upper back, and one to the forearm.  The defendant intended to kill the victim due to a belief that the victim was involved with the murder of co-conspirator of the defendant and member of the Down Below Gang.

(*id*. at 6).

Diaz maintains that these descriptions constitute brief summaries as opposed to informative outlines.  Diaz also alleges that the facts are insufficient as a matter of law to establish that Diaz intentionally killed Robinson or Morgan.  Diaz notes that the government at least asserted that Diaz's actions killed Taylor.  Because a similar assertion does not exist with respect to Robinson or Morgan, Diaz maintains that the alleged facts are insufficient.

Diaz further maintains that the Court should require the government to choose which of the four gateways it will rely upon and then strike the other three.  Diaz maintains that the fact that the government relies on the same summary to show all four mental states indicates that these factors are duplicative of one another.

With respect to the assertion that the government's allegations are vague, as the February 28 order recognized, the mental states alleged are variations on the same theme.  It is unnecessary to break down the facts separately for each factor when the jury could find that the

1    same evidence supports any one of the mental states.  Accordingly, it is sufficient for the

2    government to merely allege one fact pattern and contend that such facts could establish any

3    one of several mental states.

4        Next, this order addresses the contention that the facts alleged in the notice are

5    insufficient as a matter of law to establish that Diaz intentionally killed Beverly Robinson or

6    Antoine Morgan.  The government contends that the mere failure to include words stating that

7    Diaz's actions resulted in the deaths does not render the notice insufficient.  The government

8    suggests that such an allegation is obvious at this point.  This order agrees and finds that the

9    notice is not insufficient as a matter of law.  The first mental state alleged with respect to the

10   murder of Robinson is that the "defendant intentionally killed the victim."  While the

11   subsequent description of how defendant allegedly killed the victim does not express that the

12   victim died as a result of the actions, it is clear from the context what is being alleged.  The

13   same rationale applies to the allegations regarding the murder of Morgan.

14       This order now considers whether the government should be required to choose between

15   the mental states because they are duplicative.  The February 28 order held that "[i]t would be

16   unfair to force the government to restrict its theories before presentation of the evidence."  *Diaz*

17   *II*, 2007 WL 656831, at *9.  The fact that the government relies on the same evidence to

18   establish the mental states does not indicate that they are duplicative.  As previously described,

19   a jury could find that the same evidence supports any one of the mental states.  Accordingly, the

20   government need not choose between the mental states.

21       **4.**    **INCONSISTENCY OF THE NOTICE.**

22       In its February 28 order, this Court declined to strike alleged inconsistencies between

23   the indictment and the death notice pending the government's amended death notices and the

24   government's possible filing of a new superseding indictment.  The Court noted that if

25   inconsistencies arose between the revised death notice and the superseding indictment, the

26   Court would consider striking portions of the death notices that were inconsistent.  The

27   government did not file a new superseding indictment.  Defendant Diaz maintains that

28

United States District Court

For the Northern District of California

1   inconsistencies continue to exist between the indictment and the amended death notice, which

2   should result in material being struck.

3              **A.    Irrelevant and Prejudicial Material in the Indictment.**

4          Diaz maintains that irrelevant and prejudicial material in the indictment should be

5   struck.  The indictment alleges that Diaz committed the murder of Robinson "in an especially

6   heinous, cruel, and depraved manner in that it involved torture and serious abuse to the victim"

7   (Docket No. 676 at 88).  The amended notice does not make this allegation.  Diaz alleges that

8   the allegation should be struck from the indictment.

9          The government's response concedes that this factor is no longer alleged in Diaz's

10  notice.  At the August 3 hearing, the government conceded that this was surplus material in the

11  indictment.

