1
2
3
4
5
6           IN THE UNITED STATES DISTRICT COURT
7
8           FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   UNITED STATES OF AMERICA,              No. CR 05-0167 WHA
11             Plaintiff,
12      v.                                  **ORDER GRANTING IN PART,
                                            DENYING IN PART, AND
13   EDGAR DIAZ, EMILE FORT,                DEFERRING IN PART DEFENDANTS'
     and RAYMON MILBURN                     MOTIONS TO STRIKE SECOND
14                                          AMENDED NOTICES OF INTENT
15             Defendants.                  TO SEEK DEATH PENALTY**
     _____/
16
17                            **INTRODUCTION**

18          In this RICO gang prosecution, defendants Edgar Diaz and Emile Fort move to dismiss

19   the "special findings" from the second superseding indictment ("operative indictment") and to

20   strike the second amended notices of intent to seek the death penalty (Docs. 1282 and 1283)

21   on the grounds that the notices did not provide sufficient notice as required by the Constitution

22   and the orders issued on January 23, 2007, and August 14, 2007.  They also seek an evidentiary

23   hearing to evaluate the reliability and admissibility of the government's penalty-phase evidence.

24   For the reasons stated below, this order **GRANTS IN PART, DENIES IN PART, AND DEFERS IN**

25   **PART** defendants' motions to strike the second amended notices.

26                             **STATEMENT**

27          Defendants Edgar Diaz and Emile Fort are each charged with three murders (as RICO

28   predicate acts).  The operative indictment charged Diaz with killing Beverly Robinson,

**United States District Court**
For the Northern District of California

Kenya Taylor, and Antoine Morgan (Operative Indict. at pages 50–51, 52–54).  Fort was charged with the murders of Glenn Maurice Timmy ("Baby") Molex, Jovanie Banks, and Michael Hill (*id.* at ¶. 44–45, 46–48).

The government seeks the death penalty for these two defendants.  Section 3593(a) of Title 18 of the United States Code provides (emphasis added):

> If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, *a notice* — (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and (2) *setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.*  The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information.  *The court may permit the attorney for the government to amend the notice upon a showing of good cause.*

The government filed notices of intent to seek the death penalty against Diaz on July 7, 2006 (Doc. 555), and against Fort on October 3, 2006 (Doc. 812).  The notices were comprised of a list of statutory and non-statutory aggravating factors that allegedly justified a sentence of death. In support of each factor, the government generally had a one- or two-sentence description. For example, to describe the "obstruction of justice" aggravating factor, the Diaz notice stated only, "The defendant participated in a conspiracy to murder Jamar Jackson, a potential witness against him and other members of the Down Below Gang."

On January 23, 2007, the government was ordered to amend and to provide more factually detailed support for the aggravating factors listed in the notices.  Specifically, the January 23 order stated:

> The government's briefs . . . . do not point to the specific facts in the 95-page indictment or 20,000 pages of discovery that support the factors the notices allege.  It is possible that the revised death notices will simply reiterate facts that are alleged in the indictment or supported elsewhere in the discovery.  Nevertheless, the government should lay out in its revised

2

United States District Court

For the Northern District of California

> notice the factual details it intends to use to establish the aggravating
> factors at the penalty phase.  The Court expects that the revised notice
> will be "akin to an informative outline," though it need not be "a
> revelation of evidentiary detail or the Government's theory of its case."

*United States v. Diaz*, No. CR 05-0167 WHA, 2007 WL 196752, *5 (N.D. Cal. 2007) (citations omitted).  A month later, on February 28, 2007, another order addressed other challenges to the notice, finding that the majority of defendants' objections were without merit and that the rest would be addressed following the amended notices.  *United States v. Diaz*, No. CR 05-0167 WHA, 2007 WL 656831 (N.D. Cal. 2007).

The government filed its amended notices on March 9, 2007 (Docs. 1176 and 1177).  The notices added greater detail, particularly for the statutory aggravating factors.  For many of the non-statutory aggravating factors, however, the notices added merely, "This act has been charged in this Second Superseding Indictment, and discovery has been provided."  Defendants then moved to strike the notices.  On August 14, 2007, an order granted in part and denied in part defendants' motions but allowed the government yet another chance to provide adequate support for the factors included in its notice.  *United States v. Diaz*, No. CR 05-0167 WHA, 2007 WL 2349286 (N.D. Cal. 2007).

The second amended notices were filed on September 4, 2007 (Docs. 1282 and 1283).  Certain factors are now elaborated upon.  Others, however, merely replace the operative references to the indictment with references to discovery page ranges.  For example, instead of the aforementioned "obstruction of justice" factor, the notice substitutes "Information regarding this incident can be found at SH000001 through SH002993 and EF000001 through EF000949" (Diaz 2d Amd. Notice at 10).

In the instant motion, Diaz and Fort move to dismiss the "special findings" from the indictment and to strike the second amended notice of intent to seek the death penalty.  Although they reiterate their objections to the statutory aggravating factors (objections rejected earlier) defendants now concentrate their fire on the non-statutory aggravating factors (Docs. 1292 and 1293).

