IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

EDGAR DIAZ, EMILE FORT,
and RAYMON MILBURN,

Defendants.
_____/

No. CR 05-0167 WHA

**CASE MANAGEMENT ORDER RE GOVERNMENT TRIAL DISCLOSURE PLAN**

**INTRODUCTION**

In this RICO gang prosecution, the question is how to balance timely access to *Brady* information against the need to protect civilian witnesses. Accepting fully the Ninth Circuit's ruling in *United States v. Fort*, 472 F.3d 1106 (9th Cir. 2007), which limited Rule 16 discovery, this order addresses the separate issue of *Brady* disclosures. The essence of this order is that district courts, under their supervisory power, may require the government to reveal *Brady* materials in advance of trial — with the exception of *Brady* materials also constituting Jencks Act "statements," the latter being producible only after direct examination. This ruling follows several rounds of briefing and oral argument.

**1. SUPERVISORY AUTHORITY.**

A threshold legal question is the extent to which district courts have authority, under their supervisory and case management powers, to order prosecutors to make *Brady* disclosures

United States District Court
For the Northern District of California

*prior* to trial. With respect to *Brady* materials that also happen to be Jencks Act statements, *i.e.*, "statements" within the meaning of 18 U.S.C. 3500(e), the Ninth Circuit has plainly held that the Jencks Act trumps *Brady*. *United States v. Alvarez*, 358 F.3d 1194, 1211 (9th Cir. 2004); *United States v. Jones*, 612 F.2d 453, 455 (9th Cir. 1979), *cert. denied*, 445 U.S. 966 (1980). In light of these holdings, the government would be within its rights in withholding Jencks Act statements until after the witness testifies on direct — and this would be so even if the Jencks Act statements contain *Brady* information. District courts in this circuit have no authority to override strict observance of the Jencks Act. But, as stated before herein, this insistence may lead to trial continuances, as the Act expressly contemplates (18 U.S.C. 3500(c)). Or, it may lead to postponing some or all of the cross-examination while the trial continues with other witnesses. For immediate purposes, therefore, the concern reduces to *Brady* material falling outside the Jencks Act, *i.e.*, "non-Jencks *Brady* information." As used herein, "*Brady* material" includes all material required to be disclosed under *Brady*, *Giglio* or their progeny, including Ninth Circuit interpretations such as *Henthorn*.[1]

It is, of course, true that the government has an independent duty to turn over *Brady* material without any request therefor, much less a court order. And, it must do so at least by the point in time that the disclosure can be effectively used. *Kyles v. Whitley*, 514 U.S. 419, 433, 437 (1995); *United States v. Bagley*, 473 U.S. 667, 682 (1980); *La Mere v. Risley*, 827 F.2d 622, 625 (9th Cir. 1987). Yet, *Brady* "does not necessarily require that the prosecution turn over exculpatory material before trial." *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1987).

---

[1] Here, the government states that it will voluntarily turn over all Jencks Act materials by noon of the Friday before a witness is scheduled to testify. This will lessen the problem. Whether continuances or witness recalls will nonetheless be needed will have to be addressed witness by witness.

The government has conceded that its Form 302s are prepared so as *not* to be Jencks Act statements. Given the *Fort* ruling concerning the scope of the work-production exception of Rule 16(a)(2), the Form 302s are subject to mandatory production, if at all, only pursuant to *Brady*. Given *Fort*, the same is true for the hundreds of police reports involved in this case. Many of these summarize comments made by fact witnesses. Since such reports are rarely Jencks Act "statements" (because they are rarely signed or "adopted" and are rarely "verbatim") and since they are exempt from discovery under Rule 16, as recently held by the Ninth Circuit, they are subject to mandatory production, if at all, only via *Brady*.

