IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAYMON MILBURN, EDGAR DIAZ, and EMILE FORT,<br><br>Defendants.<br>_____/ | No. CR 05-00167 WHA<br><br>**ORDER DENYING MOTION FOR SUPPRESSION OF INTERCEPTED COMMUNICATIONS TO WHICH DEFENDANT MILBURN WAS A PARTY (Dkt. No. 1389)** |

**INTRODUCTION**

In this RICO gang prosecution, defendant Raymon Milburn moves for an order suppressing all intercepted communications to which he was a party. These contested communications include conversations between himself and co-defendant Emile Fort that were intercepted by the San Francisco Sheriff's Department ("SFSD") while Fort was an inmate at San Francisco County Jail. The motion is based on the following grounds: (i) the state court order authorizing the interception and recording of these communications was unlawful; (ii) the interception violated his right to be free from unreasonable searches and seizures under the Fourth Amendment; and (iii) Title III of the Omnibus Crime Control and Safe Streets Act of 1968 prohibits such interception and recording of statements. For the reasons stated below, defendant's motion to suppress intercepted communications is **DENIED**.

**STATEMENT**

The parties dispute the admissibility of intercepted recordings of phone conversations between Mr. Milburn and Mr. Fort. The conversations in dispute were visits and phone calls made to Mr. Milburn by Mr. Fort. The government relies on these communication to support its contention that there was a conspiracy to murder Harry Cael, Jr., and Jamaar Jackson.

In June 2004, the San Francisco Police Department obtained orders authorizing the interception of all communications made by Mr. Fort via telephone or in the visiting room while Mr. Fort was an inmate at San Francisco County Jail. The orders required the SFSD to place warning signs on the wall alerting Mr. Fort that recordings might occur. The order also stated that the SFSD could not disclose the existence of the recordings to Mr. Fort.

The SFSD posted signed on the phones used by Mr. Fort. The signs stated: "Non Attorney calls may be recorded or monitored." The SFSD then intercepted and recorded calls in July 2004 and July 2005. Outgoing calls from the prison began with the following recorded statement: "This call is from an inmate at the San Francisco County jail. Thank you for using Evercom." This message was repeated at the end of the call.

Mr. Milburn's co-defendants previously moved to suppress statements made by them that were also intercepted while Mr. Fort was an inmate at San Francisco County Jail. They moved for a suppression order on the same three grounds — that the state order was illegal and that it violated the co-defendants' Fourth Amendment rights and Title III of the Omnibus Crime Control and Safe Streets Act of 1968. An order dated September 27, 2006, denied suppression. The order held that there was no Fourth Amendment violation because Mr. Fort gave his implied consent (and those on the other end of the calls had no greater right than if Mr. Fort had expressly consented to surveillance as an undercover informant). Because Title III had an implied-consent exception, there was no Title III violation. The order did not reach the legality of the state order because it was already held that Mr. Fort impliedly consented to the recordings (Dkt. No. 802).

**ANALYSIS**

Mr. Milburn reasserts his co-defendants' arguments regarding Title III and the illegality of the state court warrant. With respect to the Fourth Amendment claim, Mr. Milburn argues that the relevant inquiry (*i.e.*, whether he had a "justifiable expectation of privacy in [his] telephone conversations with Fort") is particularized and movant-specific. Therefore, Mr. Milburn had a greater expectation of privacy because he had spent little time in incarceration. The government counters that Mr. Milburn arguments have already been ruled upon by the September 2006 order and he has not provided any facts or legal authority to say otherwise.

Although Mr. Milburn was not a party at the time of the earlier motions and can re-litigate these issues, we find the past ruling persuasive. As stated in the earlier order, Fourth Amendment protections are triggered only when "the state intrudes in an area where there is a constitutionally protected reasonable expectation of privacy." *New York v. Class*, 475 U.S. 106, 112 (1986). To determine whether an individual has a Fourth Amendment right to privacy, a court must discern "what expectations of privacy are constitutionally 'justifiable' — what expectations the Fourth Amendment will protect in the absence of a warrant." *United States v. White*, 401 U.S. 745, 752 (1971). The Fourth Amendment "does not protect the merely subjective expectation of privacy, but only those '[expectations] that society is prepared to accept as reasonable.'" *Oliver v. United States*, 466 U.S. 170, 177 (1984). "To contest the legality of a search under the fourth amendment, the defendant must demonstrate a legitimate expectation of privacy in the place or item searched by showing an actual subjective expectation of privacy which society is prepared to recognize." *United States v. Davis*, 932 F.2d 752, 756 (9th Cir. 1991).[1]

Mr. Milburn argues that he had an actual and subjective expectation of privacy that society was prepared to recognize in the phone conversations he had with Mr. Fort for the following reasons. *First*, the recorded announcement at the start and end of each phone call provided no warning that the call could be monitored and recorded. *Second*, unlike his

---

[1] Internal citations are omitted from all cites unless indicated otherwise.

