United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAYMON MILBURN, EDGAR DIAZ, and EMILE FORT,<br><br>Defendants.<br>_____ / | No. CR 05-00167 WHA<br><br>**ORDER GRANTING MOTION FOR AN EXPLICIT RULING ON EDGAR DIAZ'S MOTION TO SEVER AND DENYING MOTION TO SEVER FROM CAPITAL CO-DEFENDANT (Dkt. No. 1501, 1450)** |

An earlier order dated June 24, 2008, had denied defendants' motions for severance (Dkt. Nos. 1447, 1449, and 1452). Mr. Diaz says that the June 24 order did not explicitly deny his second severance motion (Dkt. No. 1450). The docket sheet, however, stated that this second severance motion was "FILED IN ERROR. PLEASE SEE DOCKET #1454." Docket Number 1454, which was entitled, "MOTION to Sever Defendant *CORRECTION OF DOCKET # 1450: New Exhibit 1* by Edgar Diaz," was a sixty-page social science study addressing the effects of race prejudice in capital cases. No motion was attached. Accordingly, the June 24 order addressed only the properly filed severance motions (which included the exhibit at Docket Number 1454).

Moreover, the issues raised in Mr. Diaz's improperly-filed severance motion were all addressed in the June 24 order. This order will briefly reiterate its reasoning below. Mr. Diaz moved for severance pursuant to FRCrP 14(a), which allows separate trials or severance

"[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government." He cites the following reasons why there could be prejudicial joinder.

*First*, in a capital case, the Eighth Amendment requires "precise and individualized sentencing." According to Mr. Diaz, the case is complex and unwieldy, the charged acts are relatively unrelated, a joint trial will dilute Mr. Diaz's mitigation evidence, there is the possibility of negative racial stereotyping, he will suffer from negative prejudicial spillover due to facts and victim impact evidence, Mr. Diaz will be less able to capitalize on any lingering doubts about his involvement in the charged crimes, and joining a weaker case with a stronger case will negatively affect the co-defendant whose case is weaker. All of these issues have been addressed in the earlier order (Dkt. No. 1495). The order found that all three defendants were charged as members of the same drug, racketeering, and firearms conspiracy and that "[t]heir acts and charges were sufficiently intertwined to justify joinder." Problems with diluting mitigation evidence, racial stereotyping, antagonistic strategies, and victim impact evidence could be addressed with proper jury instructions and redactions.

*Second*, there is a purported conflict between a defendant's Fifth Amendment right against self-incrimination and his Eighth Amendment rights for mitigation. For example, Mr. Fort may be called to testify during the penalty phase. In that case, the jury may treat one defendant's "voluntary self-incrimination and expressions of remorse" as "aggravating the failure of his co-defendant or co-defendants to produce similar evidence in mitigation" (Br. 20). Again, the June 24 order found these arguments unpersuasive, saying that the defendants shared conspiracy charges with overlapping overt acts, that defendants "merely raised speculations of prejudice," and that they had made no showing as to how a jury would fail to follow careful instructions (Dkt. No. 1495).

*Third*, there is another potential conflict between a defendant's Sixth Amendment right to confront and cross-examine adverse witnesses and his Eighth Amendment mitigation rights. Hypothetically, the prosecution could introduce the confession of a co-defendant (*e.g.*, Mr. Fort) that inculpates the defendant (Mr. Diaz). Then, if the co-defendant (Mr. Fort) does not

2

take the stand for fear of self-incrimination, the inculpated defendant (Mr. Diaz) loses his opportunity to cross-examine the co-defendant. This is constitutionally infirm, Mr. Diaz contends. Again, the previous order also directly addressed potential Confrontation Clause problems. To reiterate, co-conspirator statements made in furtherance of a conspiracy are admissible, notwithstanding the Confrontation Clause. *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005). Some statements that are not co-conspirator statements and are too prejudicial in nature may be subject to limiting instructions and/or redactions.

*Fourth*, Mr. Diaz argues that jury instructions will not cure the problem of prejudicial joinder. The prior order found that, in accordance with Ninth Circuit authority, a district court's careful and limiting instructions can reduce or eliminate prejudice resulting from a joint trial. *United States v. Fernandez*, 388 F.3d 1199, 1243 (9th Cir. 2004). Moreover, jurors are presumed to follow a court's instructions absent extraordinary situations. *Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005).

*Fifth*, Mr. Diaz contends that severance here will serve the public interest in judicial economy. Mr. Diaz says that almost all of the evidence against one defendant will not apply directly to the other defendant. So the joint trial will really be the equivalent of two trials. As stated earlier in this order and the June 24 order, however, the charges are related and there is substantial overlapping evidence, particularly with respect to the conspiracy charges. All three defendants were charged as members of the same drug, racketeering, and firearms conspiracy. They were also charged as having engaged in violent acts in furtherance of the same conspiracy. Severance would not lead to greater judicial economy. Accordingly, Mr. Diaz's motion to sever from his capital co-defendant is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 18, 2008.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE

3