12          Under Rule 7(d) of the Federal Rules of Criminal Procedure, the Court has the power to

13  strike surplusage from the indictment in order "to protect a defendant against prejudicial or

14  inflammatory allegations that are neither relevant nor material to the charges."  *United States v.*

15  *Ramirez*, 710 F.2d 535, 544–45 (9th Cir. 1993).  This order finds that the special circumstance

16  of torture and abuse alleged in the indictment, now dropped by the government, has a

17  significant probability of being prejudicial.  Because it is now irrelevant to the charges against

18  Diaz, it must be struck from the indictment.

19           **B.    Material in the Amended Notices but Not the Indictment.**

20          Diaz asserts that material included in his amended notice but not in the indictment

21  should be struck from the notice.  The indictment alleges that in the commission of the offense,

22  Diaz "knowingly created a grave risk of death to 1 or more persons in addition to the victim" in

23  violation of 18 U.S.C. Section 3592(c)(5).  In contrast, the amended notice alleges that "in the

24  commission of the offense, *or in escaping apprehension for the violation of the offense*," Diaz

25  "knowingly created a grave risk of death to 1 or more persons in addition to the victim" (Docket

26  No. 1177 at 3) (emphasis added).  Diaz maintains that this expansion of the charge to include

27  the creation of a risk while escaping apprehension for the crime is impermissible.  The

28

government maintains that the amended notice follows the exact wording of the statute and thus creates no undue prejudice.

The Court's prior order noted that "courts have held that the gateway mental state factors and statutory aggravating factors, as 'functional equivalent[s] of ... element[s] of a greater offense' must be alleged in the indictment." *Diaz II*, 2007 WL 656831, at *2 (citing *United States v. Bourgeois*, 423 F.3d 501, 507–08 (5th Cir. 2005)).  The Supreme Court has noted that "'an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form.'" *United States v. Cotton*, 535 U.S. 625, 631 (2002) (quoting *Russell v. United States*, 369 U.S. 749, 770 (1962)).

Here, the inconsistency is more than just a matter of form.  The language in the notice broadens the number of scenarios that would fall under the factor's description by incorporating risks created while the defendant is escaping apprehension.   The same problem exists with respect to defendant Fort's notice.  Because the indictment and the notices do not correspond, the inconsistent material included in the death notices — "or in escaping apprehension for the violation of the offense" — shall be struck from the notices.

### C.    Inconsistency Between Government's Stated Intentions and the Amended Notice.

Finally, Diaz alleges an inconsistency between the government's stated intentions with regard to the "participation in additional homicides" factor and the amended notice.  This Court noted in its January 23 order that the government represented that "the uncharged murders it intended to introduce were those of Matthew Moore and Ronnie Allen." *Diaz I*, 2007 WL 196752, at * 5.  The Court ordered the notices to "be amended to state specifically which uncharged homicides the government will introduce at the penalty phase." *Ibid*.  The amended notices, which refer to those homicides charged in the indictment, do not mention Matthew Moore or Ronnie Allen.  Accordingly, Diaz maintains that the government failed to follow the Court's order and that the Court should preclude the government from introducing these offenses at the penalty phase.

At the August 3 hearing, the government stated that it intends to only use those homicides alleged in the indictment to support the "participation in additional homicides"

27

factor.  This is entirely consistent with the notices.  The government is accordingly expected to abide by its notices and refer only to the homicides charged in the indictment in support of the "participation in additional homicides" factor.

## CONCLUSION

For the above-stated reasons, defendants' motions to strike the notices of intent are **GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART** and will require an evidentiary hearing prior to a penalty phase, should a penalty phase be necessary, as to certain issues.

As discussed above, the government is given a final opportunity to correct deficiencies in its notices.  The government's revised notices shall be provided on or before **SEPTEMBER 4, 2007**.  Motions by defendants to cover additional material at evidentiary hearings or to strike portions of the notices must be filed by **SEPTEMBER 18, 2007**.  Any opposition by the government must be filed by **SEPTEMBER 25, 2007**.  Any replies by defendants must be filed by **OCTOBER 2, 2007**.  Each defendant may only file one opening brief and one reply brief.  The opening briefs and the government's oppositions are limited to 25 pages (12-point font, double-spaced, no footnotes).  Any replies by defendants are limited to 15 pages (12-point font, double- spaced, no footnotes).  A hearing regarding these motions will be held on **OCTOBER 18, 2007** at **3:00 PM**.

**IT IS SO ORDERED.**

Dated:  August 14, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California