**ANALYSIS**

**1.     STATUTORY AGGRAVATING FACTORS UNDER 18 U.S.C. 3592.**

Diaz and Fort re-assert their objections to the statutory aggravating factors listed in the second amended notice (and that were previously made in the earlier notices).  These arguments were rejected in the August 14 order.  Those rulings stand.

**2.     NON-STATUTORY AGGRAVATING FACTORS.**

Turning to the non-statutory factors, defendants claim that the government failed to cure the defects found by the January 23 and August 14 orders.  The "special findings" in the operative indictment and second amended death notice should therefore be stricken, they say. According to defendants, "the government has squandered its 'last chance' by ignoring the Court's directives and by conjuring up completely new charges and theories that were never before alleged" (Diaz Br. 10).

**A.     Participation in Additional Serious Acts of Violence.**

Because of the government's obstinacy in refusing repeated opportunities to provide an informative outline, this order now pauses to re-trace the several rounds of orders that have gone before.  With respect to the factor, "participation in additional serious acts of violence," the first notice for Fort alleged (at 6):

> The defendant participated in other serious acts of violence in addition to the murders of Glenn Maurice Timmy ("Baby") Molex, Jovanie Banks and Michael Hill.  These serious acts of violence include, but are not limited to, the following:  on or about January 19, 2004, the defendant attempted to murder Restelli Richson.

The January 23 order held this to be insufficient (at 9):

> For the "participation in additional serious acts of violence" . . . non-statutory factor[], the government again used the non-limiting "include, but are not limited to" language.  This is too vague to provide defendants with sufficient notice . . .  [T]he government must indicate the specific crimes that support these factors.
> The government must also provide an informative outline of the factual basis on which it intends to establish these non-statutory aggravating factors.  This is particularly important with respect to uncharged acts.

United States District Court

For the Northern District of California

4

The requirement for an "informative outline" has been developed by many district court judges in the nation who have wrestled with the issue of nonspecific notices.[1]  Although the government was ordered in our case to indicate the specific serious acts of violence and provide an informative outline of the factual basis, the subsequent amended notice did not do so.  Instead, it simply stated (at 8):

> The defendant participated in other serious acts of violence in addition to the murders of Glenn Maurice Timmy ('Baby') Molex, Jovanie Banks and Michael Hill.  These serious acts of violence include, but are not limited to, the following:  on or about January 19, 2004, the defendant attempted to murder Restelli Richson.  *These acts are all charged in the Second Superseding Indictment, and discovery has been provided on all alleged crimes.*

The language added in the amended notice is italicized above.  Everything else remained unchanged.  No new information was provided.

A second order on August 14, 2007, found that the italicized addition was not enough.  It stated (at 11–12):

> The government was clearly on notice that, given the concern over the volume of discovery [which was approximately twenty-three thousand pages] and complexity of the indictment, merely referring to the indictment and discovery is not sufficient to provide an informative outline regarding this factor.  Accordingly, the government's amended notices are insufficient with regard to the "participation in additional serious acts of violence" . . . factor[].  The government plainly disregarded this Court's order.  Because, however, there is still substantial time before trial and thus no prejudice to defendants in allowing amendment, the

---

[1]  In the interest of protecting defendants' right to prepare an adequate defense, most federal district decisions have required an informative outline of the underlying facts the government plans to use to prove the aggravating factors indicated in Section 3593(a).  *See United States v. Solomon*, 2007 WL 1878030, *10–11 (W.D. Pa. June 26, 2007) (McVerry, J.); *United States v. Lecco*, 2007 WL 1074775, *2–5 (S.D. W. Va. April 5, 2007) (Copenhaver, J.); *United States v. Lecco*, 2007 WL 486614, *3–5 (S.D. W. Va. February 9, 2007) (Copenhaver, J.); *United States v. Gooch*, 2006 WL 3780781, *20–31 (D.D.C. Dec. 20, 2006) (Collyer, J.) (holding that defendant is only entitled to evidence and not how the government intends to use it, but ordering an outline as to the nature of victim-impact evidence it intends to submit); *United States v. Wilson*, 493 F. Supp. 2d 364, 377–78 (E.D.N.Y. July 4, 2006) (Garaufis, J.) (granting bill of particulars as to victim impact evidence only); *United States v. Rodriguez*, 380 F. Supp. 2d 1041, 1058 (D.N.D. July 29, 2005) (Erickson, J.) (granting full bill of particulars); *United States v. Karake*, 370 F. Supp. 2d 275, 279–82 (D.D.C. May 19, 2005) (Huvelle, J.); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 474–75 (E.D. Pa. Dec. 21, 2001) (Pollack, J.); *United States v. Bin Laden*, 126 F. Supp. 2d 290, 304 (S.D.N.Y. Jan. 2, 2001) (Sand, J.).  *But see United States v. Cheever*, 423 F. Supp. 2d 1181 (D. Kan. Mar. 29, 2006) (Belot, J.) (requiring nothing more than a list of aggravating factors); *United States v. Edelin*, 128 F. Supp. 2d 23, 42 (D.D.C. Jan. 23, 2001) (Lamberth, J.) (requiring only a list of aggravating factors); and *United States v. Nguyen*, 928 F. Supp. 1525, 1549–50 (D. Kan. May 9, 1996) (requiring only a list of aggravating factors) (Belot, J.).