The government is fond of saying that it knows its *Brady* obligations and will honor them. While in the routine case this would be sufficient, it begs the question whether, in a large case like this, which even the government concedes is not routine, a district court has the authority to order the disclosures by a date certain *before* the trial to further ensure the efficient administration of justice and to avoid a cascade of mid-trial continuances and the need to recall witnesses after further defense investigation necessitated by late disclosures.

The Ninth Circuit ruled in 1973 that district courts do have such discretion under its supervisory powers to order divulgence of names and prospective witnesses prior to commencement of trial. Judge Wallace wrote for a unanimous panel as follows:

> The Federal Rules of Criminal Procedure are intended to constitute a comprehensive procedural code for criminal cases in the federal courts. But even the rules themselves do not purport to set outer limits of the power of the court. On the contrary, Fed.R.Crim.P. 57(b) states:
>
> > If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute.
>
> As the rules do not contain provisions pertaining to the divulgence of names of prospective witnesses, ordering their production is not inconsistent with the rules. Similarly, there is no statute on the subject except for § 3432. Therefore, the rules did not necessarily foreclose the district court from making the attacked order [footnote omitted]. However, the real question is whether there is power, aside from the rules, for the district court to make the order here attacked.
>
> It is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice. "A federal court has the responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness." *United States v. Baird*, 414 F.2d 700, 710 (2d Cir. 1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970).

*United States v. Richter*, 488 F.2d 170, 173–74 (9th Cir. 1973).

Although *Richter* directly involved only disclosure of witnesses, the same general principle would seem to empower a district court to require pretrial disclosure of *Brady*

3

information. It is true that since 1973, Rule 57(b) — relied on in the quoted material in *Richter* — has been changed to say:

> A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local district rules unless the alleged violator was furnished with actual notice of the requirement before the noncompliance.

The essence of the old rule still resides in this new authority so long as actual notice of the order regulating practice is furnished to the parties. Another rule change was considered after *Richter* but not adopted. That would have required reciprocal witness disclosures. *See United States v. Hearst*, 412 F. Supp. 863, 867 (N.D. Cal. 1975). But the failure to adopt that change did not abrogate the discretionary authority to order, on a case-by-case basis, such disclosure as warranted. And, while the defense has no automatic right to *Brady* material prior to trial, *Richter* held that district judges have discretion, upon a proper record, to order relief on a case-by-case basis. *Richter* has never been overruled and remains valid within our circuit. *See United States v. Talbot*, 51 F.3d 183, 187–88 & n.4 (9th Cir. 1995); *United States v. Acosta*, 357 F. Supp. 2d 1228, 1234 (D. Nev. 2005).

The Third Circuit has also addressed the precise issue now presented, holding that the district court has authority to order that *Brady* material be disclosed prior to trial:

> Today, we affirm this court's longstanding policy and applaud the district court's effort to ensure prompt compliance with *Brady*. We flatly reject the notion, espoused by the prosecution, that "it is the government, not the district court, that in the first instance is to decide when to turn over *Brady* material." Brief for Appellant at 28. The district court may dictate by court order when *Brady* material must be disclosed, and absent an abuse of discretion, the government must abide by that order. Moreover, we expressly disapprove of the government's belated attempt to question the district court's authority.

*United States v. Starusko*, 729 F.2d 256, 261 (3d Cir. 1984). The Third Circuit's opinion cited to *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983). In turn, *Higgs* cited to a string of decisions from at least seven circuits said to stand for the proposition that "the district court, within its discretion, may order such disclosure to ensure the effective administration of the criminal justice system." *Id.* at 44 n.6. *Richter* was there cited as the Ninth Circuit's entry.

4

In sum, this order concludes that district courts have the authority, upon a proper record, to exercise their discretion to require *Brady* material to be disclosed prior to the commencement of trial.