3

1  co-defendants, Mr. Milburn had few experiences with incarceration (and consequently the
2  customary taping of conversations). *Third*, Mr. Milburn brings up in his reply memorandum
3  that the calls are *jail* calls (as opposed to *prison* calls) — *i.e.*, in jail, prisoners are presumed
4  innocent as they await trial, and their calls are not routinely monitored. *Fourth*, Mr. Milburn
5  further argues in his reply memorandum that the vast majority of phone calls were the result of
6  Mr. Fort initally calling a third party, which meant that the recorded announcement went
7  unheard by Mr. Milburn. (Defense counsel states that it "has thus far identified only two
8  [intercepted phone communications] wherein it could be said that Mr. Milburn heard the voice
9  notification" (Reply 3). Consequently, the defense argues, Mr. Milburn had the reasonable and
10 justifiable expectation that his conversations would remain private even though they originated
11 from a correctional facility, he says.

12       This order finds Mr. Milburn's arguments unavailing. He has not provided any legal
13 authority to distinguish himself from his co-defendants. Nor does he provide any support for
14 his claim that lack of time in incarceration or sitting in jail (and not prison) gives him a greater
15 expectation of privacy. As discussed in the September 2006 order, the visiting room at a public
16 jail is not a constitutionally protected area. *Lanza v. New York*, 370 U.S. 139, 142–43 (1962).
17 And with respect to the calls from Mr. Fort, the Ninth Circuit has held "that *any expectation of*
18 *privacy in outbound calls from prison* is not objectively reasonable and that the Fourth
19 Amendment is therefore not triggered by the routine taping of such calls." *United States v.*
20 *Van Poyck*, 77 F.3d 285, 291 (9th Cir. 1996) (emphasis added). In holding that the
21 defendants gave their implied consent, the September 2006 order stated (Dkt. No. 802 at 8)
22 (emphasis added):

> The Supreme Court has recognized an exception to a party's expectation of privacy when the other party becomes a police informant. Misplaced trust in the informant is not a shield to the admissibility of the evidence. [*United States v. White*, 401 U.S. 745, 749 (1971); *Hoffa v. United States*, 385 U.S. 293, 302 (1966).] If the police may record all phone calls with merely the consent of an undercover agent or an informant, then surely the same is true when there is a lawful basis for recording the outgoing call — such as here where there is a warning that all calls might be monitored. Fort gave his implied consent. *Those on the other end of the calls have no greater rights than had Fort expressly consented as an undercover informant.* Consent is consent.

4

> Movants' misplaced trust in the privacy of the calls does not shield them now.

There is nothing distinguishable about Mr. Milburn's case. Just as he would not be shielded if the caller had been an undercover informant, Mr. Milburn was not shielded by having misplaced his trust in the privacy of calls from Mr. Fort, a prison inmate. Mr. Milburn knew that the calls came from an inmate at the San Francisco County Jail, either from the recording or from the fact that he knew Mr. Fort was an inmate. Mr. Milburn therefore did not have an objectively reasonable expectation of privacy in his conversations with Mr. Fort.

Moreover, Title III does not require suppression. Although Title III renders inadmissible illegally-intercepted communications, an exception under Title III provides that it is not unlawful for any person acting under color of law to intercept any communication where one party has given prior consent to the interception. While consent is generally express, consent may be implied where one party knowingly acquiesced to the surveillance. *Van Poyck*, 77 F.3d 285 at 292. The September 2006 order found that Mr. Fort impliedly consented to the surveillance. Because one party in the Milburn-Fort conversations impliedly consented to the monitoring and recording, there was no Title III violation. Again, this order need not address whether or not the state court warrant was legal because the surveillance fell under the implied-consent exception of Title III.

## CONCLUSION

For the foregoing reasons, Mr. Milburn's motion to suppress the intercepted communications is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 5, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5