United States District Court

For the Northern District of California

1                       government is ordered to amend this factor to address the
                    vagueness discussed in this Court's prior order.  The government

2                       has already had one chance to amend, and if it is unable to
                    provide sufficient clarity in its second attempt, the Court will

3                       strike this factor entirely.

4   In response, the government amended its notice for Fort again, this time alleging (at 8):

5                       The defendant participated in other serious acts of violence in
                    addition to the murders of Glenn Maurice Timmy ('Baby')

6                       Molex, Jovanie Banks and Michael Hill.  These serious acts of
                    violence include, but are not limited to, the following:  on or

7                       about January 19, 2004, the defendant attempted to murder
                    Restelli Richson.  *(Information regarding this incident can be*

8                       *found at JB000001 through JB000432, JB CD 1–3).*

9   The amended notice substituted the italicized language immediately above for the italicized

10  language previously held to be inadequate.  The cross reference "narrowed" the discovery range

11  down to 432 pages and three CDs.

12         This is just one example.  In the latest death notices, there are other factors in contention

13  with the same problem — the "participation in additional serious acts of violence" factor for

14  Diaz, and the "obstruction of justice" factor for Diaz and Fort.  All of these factors have been

15  augmented in the same manner.  The discovery citations differ, of course, depending on the

16  factor and defendant.  For the other factors, the discovery ranges exceed three thousand pages.

17         To determine how workable and informative the cross references are, the Court has

18  reviewed the entire range of the cited 432 pages of discovery concerning "participation in

19  additional serious acts of violence" factor involving the murders of Glenn Maurice Timmy

20  Molex, Jovanie Banks, and Michael Hill, and the attempted murder of Restelli Richson.

21  The government was asked to lodge copies of the materials in the discovery page ranges cited,

22  particularly the version redacted for witness safety (because the redacted version is the only

23  version available to the defense).

24         The undersigned judge then personally reviewed the stack of materials.  It took several

25  hours over two days to review.  Without reaching a full understanding of all details, the

26  undersigned unearthed several revealing documents, namely reports of interviews with witnesses

27  who saw Fort shoot and kill Jovanie Banks, a crime-scene investigation report on shell casings, a

28

**United States District Court**
For the Northern District of California

1   summary of a jailhouse telephone call from Fort in which he indicated that his listener should

2   "boom boom" a certain witness.

3          On the other hand, the vast majority of the stack is unilluminating or at least unclear in its

4   significance.  Most of the pages are uninformative booking sheets, bail warrants, rap sheets,

5   wanted posters, inventory sheets, latent fingerprint requests, car insurance information, and even

6   a letter to the mayor from the chief of police requesting a reward offer.  All of the photos are

7   hard to make out due to their being extremely poor photocopies.  Many pages were heavily

8   redacted, as stated, for witness safety.  As to them, the redactions largely destroy the informative

9   value of the pages.  Some of the pages are written in police shorthand.  That hampers

10  intelligibility.  Several subranges within the Bates range were "intentionally omitted" as not

11  falling within Rule 16, *Jencks*, *Brady*, or orders in this case, according to a notice substituted for

12  those pages.  These pages reveal zero.  In sum, although some important information can be

13  extracted from the stack, the Court still must guess at what information is lurking in the material

14  and will surface at the penalty phase as key government points.

15         The Court has repeatedly ordered the government to give an informative outline.

16  The government need not set forth specific evidence.  A short outline explaining the particular

17  conduct, the specific defendant's role therein, the circumstances showing deliberation and lack

18  of self-defense, and what it is about the conduct that ties it into the aggravator should be spelled

19  out in the informative outline.  An example of an informative outline would be:

20              On MM-DD-YYYY, defendant lay in wait to kill Victim.
            This was for the purpose of eliminating a witness in a pending
21          prosecution in which Victim intended to testify against a gang
            member.  Defendant was not under the influence of any drugs or
22          alcohol.  Defendant made extensive preparations, including the use
            of extra-deadly bullets.  Defendant acted alone and not under any
23          compulsion.  With such premeditation, defendant stepped out of
            his hiding place and shot Victim two times on the sidewalk, near
24          the corner of X Street and Y Street at 8:00 p.m.  Victim was
            unarmed and at no time threatened defendant.  Victim barely
25          survived.  This attempted homicide demonstrates defendant's
            participation in additional serious acts of violence.

26         Merely referring to a range of several hundred pages (or thousands in some cases)

27  in discovery is not an informative outline, for three reasons.  *First*, too much is left to guesswork.

28  Notice means notice.  It does not mean a scavenger hunt for clues in discovery, including in

7

United States District Court

For the Northern District of California

redacted pages.  *Second*, the procedure followed by the government, if allowed, would lead to interminable sidebars during the penalty trial in which the Court would have to constantly consult and reconsult various discovery stacks to determine if a pending line of questions was fairly noticed.  A jury trial should not be interrupted in this fashion.  Yet the government's proposed procedure would inevitably lead to such hiatuses.  It would take an inordinate amount of time to interpolate between and among pages to ascertain if fair notice had been given to support a penalty proffer.  All the while the jury would be held in waiting.  This would be an unworkable donnybrook.  *Third*, the difficulties anticipated by this order would be multiplied by the other ranges for the other cited Bates ranges, which sometimes range in the thousands of pages.[2]

Another need for the informative outline is to see how the conduct referenced ties into the aggravating factor and to help sort out which acts are going to be used more than once by the prosecution.  The government has been repeatedly asked to provide an informative outline and has obstinately refused to do so.  Accordingly, the factor is stricken in Fort's notice.