### 2. THE EXERCISE OF DISCRETION.

In exercising its discretion, this Court has considered a number of factors. *First*, the Court has considered the need to protect witnesses, most particularly civilian witnesses, from retaliation for testifying. This subject has been canvassed herein several times. The "Protective Order For Witness Security" dated June 16, 2006, sets forth findings and considerations. The record has not changed in this respect since June 2006. In this regard, we must all keep in mind that the names of prospective witnesses must be given to prospective jurors to ascertain bias toward or against any particular witness. Defendants have a right to be present at jury selection. This will ordinarily mean that civilian witnesses' names will be used in the courtroom before the first witness is sworn. This means that revelation of *Brady* material thereafter, as proposed by the prosecution, would *not* be the first time the names of civilian witnesses would be divulged to defendants.

*Second*, the Court has considered the need to avoid disruptive trial continuances. Jury comprehension would suffer as a result of continuances. An alternative to continuances would be to postpone the cross-examination until after time for reasonable followup and to move ahead with other witnesses in the meantime. This alternative, however, has its own drawbacks. In this massive case involving eight homicides, 30-plus RICO predicate acts, and 86 counts, it will be necessary for the jury to catalog the evidence vis-a-vis the various defendants. Even though fewer now remain in the case, the indictment named many more accused gang members, so it will be necessary to keep straight the evidence relating to the entire cast of characters, not just the three remaining (since this is a RICO conspiracy case). Jury comprehension is a paramount consideration in a case of this magnitude and severity. As problematic, a string of continuances would present a risk of jurors needing to be discharged due to hardship or sickness, posing a risk of a mistrial. In short, it is highly desirable to manage the trial so that it runs straight through without disruption.

*Third*, the Court has taken into account the likely lead time defense counsel will need to use the material effectively, remembering that the trial will be underway (or virtually so) with its parallel time demands. This includes the need to track down witnesses, including impeachment witnesses. The problem is exacerbated by the government's insistence that it will turn over Jencks Act statements only the Friday before the witnesses will testify. Providing at least the *non*-Jencks Act *Brady* material earlier will allow some productive work to precede the turnover of Jencks Act statements. In this regard, the Court will appoint an extra investigator for each defense team to better handle the compressed timetable of disclosure.

*Fourth*, the Court has taken into account the prospect that the trial will be dogged by *Brady* disputes. Assistant United States Attorney David Hall assured the Court and counsel at the last hearing that the government will not take a crabbed view of its *Brady* obligations. This positive reassurance from a respected and seasoned prosecutor reduces the risk that we will need longer lead times to comb out *Brady* compliance problems.

### 3. THE SCOPE OF *BRADY*.

Despite the positive reassurance of AUSA Hall, past statements by the government in this case have raised concerns that *Brady* may receive short shrift. This order, therefore, will set guidelines.

The first recurring concern is the meaning of "exculpatory." At times herein, government counsel have implied that any document inculpating any Down Below Gang member is outside *Brady* even if it is favorable evidence to a particular defendant, the rationale being that *other* evidence will tie that defendant to the gang and so the document hurts him too. This is counterfeit logic. A favorable passage in a document may aid a particular defendant on an important defense even if it hurts him on another front. The rationale does not convert otherwise *Brady* material into non-*Brady* material.

A second recurring concern is the issue of cumulative effect. Although the *United States Attorney's Manual* does not create discovery rights, one item therein deserves special emphasis:

> While items of information viewed in isolation may not reasonably be seen as meeting the standards in paragraphs 1 and 2 above, several items together can have such an effect.

*USAM* ¶ 9-5.001(C)(4) (2006). In other words, the test for *Brady* purposes is not whether any single item will make or break a case — rather, it is whether the cumulative effect of the undisclosed evidence would reasonably cast doubt on the integrity of a guilty verdict. This was a square holding of *Kyles v. Whitley*, 514 U.S. 419, 441–54 (1995). *Accord: Silva v. Brown*, 416 F.3d 980, 986 (9th Cir. 2005).