"Participation in additional serious acts of violence" was also alleged against Diaz.  The government made similar changes to Diaz's second amended notice; it maintained the same facts and merely added a discovery range.  For the same reasons stated above, this factor for Diaz must be stricken.

Only Fort is charged with the non-statutory aggravating factor of "contemporaneous criminal conduct."  This order finds that this factor in Fort's amended notice is sufficiently detailed.  The notice includes nine relevant incidents, their dates of occurrence, and where the information can be found in discovery.  These incidents describe how Fort was engaged in enterprise crimes, drug offenses and witness tampering (Fort 2d Amd. Notice at 8–10).

In sum, the "participation in additional serious acts of violence" factor must be stricken for Fort and Diaz due to lack of specificity.  This order therefore does not need to reach

---

[2]  One such example was the "obstruction of justice" factor.  The notice states, "The defendant instigated conspiracies to murder Jamaar Jackson, and Harry Cael, Jr., both potential witnesses against him and other members of the Down Below Gang.  Information regarding this incident can be found at SH000001 through SH002993 and EF000001 through EF000949" (Fort 2d Amd. Notice at 10).  The discovery cited in this passage was a little under *four thousand pages.*

United States District Court

For the Northern District of California

defendants' arguments that this factor is duplicative, cumulative, or irrelevant.
The "contemporaneous criminal conduct" factor in Fort's second amended notice is not stricken.

### B.   Obstruction of Justice.

"Obstruction of justice" was alleged against Fort and Diaz.  As stated, the references to
the enormous ranges of pages of discovery do not provide sufficient notice.  In this connection,
the Diaz notice points to almost four thousand pages worth of discovery for the obstruction of
justice factor (from SH000001 through SH002993 and EF000001 through EF000949) (Diaz 2d
Amd. Notice at 9).  So too with Fort's notice (Fort 2d Amd. Notice at 10).  Simply narrowing
down twenty-three thousand pages of discovery to four thousand pages is not enough to put
defendants on notice of the allegations against them.  It does not provide a factual basis, nor does
it answer the Court's questions regarding the conspiracies to murder Jamaar Jackson and Harry
Cael, Jr.  Due to the government's failure to allege this factor with sufficient specificity, this
factor is stricken from the second amended notices for Diaz and Fort.  This order need not reach
the issue of whether or not the factor is duplicative and cumulative.

### C.   Participation in Additional Homicides.

The notices alleged "participation in additional homicides" against both defendants.
The January 23 order found that the wording was too vague in merely alleging participation in
other murders "including" those charged in the indictment.  The government then changed the
word "including" to "specifically" and added that the acts were charged in the second
superseding indictment and discovery had been provided.

In response, defendants claimed that this factor was duplicative and cumulative because
it was subsumed in the "continuing pattern of violence" and "low rehabilitative potential"
sub-parts of the "future dangerousness" factor.  The August 14 order deferred making a decision
until the government amended latter sub-parts, as will be discussed.  No changes were made in
the second amended notices to the "participation in additional homicides" factor.

Diaz continues to argue that this factor is unconstitutionally duplicative and cumulative
because it is subsumed in the two sub-parts of the "future dangerousness" factor.  This order
disagrees.  Just because one factor shares facts with another factor does not render it

unconstitutional.  Although the Ninth Circuit has not addressed the issue, the Eighth Circuit has held that, during the sentencing phase of a capital murder trial, the same facts could support different inferences and different aggravators under the Federal Death Penalty Act.  According to *United States v. Purkey*, 428 F.3d 738, 762 (8th Cir. 2005):

> We think that the Tenth Circuit is correct to conclude that the same facts can support different inferences that form different aggravators.  Otherwise the government would either have to choose one out of several possible aggravating factors for each instance of a defendant's misconduct or pack into a single aggravator multiple negative inferences that could be drawn from the misconduct and then risk the jury's rejection of the aggravator due to disagreement over just one of the inferences.

This order agrees.  The factors have different purposes.  While the "participation in additional homicides" factor considers who defendant killed in addition to the murder charged, the "future dangerousness" factor contemplates the risk defendants pose to others around them in the future. This risk factor can take into account other homicides.  This order will not strike this factor for being overly duplicative and cumulative.  We must remember that sometimes a single fact or single body of facts gives rise to more than one sound argument.  Any remaining problem can be handled via cautionary instructions.

### D. Leadership Role in a Criminal Enterprise.

Defendants raise various challenges to this factor, as follows.

#### (1) Lack of Specificity.

Another non-statutory aggravating factor alleged against Fort and Diaz was that they occupied a "leadership role in a criminal enterprise."  The February 28 order determined that the government had sufficiently provided an outline of how it would prove leadership roles of each defendant.  The government added little new language to the first amended notice filed on March 9, 2007.  The only difference was that the amended notice for Diaz now states that he was subject to the orders of co-defendant Raymon Milburn, instead of "redacted defendant #1" (Diaz 2d Amd. Notice at 9).  This order again holds that there is no need to strike this factor or to require an additional amendment for lack of specificity.