A third recurring concern is the degree of diligence prosecutors must use in checking sources for favorable material. Writing for a unanimous Ninth Circuit panel, Judge Trott summarized the *Brady* rule as follows:

> *Brady* material is any evidence material either to guilt or punishment which is favorable to the accused, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). A prosecutor's duty to reveal such evidence does not depend on a request by the defense. *United States v. Bagley*, 473 U.S. 667, 683, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985); *Thomas v. Goldsmith*, 979 F.2d 746, 749–50 (9th Cir. 1992). The *Brady* rule encompasses impeachment evidence as well as exculpatory evidence. *Bagley*, 473 U.S. at 676, 105 S.Ct. at 3380. Prior statements of a witness that are both material and inconsistent with his anticipated testimony fall within the *Brady* rule. *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

*United States v. Hanna*, 55 F.3d 1456, 1459 (9th Cir. 1995). In *Hanna*, the court of appeals vacated a conviction and remanded for the United States "affirmatively to demonstrate" whether it had discharged its *Brady* obligations. There, the police report contradicted the officer's trial testimony about how the gun was found. The court of appeals felt the prosecutor had not adequately investigated to learn all further evidence that might contradict the officer, refusing to accept the prosecutor's "cursory statement" that it had produced all *Brady* information known to it. The problem was, the Ninth Circuit felt, that the prosecutor might well have found more impeachment evidence had she looked a bit harder.

A fourth recurring concern is what sources prosecutors must check. The Supreme Court has rejected the view that prosecutors are held to a disclosure standard based only on what the prosecutors themselves know. Instead, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). That decision involved a *state*

prosecutor and his duty to consult the police. Whether a *federal* prosecutor has a duty to learn of any favorable evidence known to local police acting on the government's behalf was not expressly addressed. Where, however, as here, the federal prosecutors have worked hand in glove with the police in bringing and investigating a case, it seems clear that the reasoning of *Kyles* requires federal prosecutors "to learn of any favorable evidence known to *others acting in the government's behalf*," including any local police acting on its behalf in the investigation. Indeed, the government prevailed in its Rule 16(a)(2) victory in *Fort* expressly on the ground that, at least in the circumstances of this very case, local police reports should be given the same work-product protection as FBI Form 302s and that local police must be deemed "government agents in connection with investigating or prosecuting the case" within the meaning of Rule 16(a)(2). It is hard to see how the police can be "government agents in connection with investigating or prosecuting the case" within the meaning of *Fort* and Rule 16(a)(2) without also being someone "acting on the government's behalf in the case" within the meaning of *Kyles*, especially where, as here, there has been an ongoing and coordinated joint investigation and prosecution. This conclusion has clear implications not only for *Henthorn* searches but also for more general *Brady* searches.[2]

A fifth concern arises with respect to the issue of juvenile records and other impeachment records for its civilian witnesses. It will not be sufficient for the government merely to disclose rap sheets. Although impeachment under Rule 609 usually extends only to the code section and name of the offense (without exploration of the underlying details), the underlying facts may show a bias or prejudice that is admissible independent of Rule 609. The government must inquire into all sources of information readily available to it, including local police records, then turn over all such information indicating that the witness:

    (i)     has been convicted of a felony or a misdemeanor involving dishonesty or false statement within the last ten years;

    (ii)    has been convicted of murder regardless of the date of conviction;

---

[2] This does not mean that the specific prosecutors in this case must personally review the police files. Rather, it means that the government should adopt procedures within the joint federal-state teams calculated to communicate relevant information. *United States v. Herring*, 83 F.3d 1120 (9th Cir. 1996).

8

(iii) has now (or has ever had) a bias against any defendant or the Down Below Gang or a bias in favor of a rival gang;

(iv) is now on parole or probation or has any charges pending or any arrest still subject to prosecution; or

(v) is cooperating with law enforcement in this or any other related case or has done so at any time during the pendency of this case.

The government is not ordered, however, to seek to unseal juvenile records of the state court. Nor is it ordered to inquire of local district attorneys. This ruling is without prejudice to any argument as to admissibility of such evidence, pro or con. The order is intended to place defense counsel in a viable position to develop the impeachment evidence so that its admissibility can be timely considered. Contrary to the government's argument, juvenile convictions *are* sometimes admissible for impeachment under Rule 609(d).