United States District Court

For the Northern District of California

*(2)*     ***Duplicative and Cumulative.***

Defendants claim that the "leadership role in a criminal enterprise" factor is not sufficiently independent of the "membership in a criminal enterprise" sub-part of the "future dangerousness" factor.  An "aggravating factor that is necessarily and wholly subsumed by a different aggravator within the same death penalty notice is invalid per se and should not be submitted to the penalty jury for sentencing consideration."  *United States v. Bin Laden*, 126 F. Supp. 2d 290, 299 (S.D.N.Y. 2001) (Sand, J.).  The August 14 order deferred ruling pending the government's amended notices.

In previous motions, the government had argued that there was a difference between whether a defendant posed a continued threat to the safety of others as a member of a criminal enterprise and whether a defendant occupied a leading role in a criminal enterprise.  The second amended notice for Diaz now states that defendant was positioned in the gang hierarchy such that he could give orders to lesser members of DBG while following the orders of Emile Fort, Gregory Jackson, and Raymon Milburn (Diaz 2d Amd. Notice at 9).  For Fort, the notice now states that he directed the violent activities of other DBG members.  He even controlled their activities while he was incarcerated.  If his underlings failed to heed his orders, "there were serious consequences" (Fort 2d Amd. Notice at 10–11).

This order finds that these two factors are not necessarily duplicative and cumulative. If a defendant is found to have held a leadership role in a criminal enterprise *and* he is found to have been a member in a criminal enterprise, then the factors would be duplicative and cumulative.  It is possible, however, that either or both defendants could be found to have been members in a criminal enterprise *without* their having assumed a position of leadership. The "leadership role in a criminal enterprise" factor need not be stricken on grounds of being too duplicative and cumulative.  Proper instructions will cure any problem.

*(3)*     ***Sufficiency of the Evidence.***

Diaz continues to assert that the government's allegation of a leadership role in a criminal enterprise is insufficient.  "To say that someone 'could' give orders and 'could' exercise his leadership role is not to say that he did" (Diaz Br. at 16).  It has already been decided that it

United States District Court

For the Northern District of California

1    would be premature to determine this claim until the penalty phase.  The best course would be to

2    address the sufficiency of the evidence as it relates to the sentencing factor through a motion at

3    the penalty phase.

4                            **E.    Future Dangerousness.**

5           The notice alleges the "future dangerousness of the defendant" against Fort and Diaz.

6    This factor described how defendants represented a continuing danger to the lives and safety of

7    other persons.  This factor includes four sub-parts:  (1) continuing pattern of violence; (2) lack of

8    remorse; (3) low rehabilitative value; and (4) membership in a criminal enterprise.

9           "Future dangerousness" was a relevant factor in determining the extent to which

10   defendants posed a threat of future danger if incarcerated rather than executed.  The February 28

11   order (at 27) requested that the government provide evidence regarding facilities and security

12   procedures and defendants' prior behavior while imprisoned.

13          In response, the government added the following footnote in their amended notices:

14                  Evidence of the defendant's future dangerousness is relevant to the
                    jury's decision whether to impose the death penalty or a sentence
15                  of life in prison without the possibility of parole.  It is true that the
                    government has highly secure facilities within which to house the
16                  defendant for life.  However, the defendant will be imprisoned
                    with other inmates and have contact with both other inmates and
17                  prison officials on a daily basis.  This inquiry is relevant in
                    determining whether the defendant will be a danger to other
18                  inmates or prison officials.  The current security precautions do not
                    assure that the defendant will have no contact with anyone during
19                  any imprisonment period.

20   (Fort 2d Amd. Notice at 11, Diaz 2d Amd. Notice at 9).  Diaz argues that the government "does

21   not mention Diaz's prior behavior while imprisoned, but instead proceeds on the assumption that

22   the crimes charged in the indictment, as well as eight specific 'arrests' for conduct outside an

23   institution is somehow relevant to establishing future dangerousness in a maximum security

24   federal penitentiary" (Diaz Br. at 16–17).  Prior behavior when imprisoned, he claims, is what is

25   relevant — not prior arrests.  He then offers a string of decisions that supposedly held that an

26   "arrest" was an improper basis to enhance any sentence, non-capital or capital.

27          Diaz is correct in that a prior arrest record by itself will cut no figure.  He is incorrect,

28   however, that *conduct* relevant to establishing future dangerousness is limited to "prior behavior

                                              12

United States District Court

For the Northern District of California

1    when imprisoned." Although the Ninth Circuit has yet to consider the matter, the Eighth Circuit

2    held in *United States v. Ortiz*, 315 F.3d 873, 901–02 (8th Cir. 2002), that the district court's

3    instruction on the non-statutory aggravating factor of future dangerousness at the penalty phase

4    of defendants' murder trial was supported by evidence that all three defendants acted as

5    "enforcers" for the drug dealer, using physical force and threats to collect drug debts and enforce

6    discipline, and that defendants lacked remorse. Although it would have been better had the

7    government provided evidence of Diaz's prior behavior while imprisoned, evidence of prior,

8    grave criminal behavior outside of incarceration may still be relevant.

9          The decisions by Diaz are all consistent with this view. The Ninth Circuit held in

10   *United States v. Durham*, 995 F.2d 936, 938 (9th Cir. 1993), that a "court may not consider a

11   'prior arrest record itself' in departing from the applicable guideline range" (citations omitted).

12   It clarified that the sentencing court could rely on police reports, which covered "all aspects of a

13   prosecuted offense," in contrast to an arrest record, which "simply records an arrest." *Id.* at

14   935 n.1.

15         *United States v. Traveras*, 424 F. Supp. 2d 446, 454 (E.D.N.Y. 2006) (Weinstein, J.),

16   excluded evidence of a sexual assault on a minor offered to prove the non-statutory aggravating

17   factor of future dangerousness. This decision is distinguishable because *Traveras* found the

18   evidence to be too prejudicial and risked confusing jurors where the defendant had been indicted

19   for two murders in the course of a drug-trafficking conspiracy — not for the sexual abuse of a

20   minor. The prior criminal behavior in *Traveras* was not sufficiently similar to be considered.

21   This order finds that evidence of prior similar adult criminal *conduct* can be relevant in

22   determining defendants' future dangerousness. But the government cannot simply list their

23   arrests. The Court will give the government the opportunity to move to amend the notices to

24   state *the conduct underlying* the arrests.

25         Fort argues that no attempt was made to show that the facilities used to house each

26   defendant were insufficient to contain any danger defendants might pose while imprisoned

27   (Br. at 6). The amended notices state that the defendants would be imprisoned with other

28   inmates and have contact with other inmates and prison officials on a daily basis. The notices

further explain that the current security precautions would not assure that defendants would not come into contact with anyone during their incarceration. This order holds that the notices have provided an adequate explanation regarding the facilities. Furthermore, even in a high-security facility, there is the ever-present risk that a coded phone call or letter might be communicated to the outside world calling for harm to a witness or other person. The notice sufficiently shows the relevance of the allegation of future dangerousness with respect to the risk defendants' pose to members of the prison population.

### (1)     *Continuing Pattern of Violence.*

#### (a)     Lack of specificity.

The January 23 order found that the earlier notices were too vague — *i.e.*, they used open-ended qualifiers, which left open the possibility that other arrests and offenses could be introduced. The government sought leave to amend its notices to remove these open-ended qualifiers and to identify the specific prior conduct it intended to introduce. The August 14 order found that the first amended notices were still too vague and deferred ruling pending the government's further amendments.

The amended notice for Fort adds a list of 21 arrests, with dates and brief descriptions of the bases for arrest (Fort 2d Amd. Notice at 11). There were eight prior arrests for Diaz (Diaz 2d Amd. Notice at 10). As stated, a prior arrest record by itself is inadmissible. The government may seek leave to amend its notice to state the conduct underlying the arrest.

The government also noted that it would introduce evidence of the crimes detailed in the "participation in additional serious acts of violence" and "obstruction of justice" sections of Diaz's notice (Diaz 2d Amd. Notice at 10). The crimes detailed in the "participation in additional serious acts of violence" and "contemporaneous criminal conduct" sections would be used for Fort's notice (Fort 2d Amd. Notice at 11). This order has already found that the "participation in additional serious acts of violence" and "obstruction of justice" sections in Diaz's notice must be stricken due to lack of specificity, so unless the government specifies the conduct underlying the arrests, this factor must also be stricken.

United States District Court

For the Northern District of California

14

**(b)** **Duplicative and cumulative.**

The August 14 order deferred a decision on whether the sub-parts of "continuing pattern of violence" and "low rehabilitative potential" unconstitutionally overlapped.  In the amended notice for Fort, the "continuing pattern of violence" factor includes the list of arrests and evidence of crimes described in the "participation in additional serious acts of violence" and "contemporaneous criminal conduct" factors.  The "low rehabilitative potential" factor includes the evidence of the crimes detailed in those same factors and the "obstruction of justice" factor. It is likely that there will be duplication and overlap when the evidence unfolds.  If so, we shall agree on cautionary instructions to prevent the jury from unconstitutionally counting the same point multiple times.  In the meantime, the government may plead in the alternative.

**(c)** **Sufficiency of the evidence.**

Defendants argue that, when the allegations of prior arrests are weeded out, the remaining allegations are insufficient as a matter of law to show a "continuing pattern of violence."  This factor has already been stricken for Diaz due to lack of specificity.  Fort provides no further explanation as to why the evidence is insufficient.  This factor in Fort's notice is not stricken.

*(2)* *Lack of Remorse.*

Defendants had claimed that the government violated their Fifth Amendment rights by relying on "negative evidence" (*i.e.,* defendants' failure to speak and act rather than actual statements and actions).  The August 14 order (at 21) noted that relying on "negative evidence" that did not implicate defendants' constitutional rights was "entirely permissible."  Nonetheless, because there was the possibility that the government could encroach on Fort and Diaz's Fifth Amendment rights, the order found that an evidentiary hearing would be necessary prior to the penalty phase, if a penalty phase were needed, to determine this issue.  In addition, the government was ordered to amend its notice regarding Diaz to clarify whether or not Diaz bragged to Kenya Taylor that he had killed Antoine Morgan (because the murder of Taylor preceded that of Morgan).

United States District Court

For the Northern District of California

In the amended notice for Diaz, the government switches the names.  In the first amended notice, the government had stated, "Evidence will demonstrate that just prior to killing Kenya Taylor, defendant Diaz bragged to Taylor that he had killed Antoine Morgan" (Diaz 1st Amd. Notice at 9).  The notice now reads:  "Evidence will demonstrate that just prior to killing *Antoine Morgan*, defendant Diaz bragged to *Morgan* that he had killed *Kenya Taylor*" (Diaz 2d Amd. Notice at 10) (emphasis added).

Diaz argues that this factor should be stricken because the government has failed to cure the lack of specificity and has asserted "a whole new theory of lack of remorse" (Diaz Br. at 20–21).  This order disagrees.  The government has not created a whole new theory.  Lack of remorse is still shown by Diaz allegedly bragging to a third party about a previous murder.  The government corrected the names.  This order finds that the government amended its notice for Diaz such that it was no longer at odds with the indictment and Diaz can understand what was being alleged and can prepare a defense.

The Fifth Amendment issue will not be reached here.  Consistent with its August 14 decision, this order finds that an evidentiary hearing will be necessary prior to the penalty phase, should a penalty phase be needed, in order to determine whether defendants' Fifth Amendment rights will be violated.

### (3)     *Low Rehabilitative Potential.*

#### (a)     Lack of specificity and changing theories.

The August 14 order stated that "[m]erely referencing the 'continuing pattern of violence' sub-part does not specify what exactly will be used to demonstrate 'low rehabilitative' potential" (Aug. 14 Order at 22).  The government was ordered to amend this section to establish an outline of its factual basis.  In Fort's amended notice, the government adds, "The government intends to introduce evidence of the violent crimes alleged in the indictment, which are detailed in Section IV(1), (2) and (3) of this Notice [the participation in additional serious acts of violence, contemporaneous criminal conduct, and obstruction of justice factors]."  The notice also incorporates by reference the prior convictions and arrests listed under the "continuing pattern of violence" sub-part (Fort 2d Amd. Notice at 13).  The government adds a similar

16

United States District Court

For the Northern District of California

1   paragraph in Diaz's notice and included three separate instances in which Diaz either obtained a

2   firearm or possession with the intent to distribute narcotics.  For some reason, the government

3   has not provided any references to discovery; it adds "(See);" after these three incidents (Diaz 2d

4   Amd. Notice at 10–11).

5          Fort's amended notice references evidence of the crimes detailed in the "participation in

6   additional serious acts of violence," "contemporaneous criminal conduct," and "obstruction of

7   justice" factors.  Evidence of Fort's prior convictions and arrests, as detailed in the "continuing

8   pattern of violence" sub-part, would also be used.  The "participation in additional serious acts of

9   violence" and "obstruction of justice" factors have already been stricken, but the other factors

10  remain and have previously been found sufficient.  This time, the sub-part refers to the various

11  arrests, dates, and brief descriptions of the bases for arrest in the "continuing pattern of violence"

12  sub-part.  A single fact or single body of facts can lead to more than one legitimate argument.

13  This sub-part need not be stricken.

14         Regarding Diaz's amended notice, the government states that it had inadvertently omitted

15  the references to discovery for the three drug and firearms incidents.  This order agrees with the

16  government that this omission did not rise to the level of a prejudicial error towards Diaz,

17  especially because the factual basis was provided.  Diaz is correct to point out that the

18  government should not have used the open-ended term, "including," when explaining this

19  sub-part.  The government should amend the term.  But Diaz is not correct to claim that the

20  government has added a new theory by referencing the three acts of possession of narcotics and a

21  firearm.  In its earlier notice, the government had alluded to drug trafficking and violence, which

22  Diaz contested as not providing a sufficient factual basis.  Now that the government has provided

23  a sufficient factual basis, Diaz claims that there was an improper addition.  Defendant cannot

24  have it both ways.  This order finds that the "low rehabilitative potential" sub-part in Diaz's

25  amended notice was sufficient and should not be stricken.

26                    **(b)     Duplicative and cumulative.**

27         The Court had previously deferred making a decision on this issue until the government

28  amended its notices.  As discussed earlier, this order has already stated that there *may* be

                                               17

1    duplication and overlap with this factor and the "continuing pattern of violence" factor.  This

2    order, however, will not strike the factor for the time being and will allow the government to

3    plead in the alternative.

### (c)    Sufficiency of the evidence.

5    Defendants request that this sub-part be stricken.  But neither Fort nor Diaz provide any

6    justification as to why the allegations are insufficient to show "low rehabilitative potential."

7    This order maintains its decision: this sub-part need not be stricken in either amended notice.

### *(4)    Membership in a Criminal Enterprise.*

### (a)    Lack of specificity.

10   Again, the August 14 order (at 23) required the government to lay out the specific factual

11   foundation for this factor — "[m]erely referencing another factor is not sufficient to establish a

12   detailed outline of what evidence specifically relates to this particular factor."  With respect to

13   the "membership in a criminal enterprise" factor, both notices add three paragraphs.  In Fort's

14   amended notice, these paragraphs provide a description of the criminal enterprise, the

15   hierarchical structure of DBG with Fort as a leader, and the goals of DBG.  This sub-part

16   references the "participation in additional serious acts of violence," "contemporaneous criminal

17   conduct," and "obstruction of justice" factors and the "continuing pattern of violence" and "low

18   rehabilitative potential" sub-parts (Fort 2d Amd. Notice at 13–14).  Diaz's notice differs only

19   in his position in the criminal enterprise; unlike Fort, Diaz was not at the top of the hierarchy.

20   Here, the notice references the same factors (except for "contemporaneous criminal conduct,"

21   which did not apply to Diaz) (at 11–12).

22   The question is whether the three paragraphs describing the criminal enterprise,

23   defendants' roles, and the goals of the enterprise are enough.  Diaz argues that these three

24   paragraphs constitute "some general language borrowed from the indictment which in no way

25   specifies how Diaz 'demonstrated an allegiance to and active membership in the Down Below

26   Gang'" (Br. 22).  Fort claims that there is no link between membership in the DBG and future

27   danger while imprisoned; this factor, argues Fort, is irrelevant of the question of future

28   dangerousness (Br. 8).

**United States District Court**
For the Northern District of California

1    This order disagrees. *First*, the earlier order found that the government had sufficiently

2    provided an outline of how it would prove leadership roles of each defendant in a criminal

3    enterprise (Aug. 14 Order 14–15). The language approved by the order included the same

4    information as the disputed language in the "membership in a criminal enterprise" sub-parts.

5    *Second*, this order finds that membership in a criminal enterprise is relevant to the question of

6    future dangerousness. The amended notices state that the enterprise constituted an ongoing

7    organization whose members engaged in carrying out illicit objectives. Leaders of the

8    enterprise authorized acts of violence including murder against members of the enterprise.

9    This membership could have an effect on the prison population and even individuals outside the

10   prison. For example, in the second superseding indictment, the government alleged that

11   Fort discussed a plan to kill Jamaar Jackson even though Fort was still incarcerated in the

12   San Francisco County Jail (Operative Indict. at p.15). This factor does not need to be stricken on

13   the basis of lack of specificity or irrelevance.

14                         **(b)       Duplicative and cumulative.**

15   The August 14 order had deferred ruling on this issue pending the government's amended

16   notices. Now both parties re-assert that this sub-part is duplicative and cumulative of the

17   "leadership role in a criminal enterprise" factor. As discussed earlier, this order finds that a

18   defendant can be a member without being a leader in a criminal enterprise. Neither part needs to

19   be stricken at this point.

20                  *(5)       Inconsistencies in the Indictment and Amended Notice.*

21   In an earlier motion, Diaz had claimed that material included in his amended notice but

22   not in the indictment ought to be struck from the notice. The August 14 order agreed (at 27),

23   stating, "Because the indictment and the notices do not correspond, the inconsistent material

24   included in the death notices — 'or in escaping apprehension for the violation of the offense' —

25   shall be struck from the notices." The new notice against Diaz, however, alleges that "the

26   defendant, in the commission of the offense, *or in escaping apprehension for the violation of the*

27   *offense*, knowingly created a grave risk of death to 1 or more persons in addition to the victim of

28   the offense" (Diaz 2d Amd. Notice at 3) (emphasis added).

**United States District Court**
For the Northern District of California

1    Diaz claims that the government chose to ignore the specific ruling.  He "strongly urges

2  that the mere striking of the offending language is an insufficient sanction for the government's

3  inexcusable violation of a very clear court order" and that the Court should dismiss the "special

4  findings" from the indictment and strike the second amended notice in its entirety.  In its

5  opposition, the government admitted that it did not omit the offending phrase.  It then apologized

6  for the error and agreed that the August 14 order struck the phrase.  The government requests

7  that the Court not act upon Diaz's motion and strike the second amended notice in its entirety

8  (Opp. 8).

9    This order agrees with the government.  The phrase, "or in escaping apprehension for the

10  violation of the offense," must be stricken from the notices.  This order, however, finds no

11  justification for dismissing the "special findings" or striking the entire notice for an error that is

12  easily remedied and was not made in bad faith.

13    **CONCLUSION**

14    For the foregoing reasons, the motions to dismiss the "special findings" and to strike the

15  second amended notice of intent to seek the death penalty are **GRANTED IN PART, DENIED IN**

16  **PART, AND DEFERRED IN PART.**  There will be an evidentiary hearing prior to a penalty phase on

17  certain issues, should a penalty phase be necessary.

18    The offending portions of the notices are stricken:

19    (i)    The "participation in additional serious acts of violence" factors

20  for Diaz and Fort;

21    (ii)    The "obstruction of justice" factors for Diaz and Fort; and

22    (iii)    The "continuing pattern of violence" factor for Diaz.

23  If the government wishes to file a motion seeking leave to file a further amended notice, it must

24  do so in **FOURTEEN CALENDAR DAYS**, with any opposition due within **FOURTEEN CALENDAR**

25  **DAYS** thereafter and any reply due within **TEN CALENDAR DAYS** thereafter, to be submitted

26  without further hearing.  The proposed notice must be appended and the opening memorandum

27

28

must explain why all defects would be cured by the proposed notice.  The government is not otherwise given leave to file another notice.

**IT IS SO ORDERED.**

Dated:  November 20, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

21