A final concern arises from the government's statement (Br. 5) that it anticipates "so little *Brady*/*Giglio* material" for all witnesses it intends to call, supposedly only "approximately 100 pages." Given the many thousands of pages of redacted materials previously produced herein, surely the one-hundred-page estimate refers to materials never before produced in any form, as AUSA Hall seemed to agree at the last hearing. On the other hand, if the entire universe of such materials, including redacted items previously produced, is only one hundred pages, then the government would seem to be applying too stingy a standard of what constitutes favorable defense evidence. Remember as well that any *Brady* material produced in only redacted form so far must be produced without redactions on the schedule set forth below.

**4. DISCLOSURE SCHEDULE FOR NON-JENCKS *BRADY* MATERIALS.**

Having considered the foregoing factors and all other arguments and circumstances in this proceeding, the Court finds that the government's proposed *Brady* disclosure plan would be unfair (as not supplying adequate lead time) and would lead to jury confusion and frustration (due to an inordinate number of continuances and/or witness recalls). Instead, pursuant to its

9

supervisory and case-management authority, the Court **ORDERS** that non-Jencks *Brady* information be produced as follows:

    A.    *Henthorn* material on all law enforcement witnesses whom the government anticipates calling must be produced **SIX WEEKS (42 CALENDAR DAYS)** before the first day of trial. AUSA Hall has assured all concerned that the government will seek out all *Henthorn* and impeachment material for police officer witnesses from local police sources to the same extent as *Henthorn* requires for federal agents. Although the lead time ordered is slightly longer than the government recommends, the extra time will allow for motion practice to comb out disputes over compliance. This category presents little or no risk of witness retaliation.

    B.    All non-Jencks *Brady* information that only inculpates persons never charged in this case or that is exculpatory of a defendant without inculpating any other indicted person must be disclosed to all defense counsel **28 DAYS** before trial. This category presents little or no risk of witness retaliation.

    C.    Except as required above, all non-Jencks *Brady* information relating to any specific government civilian witness shall be disclosed to defense counsel **SEVEN CALENDAR DAYS** before the witness is called by the government. This category presents the highest risk of witness retaliation.

    D.    With respect to the issue of non-Jencks *Brady* information for witnesses the government eventually elects *not* to call, the government must promptly place and keep them under subpoena, so that defendants shall when the time comes be in a position to call them in the defense case without delay. All such material shall be disclosed as soon as the government makes the election and at all events at least **SEVEN CALENDAR DAYS** before the government rests its case in chief.

E. All other non-Jencks *Brady* information must be disclosed in time for effective use to be made of it and the government is duty-bound to be fair and reasonable in evaluating when that point has arrived. *See Kyles*, 514 U.S. at 437.

F. This order does not require a witness list. Nor does it cover Jencks Act statements (even if they include *Brady* information). It covers only non-Jencks *Brady* information. Failure to comply with this timetable may lead to witness preclusion or testimony preclusion or other appropriate sanction. Where a specific or heightened risk to a civilian witness is known by the government, it may seasonably move *ex parte* for permission to delay the disclosures as to any such witness. Where disclosures, even those in compliance with this timetable, deserve more followup than time permits under the timetable, defense counsel may move for a continuance or other relief on a case-by-case basis. The Court recognizes that this timetable is less generous than the defense believes is necessary. To mitigate the burden on the defense in responding on compressed disclosure schedules, the Court hereby approves for each defendant an additional investigator to be engaged now but to begin work on the case 28 days before trial. Please make application via the CJA coordinator in the usual manner.

G. If any defendant is severed for a later trial, then no disclosures need be made to his defense counsel and a subsequent schedule shall be set for any such disclosures.

**IT IS SO ORDERED.**

Dated: February 8, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE